UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CORDELL ALLEN, ALIA CLARK,
PATRICIA DEARTH, CHRIS
DEPIERRO, JESSICA LEIGHTON,
JESSICA PEREZ, JAMIE RIVERA,
LAYFON ROSU, MARISSA SHIMKO, and
CAROL SOMERS,
On behalf of themselves and others
similarly situated,

      CASE NO.: 6:16-CV-1603-ORL-18-KRS

      Plaintiffs,

      FLSA COLLECTIVE ACTION

v.

HARTFORD FIRE INSURANCE COMPANY,
a Foreign for Profit Corporation,

      Defendant.
_____/

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE CLASS AND ISSUANCE OF NOTICE AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs CORDELL ALLEN, ALIA CLARK, PATRICIA DEARTH, CHRIS DEPIERRO, JESSICA LEIGHTON, JESSICA PEREZ, JAMIE RIVERA, LAYFON ROSU, MARISSA SHIMKO, and CAROL SOMERS ("Plaintiffs"), on behalf of themselves and other similarly situated employees, move this honorable Court for an Order: (1) conditionally certifying this collective class of "Analysts" as a national class; (2) requiring Defendant to produce the names, addresses, telephone numbers and emails of each putative class member; (3) compelling notice of this action be sent to all current Analysts employed by Defendant who are and/or were classified as exempt and all Analysts employed by Defendant within the 3 years preceding the filing of the instant motion who are and/or were classified as exempt; (4) requiring Defendant to post notice of this action at its work sites and on its company intranet site; and, (5)

1

tolling the statute of limitations back to the date of the filing the instant motion[1]; and in support thereof, state the following:

Plaintiffs and Defendant in this case both filed Notices of Pendency of Other Actions and cited to *Monserrate, et al., v. Hartford Fire Insurance Company,* Case no. 6:14-cv-149-ORL-18GJK. (Doc. 27, Doc. 32, Doc. 50) The *Monserrate* case is virtually identical to the instant case.  The primary differences are:  (1) current opt-ins in this case include individuals working in and/or reporting to Florida, Georgia, Connecticut, Minnesota, and New York; whereas in *Monserrate*, at the time of Conditional Certification, the Named Plaintiffs and opt-ins only worked in and/or reported to Defendant's Florida locations[2]; (2)  certain positions in *Monserrate* were changed to non-exempt during the *Monserrate* litigation[3]; and, (3) this action includes Analysts in the Group Benefits Department as well as the Group Reinsurance Department because there are Analysts who have filed Opt-Ins in this case who worked as Analysts in both Departments and regardless of the specific department, Analysts in both departments perform identical work. (Collins SS ¶ 6; Daniels-Gavin ¶ 8-9).[4]

---

[1] In this Court's FLSA Scheduling Order (Doc. 45, pp. 3-4, ¶ 8), this Court tolled the limitations period from the time of the FLSA Order until the parties file a Case Management Report ("CMR"). However, if Plaintiffs were to wait to file this Motion until after the CMR putative Plaintiff's rights would not be tolled between the filing of the CMR and any Order granting conditional certification. Moreover, even if Defendant agreed to a longer tolling provision it would still be insufficient given Defendant's failure to previously provide names in the *Monserrate* case; interference with the *Monserrate* Court's management of its class; and, by lulling putative Plaintiffs into a belief that they do not have claims by making de minimus overtime pay adjusts, as further discussed herein. Finally, if this Court enters an Order on this Motion conditionally certifying the class any tolling pursuant to an Order on this Motion would arguably supersede the tolling provision in the Court's FLSA Scheduling Order hence the tolling request in the instant Motion.

[2] Dawn "Dee" Collins an Opt-In in the instant case who worked as an Analyst reporting to Defendant's Florida, Georgia, and Connecticut locations did not Opt-In to the *Monserrate* case until right before the settlement because her contact information was never disclosed by Defendant, and therefore, she did not learn about the action until a much later date. (*Collins SS filed in Monserrate*, Doc. 234-1-*Collins SS* ¶ 6; Collins SS in this case ¶ 8) At the time she opted in, a Motion to Clarify and Expand the class was still pending with this Court. (Doc. 168)

[3] Long Term Disability III (LTD III) in Group Benefits only. Upon information and belief the LTD III position still exists in Group Reinsurance.

[4] It is Plaintiffs' understanding that Defendant employs Analysts in multiple departments, such as, but not limited to Group Benefits and Group Reinsurance. However, further discovery may evidence other Analysts in other departments. As a result, Plaintiffs are seeking certification of a national class of Analysts irrespective of the department in which they worked. In another Middle District of Florida case, the Middle District found that simply

Defendant may attempt to argue that *Monserrate* is different based upon what Defendant refers to as "segmentation."  Defendant claimed in *Monserrate* that when it created what it calls "segmentation," it segmented Analysts by segment numbers (1, 2 or 3), and then allegedly gave Analysts different work based upon the segment to which they were assigned.  Defendant's "segmentation" allegedly occurred in November of 2012; however, Analysts in *Monserrate*, and in this case, who worked for Defendant prior to November 2012 ("pre-segmentation"), and after segmentation ("post-segmentation"), attested that their job duties and responsibilities did not change regardless of what segment they were assigned to. (*Gutierrez SS filed in Monserrate* Doc. 220-6-*Gutierrez SS* ¶3-7, 20; *Norman SS filed in Monserrate* Doc. 220-9-*Norman SS* ¶ 6-9[5]) Thus, any argument by Defendant that the *Monserrate* positions were different because they were "pre-segmentation" and "post-segmentation" versus just post-segmentation, is a red herring since the job duties and responsibilities of the Analysts remained the same despite Defendant's "segmentation."[6]

Defendant may also attempt to argue in response to this Motion that this Motion for Conditional Certification is pre-mature; however, it is not.  This case is virtually identical to the *Monserrate* case as discussed above, and there are Plaintiffs in this case who were also in the *Monserrate* case further evidencing that these cases are nearly identical.[7]  In fact, the same

---

because a Plaintiff/employee worked in different departments, it did not make them dissimilar for purposes of conditional certification (*Ululaulani Hu et al. vs. Windhaven Insurance Company et al.*, Case No: 8:15-cv-0277-MSS-TGW, Doc. 63, pp. 6-7)

[5] Plaintiffs also filed the *Monserrate* sworn statements in this case attached to Plaintiffs' Notice of Filing Sworn Statements in Support of Motion for Conditional Certification.

[6] In fact, as discussed in the *Monserrate* case, segmentation was created by Defendant to avoid its obligations under the FLSA, after being advised by its in-house legal counsel that certain positions should be non-exempt. (*Monserrate* Doc. 219, p. 11)  Instead of re-classifying these positions, Defendant created what Defendant refers to as "segmentation," assigning people to segments, despite there being no change in their job duties (*Monserrate* Doc 226, p. 2, ¶ 7, p. 4, ¶ 14; *Gutierrez SS filed in Monserrate* Doc. 220-6-*Gutierrez SS* ¶3-7, 20; *Norman SS filed in Monserrate* Doc. 220-9-*Norman SS* ¶ 6-9; Andreas-Moses SS p. 1, ¶ 6, p. 2. ¶ 1; Bourne SS ¶ 5, 6, 12; Collins SS ¶ 3, 4, 15; Gutierrez SS ¶ 5, 6, 12; Norman SS ¶ 5, 6, 12).

[7]The *Monserrate* case only encompassed up to June 17, 2016, and therefore, the individuals who are in both cases, still have claims between June 18, 2016 and the present. (*Monserrate,* Doc. 255, p. 3, ¶ 7) Also, even though the

3

positions Defendant agreed were encompassed within the class conditionally certified by the *Monserrate* Court are the same positions encompassed by this action. (*Monserrate* Doc. 135; Doc. 133, pp. 1–2; Doc. 134, pp. 1–2; see also Composite Exhibit A) Any delays in Conditional Certification in this case will further prejudice the rights of the putative class members, given that Defendant already interfered with class members' rights in the *Monserrate* case.

In this regard, when the *Monserrate* Court granted Conditional Certification, the Court limited the class to only employees who worked in and/or reported to the Defendant's Florida locations (Maitland/Lake Mary). Although in *Monserrate* the Plaintiffs filed a Motion to Clarify and Expand the Class ("Motion to Expand" *Monserrate* Doc. 168) it was not ruled upon prior to the parties reaching a settlement nine (9) months later. Additionally, in the *Monserrate* case after Plaintiffs discovered that Defendant did not disclose the names and contact information for at least two (2) individuals, Defendant admitted that it had not provided the contact information for at least four (4) individuals who should have received notice. (*Monserrate* Doc. 189, p. 2, n.1) This was addressed in the Motion to Expand that remained pending with this Court at the time of settlement. (*Monserrate* Doc. 168, p. 3, ¶ 5) These individuals were: Dawn "Dee" Collins, Amy O'Connor, John Butryman and Nancy Whitlow.[8] Dawn "Dee" Collins received word from another *Monserrate* Plaintiff at a later date, and was able to opt-in to the *Monserrate* case right before it settled; however, the other three individuals (and perhaps more), to this day, have never received notice of their rights. Even after Defendant admitted to the Court that it did not produce the contact information for these individuals (*Monserrate* Doc. 189, p. 2, n.1) Defendant still

---

Amended Complaint in this case references certain positions, the titles in the Amended Complaint are not all encompassing because Defendant constantly shifted titles. The class of Analysts in both *Monserrate* and the instant case are exempt employees who process(ed) disability claims. In *Monserrate*, Defendant agreed that the position titles encompassing such a class are those contained with the *Monserrate* Notice. (*Monserrate* Doc. 135; Doc. 133, pp. 1–2; Doc. 134, pp. 1–2; Composite Exhibit A) A copy of the *Monserrate* Notice and a list of these titles agreed to between the parties in *Monserrate* is attached hereto as Composite Exhibit A.
[8] These are the known individuals. There may be more who were left off the list by Defendant.

refused to produce their individual information to Plaintiffs, and stated through its counsel that it would not do so and would only allow Plaintiffs to send Notice through Defendant and Defendant's counsel, thereby acting in complete disregard of the *Monserrate* Court's Order Conditionally Certifying the Class which had already required Defendant to produce this information to Plaintiffs' Counsel.[9]

Additionally, in *Monserrate*, this Court denied without prejudice the posting of notice at Defendant's work site and on Defendant's intranet site for employees. (*Monserrate* Doc. 129, p. 12, n.11) During the Opt-In Period in *Monserrate*, Defendant sent arbitration offers to employees and posted it on Defendant's intranet site telling them if they agreed to arbitrate they would receive additional benefits. (*Monserrate* Doc. 168, p. 7-8) As a result, at least one known putative class memebers, John Butryman, missing from the Court ordered list Defendant was required to produce, signed an arbitration agreement interfering with his rights to be part of a Collective Class Action. (*Monserrate* Doc. 189, p. 7, ¶ 15) Had the Court permitted the *Monserrate* Notice to be posted and had Defendant not interfered with the *Monserrate* Court's management of its collective action by sending arbitration agreements to the putative members in the *Monserrate* class, it is possible that individuals for whom Defendant did not produce contact information and perhaps other employees would have joined.

At this time, Plaintiffs in this case seek conditional certification of a nationwide class. Plaintiffs from Florida, Connecticut, Minnesota, Georgia and New York have already opted-in to this action. Additionally, not only have Plaintiffs filed opt-ins from five (5) states, another reason

---

[9] Some of the individuals whose names were not produced worked in states other than Florida, and as such, there was a belief that Defendant did not produce their contact information in order to avoid the certification of a National Class. This becomes evident by the fact that even after Defendant admitted to the Court that it allegedly inadvertently omitted them, it refused to give their contact information to Plaintiffs' counsel so that Plaintiffs could send them Notice. Even if, as Defendant claims, its failure to produce their contact information was a mistake, why intentionally withhold the information thereafter thereby preventing these class members from receiving notice? It is noteworthy that the names and contact information excluded and the contact information withheld was for people who reported to Florida and to other States.

to conditionally certify a national class is due to the fact that besides these five (5) states, 40-45% of Analysts worked remotely from different states[10]. By certifying this as "National Class," Defendant cannot hide behind a claim that it only had to produce contact information for people residing in those five (5) states. Additionally, the Analysts who worked in/reported to Georgia have now been re-assigned to Minnesota further evidencing the need for a National Class.[11] As discussed in further detail later in this Motion, regardless of which locations these Analysts worked in/reported to, their job duties and responsibilities did not change. (Collins SS ¶ 2-6, 15-17; Daniels-Gavin SS[12] ¶ 4-9, 12-14) All of these Analysts, and those similarly situated, were misclassified as exempt, worked hours in excess of forty (40) hours in a workweek, and did not receive overtime compensation for all hours worked in excess of forty (40) hours in a workweek. Also discussed in detail in Plaintiffs' Incorporated Memorandum of Law, all Plaintiffs and similarly situated employees were subjected to identical or nearly identical pay provisions and job requirements. Multiple Analysts who are employed and/or were employed by Defendant, who worked in and/or reported to Defendant's locations in Florida, Georgia, Connecticut, Minnesota, and New York, have already filed opt-in forms in this case, evidencing an actual desire of additional Analysts outside the State of Florida to join.

As used in the instant action, the term "Analyst" refers to all current, former, and future exempt employees who process(ed) disability claims, including, but not limited to the titles

---

[10] Approximately 40 percent to 45 percent of Analysts are fully remote. (Exh. B, Rodriguez, Miriam Depo. p. 68, ll. 5-7)

[11] On or around October 27, 2016, Defendant announced via mass email to the company that by year-end, Alpharetta Georgia's Short-term Disability/Absence Management, Long-term Disability and Premium Waiver teams will transition to full-time remote work and will be realigned to the Minneapolis and Lake Mary DCOs. (Gutierrez SS ¶ 23-26) Group Benefits Analysts currently reporting to Georgia will now be merging with Lake Mary, Florida and Minneapolis, Minnesota and working remotely. (Gutierrez SS ¶ 24) The Customer Contact Center (CCC), Continuing Ability Review (CAR) and Group Reinsurance Plus (GRP) staff in Alpharetta will no longer report physically to the Alpharetta location. They will become remote and remain reporting to Alpharetta, Georgia. (Gutierrez SS ¶ 25) This announcement further proves that a nationwide class is necessary. There is no difference in how claims are handled within the different locations. It also lends support for the need for notice to be posted on the company intranet given the large amount of remote Analysts that will result from the change.

[12] Sworn statements will be abbreviated as "SS."

Defendant agreed in *Monserrate;* the groups listed in the Amended Complaint in this action and/or any employee who performed substantially the same work as employees with those titles who is/was classified as exempt.[13] (The specific titles Plaintiffs seek to include in the notice are set forth on pages 9-10 herein)

All Analysts are owed full and proper payment of overtime wages and the right to participate in this litigation. Defendant has acted, or refused to act on grounds applicable to all Analysts. Individual members of the class cannot be identified and therefore notified of their right to join this instant action, absent access to Defendant's records and notices in the workplace and on the company's intranet site. It is also important that conditional certification be promptly granted given Defendant's known propensity to interfere with putative class members' rights as discussed further below.

## Memorandum of Law

The Fair Labor Standards Act ("FLSA") requires employers to pay their employees at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207(a)(1). When an employer violates the FLSA, aggrieved employees may bring an action to recover their "unpaid overtime compensation," as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

As a means of conserving judicial resources and lowering costs to aggrieved employees, the FLSA allows actions to be brought as collectives. *Id.*; *see also Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989) "[a] collective action allows […] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system

---

[13] It is Plaintiffs' understanding that Defendant employs individuals with these titles in multiple departments, such as, but not limited to Group Benefits and Group Reinsurance. Further discovery may evidence other Analyst titles as well as other departments, as a result, Plaintiffs are seeking certification of a national class encompassing all employees of Defendant who processed disability claims and who were classified as exempt regardless of the department they worked in or the exact position title that they held.

benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged […] activity."). Once at least one employee acting as a named plaintiff initiates an action to recover unpaid overtime, other aggrieved employees who are "similarly situated" may opt-in if allowed to do so by the district court. 29 U.S.C. § 216(b); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).

While the district court may exercise discretion in deciding whether to allow an action to proceed collectively, *Id*. at 1219, the use of a two-stage procedure has been approved by the U.S. Court of Appeals for the Eleventh Circuit. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).

"The first step of whether a collective action should be certified is the notice stage." *Id*. At this point in the process the district court makes a determination as to whether "notice of the action should be given to potential class members." *Hipp*, 252 F.3d at 1218. This determination is generally based on the court's review of the pleadings, as well as any affidavits that have been submitted. *Id*. The burden is on the named plaintiff to show a "reasonable basis" for his assertion that there are other similarly situated employees, who, if given notice, would opt into the current action. *Morgan*, 551 F.3d at 1260. "Because the court has minimal evidence [at this stage], this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218, *see also Morgan*, 551 F.3d at 1260-61. "If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery." *Hipp*, 252 F.3d at 1218.

The second stage, or the decertification stage, occurs near or at the end of discovery, and is initiated by a defendant's motion to decertify the class. *Id*.

> At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives--i.e. the original plaintiffs--proceed to trial on their individual claims.

*Id*. At this point, the court's analysis is less lenient, and the plaintiff bears a higher burden that that during the notice stage. *Morgan*, 551 F.3d at 1261.

I.    **Facts**

Plaintiffs filed the instant collective action on September 13, 2016, alleging than Defendant misclassified Plaintiffs and other similarly situated employees as exempt from overtime compensation pursuant to the Fair Labor Standards Act ("FLSA") and failed to compensate Plaintiffs and other similarly situated employees at the appropriate rate for all hours worked in excess of forty hours in a workweek. (Doc. 1) On September 28, 2016, Plaintiffs filed an Amended Complaint to further clarify specific positions Plaintiffs believe should be included in the class of Analysts.[14] (Doc. 11) The facts relevant to the instant Motion are as follows:

Plaintiffs and other similarly situated employees were employed by Defendant as Analysts who process(ed) disability claims; who are and/or were classified as exempt; and, with varying job titles, including, but not limited to the groups set forth in Plaintiffs' Amended Complaint, as well as the exact titles Defendant agreed in *Monserrate*: Ability Analyst Segment I, Ability Analyst Segment II, Ability Analyst Segment III, Ability Analyst Segment IV, Ability Analyst IV, LTD Sr. Ability Analyst, Segment II Claims Analyst, LTD Claims Examiner III,

---

[14] Defendant has used numerous job titles to refer to positions performing identical or nearly identical work. As such the list of specific job titles in the Amended Complaint is meant to be illustrative of the job titles Plaintiffs believe are included in the class of Analysts, but is not necessarily exhaustive. Discovery may lead to the conclusion that other specific job titles are within the class of Analysts. The class of Analysts is defined as those who process(ed) disability claims for Defendant and who are and/or were in exempt salaried positions. The most complete list of position titles, at this time, are the titles of Analysts agreed to by Defendant in *Monserrate*, (Composite Exhibit A), and the groups listed in the Amended Complaint in this case which are also included in Plaintiff's Proposed Notice of Collective Action. (Composite Exhibit D)

LTD Segment II Analyst, Senior Ability Analyst, Senior Ability Analyst IV, Senior Ability Analyst II, CAR I Analyst, CAR Specialist Analyst, Short Term Disability Analyst III, Short Term Disability Analyst IV, Long Term Disability Analyst I, Long Term Disability Analyst III, Long Term Disability Analyst IV, Long Term Disability Analyst V, Claims Examiner I, Claims Examiner II, Claims Examiner III, Claims Ability Analyst, Senior Claim Ability Analyst, Specialty Analyst, LTD Claims Analyst III, CAR Sr. Ability Analyst, CAR Specialty Analyst, STD Claims Analyst III, LTD Claims Analyst III, LTD Claims Analyst IV, LTD Claims Analyst V, LTD Senior Claim Ability Analyst, LTD Specialty Analyst, LTD III, LTD IV, LTD V, CAR Analyst, CAR Examiner and CAR Senior Ability Analyst.

Just like in *Monserrate*, all Plaintiffs and other similarly situated employees performed identical, or nearly identical work in completing their job duties and responsibilities.  In fact, some of the Plaintiffs in this case are the same as in *Monserrate*.[15] (Andreas Moses, Doc. 8; Andreas-Moses SS p. 1, ¶ 7; Collins, Doc. 9; Collins SS ¶ 8; Gutierrez, Doc. 10; Gutierrez SS ¶ 8; Norman, Doc. 12; Norman SS ¶ 8; Bourne, Doc. 20; Bourne SS ¶ 8; Matheny, Doc. 21) Generally speaking Plaintiffs and other similarly situated employees performed clerical type tasks to process disability claims, including initial claim setup, telephonic interviews with claimants, and verifying medical information submitted by claimants. (Andreas-Moses SS p. 2, ¶8; Brown SS ¶ 14; Bourne SS ¶ 14; Clark SS ¶ 14; Collins SS ¶ 17; Daniels-Gavin SS ¶ 14; Dearth SS ¶ 14; DePierro SS ¶ 14; Gutierrez SS ¶ 14; Norman SS ¶ 14; Perez SS ¶ 14; Rivera SS ¶ 14; Shimko SS ¶ 14; Somers SS ¶ 14; Wagner SS ¶ 14; Wright, Jacqueline SS ¶ 14; Wright, Steven SS ¶ 14) In processing disability claims Plaintiffs and similarly situated employees were required to follow strict policies and procedures prescribed by Defendant. (Andreas-Moses SS p.

---

[15] The *Monserrate* plaintiffs only settled up to June 17, 2016 (*Monserrate* Doc. 255, p. 3, ¶ 7), and therefore, their time in this action includes claims from that time to the present and potentially moving forward for those who are still employed and who are still classified as exempt.

2, ¶9; Brown SS ¶ 15; Clark SS ¶ 15; Collins SS ¶ 18; Daniels-Gavin SS ¶ 15; Dearth SS ¶ 15; DePierro SS ¶ 15; Gutierrez SS ¶ 15; Norman SS ¶ 15; Perez SS ¶ 15; Rivera SS ¶ 15; Somers SS ¶ 15; Wagner SS ¶ 15; Wright, Jacqueline SS ¶ 15; Wright, Steven SS ¶ 15;) In order to adhere to the policies and procedures prescribed by Defendant, Plaintiffs and similarly situated employees utilized scripted questions and form letters provided to them by Defendant. (Andreas-Moses SS p. 2, ¶10; Bourne SS ¶ 16; Brown SS ¶ 16; Clark SS ¶ 16; Collins SS ¶ 19; Daniels-Gavin SS ¶ 16; Dearth SS ¶ 16; Gutierrez SS ¶ 16; Norman SS ¶ 16; Perez SS ¶ 16; Rivera SS ¶ 16; Shimko SS ¶ 16; Somers SS ¶ 16; Wagner SS ¶ 16; Wright, Jacqueline SS ¶ 16; Wright, Steven SS ¶ 16) Decisions in regard to the settlement of claims were referred to supervisory employees such as "team leaders" or "case managers".  (Andreas-Moses SS p. 2, ¶11; Bourne SS ¶ 17; Brown SS ¶ 17; Clark SS ¶ 17; Daniels-Gavin SS ¶ 17; Dearth SS ¶ 17; DePierro SS ¶ 17; Gutierrez SS ¶ 17; Norman SS ¶ 17; Perez SS ¶ 17; Rivera SS ¶ 17; Shimko SS ¶ 17; Somers SS ¶ 17; Wagner SS ¶ 17; Wright, Jacqueline SS ¶ 17; Wright, Steven SS ¶ 17)  Plaintiffs and similarly situated employees were provided with specific dollar amounts which they could offer to claimants. (Andreas-Moses SS p. 3, ¶1; Bourne SS ¶ 18; Brown SS ¶ 18; Clark SS ¶ 18; Daniels-Gavin SS ¶ 18; Dearth SS ¶ 18; DePierro SS ¶ 18; Norman SS ¶ 18; Perez SS ¶ 18; Rivera SS ¶ 18; Shimko SS ¶ 18; Somers SS ¶ 18; Wagner SS ¶ 18; Wright, Jacqueline SS ¶ 18; Wright, Steven SS ¶ 18;) Plaintiffs and similarly situated employees were not authorized to negotiate claims (Andreas-Moses SS p. 3, ¶2; Bourne SS ¶ 19; Brown SS ¶ 19; Clark SS ¶ 19; Collins SS ¶ 21; Daniels-Gavin SS ¶ 19; Dearth SS ¶ 19; DePierro SS ¶ 19; Gutierrez SS ¶ 18; Norman SS ¶ 19; Perez SS ¶ 19; Rivera SS ¶ 19; Shimko SS ¶ 19; Somers SS ¶ 19; Wagner SS ¶ 19; Wright, Jacqueline SS ¶ 19; Wright, Steven SS ¶ 19), nor did they exercise discretion or independent judgment in processing claims. (Andreas-Moses SS p. 3, ¶5; Bourne SS ¶ 22;

Brown SS ¶ 22; Clark SS ¶ 22; Collins SS ¶ 24; Daniels-Gavin SS ¶ 22; Dearth SS ¶ 22; DePierro SS ¶ 22; Gutierrez SS ¶ 20; Norman SS ¶ 22; Perez SS ¶ 22; Rivera SS ¶ 22; Shimko SS ¶ 22; Somers SS ¶ 22; Wright, Jacqueline SS ¶ 22; Wright, Steven SS ¶ 22) In sum, Plaintiffs and other similarly situated employees performed clerical type tasks, which required nothing more than applying well-established techniques, procedures, or specific standards described in manuals or other sources provided by Defendant. These Analysts were misclassified as exempt and not paid overtime for all hours worked over forty (40).

## II.    Discussion

In order to prevail on a Motion for Conditional Certification at the notice stage, the plaintiff must show a reasonable basis for his assertion that there are other employees who are (1) similarly situated, and (2) interested in opting into the action. *Dybach v. Florida Dep't of Corrections,* 942 F.2d 1562, 1567-1568 (11th Cir. 1991).

Similarly Situated Employees

At the notice stage, the standard in determining whether there are similarly situated employees is extremely lenient; "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (citations, alterations, and internal quotation marks omitted). In determining whether various positions are similar, courts will look to pay provisions and job requirements. *Dybach*, 942 F.2d 1567-68.

Just like in *Monserrate*, and as detailed above, all Plaintiffs and similarly situated employees were subjected to identical or nearly identical pay provisions. (Andreas-Moses SS p. 2, ¶ 2, 3, 5; Brown SS ¶ 7, 8, 10; Bourne SS ¶ 7, 9, 11; Clark SS ¶ 6, 7, 9; Collins SS ¶ 10, 12, 14; Daniels-Gavin SS ¶ 10, 11, 13; Dearth SS ¶ 7, 8, 10; DePierro SS ¶ 7, 8, 10; Gutierrez SS ¶

7, 9, 11; Norman SS ¶ 7, 9, 11; Perez SS ¶ 7, 8, 10; Rivera SS ¶ 7, 8, 10; Somers SS ¶ 7, 8, 10; Shimko SS ¶ 7, 8, 10; Wagner SS ¶ 7, 8, 10; Wright, Jacqueline SS ¶ 7, 8, 10) All Plaintiffs and similarly situated employees were wrongfully classified as exempt from overtime pay by Defendant. (Andreas-Moses SS p. 2, ¶ 3; Bourne SS ¶ 9; Brown SS ¶ 8; Clark SS ¶ 7; Collins SS ¶ 10; Daniels-Gavin SS ¶ 11; Dearth SS ¶ 8; DePierro SS ¶ 8; Gutierrez SS ¶ 9; Norman SS ¶ 9; Perez SS ¶ 8; Rivera SS ¶ 8; Shimko SS ¶ 8; Somers SS ¶ 8; Wagner SS ¶ 8; Wright, Jacqueline SS ¶ 8; Wright, Steven SS ¶ 8) All Plaintiffs and similarly situated employees were expected to work a minimum of forty hours per workweek and in fact, regularly worked hours in excess of forty hours per workweek during the relevant period. (Andreas-Moses SS, p. 2, ¶ 5; Bourne SS ¶ 11; Brown SS ¶ 10; Clark SS ¶ 9; Collins SS ¶ 14; Daniels-Gavin SS ¶ 13; Dearth SS ¶ 10; DePierro SS ¶ 10; Gutierrez SS ¶ 11; Norman SS ¶ 11; Perez SS ¶ 10; Rivera SS ¶ 10; Shimko SS ¶ 10; Somers SS ¶ 10; Wagner SS ¶ 10; Wright, Jacqueline SS ¶ 10; Wright, Steven SS ¶ 10) None of the Plaintiffs or similarly situated employees were paid overtime compensation for hours worked in excess of forty hours in a workweek. (Andreas-Moses SS p. 2, ¶ 3; Clark SS ¶ 7; Bourne SS ¶ 9; Brown SS ¶ 8; Collins SS ¶ 10; Daniels-Gavin SS ¶ 11; Dearth SS ¶ 8; DePierro SS ¶ 8; Gutierrez SS ¶ 9; Norman SS ¶ 9; Perez SS ¶ 8; Rivera SS ¶ 8; Shimko SS ¶ 8; Somers SS ¶ 8; Wagner SS ¶ 8; Wright, Jacqueline SS ¶ 8; Wright, Steven SS ¶ 8) As such, all Plaintiffs and similarly situated employees were subjected to the same wrongful pay provisions by Defendant, who intentionally misclassified Plaintiffs and similarly situated employees as exempt, and were deprived of overtime compensation to which they were entitled.

Just like in *Monserrate* and as discussed in detail above, regardless of their precise titles, all Plaintiffs and similarly situated employees had identical or nearly identical job requirements. All Plaintiffs and similarly situated employees processed disability claims. In processing claims,

all Plaintiffs and similarly situated employees would set up the initial claim, conduct telephonic interviews with claimants, and verify medical information. (see previous cites on pages 10-12 herein) These activities were all conducted within closely prescribed policies and procedures set by Defendant. (*Id.*) Plaintiffs and similarly situated employees utilized scripted questions and form letters, provided by Defendant, in the performance of their duties (*Id.*). Relevant information obtained by Plaintiffs and similarly situated employees was forwarded to a supervisory employees with titles such as a "case manager" or "team lead" for instruction. (*Id.*) Plaintiffs and similarly situated employees were provided with specific dollar amounts which they could offer to claimants. (*Id.*) Plaintiffs and similarly situated employees did not exercise discretion or independent judgment in handling claims. (*Id.*) Further evidence that all Plaintiffs and similarly situated employees worked within the same strict policies and procedures set by Defendant is the inclusion of said policies and procedures for the handling of claims on the company-wide intranet, Analysts utilize when processing claims. (Collins SS ¶ 27; Gutierrez SS ¶ 19) As such, all Plaintiffs and similarly situated employees were subjected to identical or nearly identical job requirements.

Interested Employees

   The second requirement at the notice stage is that the plaintiffs show a reasonable basis for the assertion that there is actual interest from other similarly situated employees in the instant action. *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007). In showing a reasonable basis, the plaintiff's burden is "not onerous." *Kubiak v. S.W. Cowboy, Inc.*, 2014 U.S. Dist. LEXIS 80225, at 34 (M.D. Fla. June 12, 2014). Generally, the plaintiff may show actual interest from other potential plaintiffs in the instant action through affidavits, consents to join, and other evidence from non-named employees who desire to avail

themselves to the instant action. *Vondriska*, 564 F. Supp 2d at 1334. "[T]here is no magic number requirement for the notice stage[….]" *Gonzalez v. TZ Ins. Solutions, LLC*, 2014 U.S. Dist. LEXIS 40188, at 5 (M.D. Fla. March 26, 2014). In *Dieujuste v. R.J. Elec., Inc.*, the United States District Court for the Southern District of Florida found that the plaintiff had met his burden where he proffered his own assertion and the declaration of a single other employee that other similarly situated employees existed, and were interested in joining the action. 2007 U.S. Dist. LEXIS 100531, at 9 (S.D. Fla. August 21, 2007). "Examples of cases where a small number of opt-in plaintiffs satisfied the threshold of interest required for a collective action are numerous." *Kubiak*, 2014 U.S. Dist. LEXIS 80225, at 37-38.

In addition to the ten named Plaintiffs to the instant action, there are twenty-four opt-ins signed by other similarly situated employees and filed in this action, evidencing the existence of Analysts working in and/or reporting to Defendant's locations in five (5) states. (Doc. 2, Exh. 1-11; Doc. 4; Doc. 5; Doc. 6; Doc. 7; Doc. 8; Doc. 9; Doc. 10; Doc. 12; Doc. 13; Doc. 15; Doc. 19; Doc. 20; Doc. 21; Doc. 22; Doc. 37; Doc. 38; Doc. 39, Doc. 40; Doc. 43; Doc. 46; Doc. 47; Doc. 48; Doc. 49) Additionally, Defendant employed individuals who held these same job titles in at least seven different locations within these states, including Alpharetta, Georgia; Minneapolis, Minnesota; Bloomington, Minnesota; Syracuse, New York; Lake Mary, Florida; Windsor, Connecticut; and Simsbury, Connecticut. (Exh. C, Affidavit of Maria Fazzino, ¶ 7) Plaintiffs have filed opt-ins and sworn statements from seven Analysts who reported to Defendant's locations outside of the state of Florida, including Georgia, Connecticut, Minnesota, and New York, who wish to be part of the instant action, directly evidencing that the desire to be a part of the instant action from putative class members is not limited to Florida, but exists on a nationwide basis. (Plaintiff Ceesay Doc. 2-2; Plaintiff Collins Doc. 9; Plaintiff Daniels-Gavin

Doc. 13; Plaintiff Wright, Steven Doc. 43; Plaintiff Andreas-Moses Doc. 8; Plaintiff Wright, Jacqueline Doc. 38; Plaintiff Wagner, Doc. 39) Further, it is clear from the sworn statements of these Analysts, that their work was the same/similar, regardless of which location they worked at and/or reported to.  (Wagner SS ¶ 20; Wright, Jacqueline SS ¶ 20; Wright, Steven SS ¶ 20; Daniels-Gavin SS ¶ 20; Collins SS ¶ 22; Andreas-Moses SS p. 3, ¶3) As such, certification of a National Class is appropriate.

This Court Has Granted Certification in Similar Cases

In *Monserrate v. Hartford Fire Ins. Co.*, 2015 U.S. Dist. LEXIS 86610 (M.D. Fla. 2015), this Court granted Conditional Certification to a virtually identical Class of Analysts. There are only nominal differences in the conditionally certified collective in *Monserrate* and the proposed class in this case as previously discussed. Like in *Monserrate*, Plaintiffs here seek certification of a national class; however, unlike *Monserrate*, there are Opt-Ins in this case from multiple states not just Florida. As such, certification of a national class is appropriate in the current action both because actual interest exists outside of Florida; all these Analysts regardless of the locations they worked in or reported to were doing the same similar job duties; and, these Analyst reside in states all over the country. Also, in the interest of judicial economy, certification of a national class would work to alleviate the need for additional duplicative subsequent actions.

The Merits of Plaintiffs' Case are Not at Issue at This Time

In anticipation of Defendant's defense that Plaintiffs and other similarly situated employees are exempt from overtime compensation, Plaintiffs would like to briefly address this issue. First, whether an employee or class of employees are exempt is not an issue at the notice stage. *Vondriska*, 564 F. Supp. 2d at 1335-36 ("Variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not

considered at the notice stage.") (alterations and internal quotation marks omitted). Notwithstanding that this is a non-issue at this juncture; yet, presupposing that Defendant may still argue this point, Plaintiffs assert that they, as well as other similarly situated employees, do not fall under any exemption within the FLSA. As previously discussed, Plaintiffs were unable to exercise discretion and independent judgment in performing their job duties and responsibilities. Further, at no point during which these Plaintiffs claim they were owed overtime, did Plaintiffs or other similarly situated employees supervise two or more employees.[16] As such, Plaintiffs assert that any alleged exemption from overtime compensation under the FLSA is inapplicable to Plaintiffs and other similarly situated employees.

Contact Information

In *Hoffman-La Roche*, the Supreme Court held that courts may require a Defendant to produce the contact information of potential opt-in plaintiffs pursuant to § 216(b) of the FLSA. 493 U.S. at 170. Because the FLSA "requires that any participants in a collective action must affirmatively opt-in to the lawsuit by giving consent[,]" "the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees." *Carrera v. UPS Supply Chain Solutions, Inc.*, 2011 U.S. Dist. LEXIS 34611, at 16-17 (internal quotation marks omitted). The Eleventh Circuit Court of Appeals has held that a potential plaintiff's statute of limitations is not tolled until the potential plaintiff files his/her opt-in notice. *Grayson*, 79 F.3d at 1106. As such, potential plaintiffs are prejudiced when they do not receive prompt notice because their claims continue to erode with

---

[16] Defendant promoted some Analysts to a supervisory position titled "Team Lead" without actually changing their title from one of the Analyst positions included within this class. A small amount of Analysts may have been promoted to a Team Lead position at some point within the look back period. To be clear, Plaintiffs are not seeking damages for the time period that an Analyst was a Team Lead. However, Analysts who were and/or are Team Leads should still receive notice as they likely did not hold this position for the entire look back period and as such still have claims against The Hartford. An example of individuals in the current action who were Team Leads at some point but were not Team Leads for the entire look back period are Matheny and Filiatrault.

the passage of time. *Beo v. BTB Servs.*, 2009 U.S. Dist. LEXIS 18308, at 3 (S.D. Fla. Feb. 24, 2009) "…Defendants will not be prejudiced by conditional granting of Plaintiffs' Motion to Proceed as Collective Action as they will have an opportunity to move for decertification.") Further, in cases where a defendant employs employees at numerous locations, courts have impliedly found that word of mouth is insufficient. *Cf. Sealy v. Keiser Sch.*, Inc., 2011 U.S. Dist. LEXIS 152369, at 11 (S.D. Fla. November 8, 2011) (holding that certification of a putative class that included employees from fourteen different Defendant locations was proper where all opt-ins on record were from employees of a single location because prior to certification word of mouth was the only available notice).

The putative class of Analysts in this action is likely to include hundreds, possible thousand(s) of Defendant's employees and former employees who reside and worked in/reported to various locations throughout the United States.[17] Due to the size and widespread nature of the class of Analysts affected by Defendant's unlawful practices, prompt notice would be impossible to facilitate without Defendant's production of Analysts' contact information. As such, in order to prevent injustice, this Court should require Defendant to produce the names, addresses, telephone numbers, and email addresses and allow Plaintiffs to provide notice to all current Analysts employed by Defendant who were and/or are classified as exempt and all Analysts employed by Defendant within the 3 years preceding the filing of the instant motion who were and/or are classified as exempt.

---

[17] Defendant may attempt to argue in response to this Motion to Conditionally Certify that Analysts in Lake Mary, Florida should not receive notice of this action, since they did before and as such, had an opportunity to join the *Monserrate* class.  However, this argument has no merit.  First, Analysts who previously received notice may have been current employees who were afraid to join, but now are not; or, their life circumstances may have changed.  Second, Defendant did not produce all the Analyst names and contact information to Plaintiffs' counsel for at least four known individuals, and there may be others who were not included on the list of whom Plaintiffs are unaware.  Third, the fact that they received notice in *Monserrate* does not prevent them from receiving notice in this case, and the *Monserrate* Notice of Collective clearly told them they did not have to join that action. (*Monserrate* Doc. 133-1, p. 4, ¶ 5)

<u>Notice at Defendant's Locations</u>

In the instant action an Order approving the posting of the same notice at Defendant's locations where Analysts work and/or report to, and the posting of the notice on Defendant's intranet site which Hartford employees utilize to review their employee profiles and company updates is proper. Not only is the posting of notice at Defendant's work sites across the nation appropriate, it is also proper for Defendant to be required to post the notice on their intranet site which employees utilize since  many of these Analysts work remotely.[18] The district courts are divided with respect to the posting of these notices. The Southern District of Florida has found "no reason [exists] why this request should not be granted." *Rojas v. Garda CL Southeast, Inc.,* 2013 U.S. Dist. 179595, *34 (S.D. Fla. 2013), *quoting Reyes v. Carnival Corp.,* 2005 U.S. Dist. LEXIS 11949 (S.D. Fla. May 25, 2005) Other district courts have required extraordinary circumstances, such as where the Defendant has failed to fully identify all class members.  *See Gonzalez v. T2 Ins. Solutions, LLC,* 2014 U.S. Dist. LEXIS 40188, *18 (M.D. Fla. 2014) (the right to post notice was denied without prejudice because Plaintiffs had not yet made a showing failed to timely and adequately provide the contact information); *See also Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (Cal. E.D. 2006); *Veliz v. Cintas Corp.*, 2004 U.S. Dist. LEXIS 24871, *12-*13 (Cal. N.D. 2004).[19]

In the instant action, following the Southern District line of cases, and also given that extraordinary circumstances exist, this Court should require notices be posted. In the *Monserrate* case, as previously discussed, Defendant failed to produce the contact information for certain known individuals despite Court Order requiring Defendant to do so. Thereafter Defendant

---

[18] Approximately 40 percent to 45 percent of Analysts are fully remote. (Exh. B, Rodriguez, Miriam Depo. p. 68, ll. 5-7)
[19] In *Monserrate* the Court denied without prejudice the request to post notice at the time of conditional certification. The *Monserrate* Plaintiffs did not have the evidence they later obtained, evidencing that Defendant withheld putative class members' contact information.

refused to give the contact information for these individuals to Plaintiffs as required by Court Order. As such, Defendant has clearly already demonstrated a propensity to exclude the contact information of employees who are members of the putative class of Analysts, thereby prejudicing those individuals by preventing prompt notice of their rights under the law.

In addition, certain individuals whom Defendant left off the contact list, Dawn "Dee" Collins, Nancy Whitlow and John Butryman, received notices from Defendant to arbitrate and not be part of a class action while the *Monserrate* case was in the notice stage. (Collins SS ¶7-9; *Collins SS filed in Monserrate* Doc 234-1-*Collins SS* ¶ 6; *Monserrate* Doc. 189, p. 7, ¶ 15) Thus, Defendant interfered with this Court's orderly management of the class by not disclosing contact information for individuals who were part of the class, and by then sending them notices to arbitrate. While Plaintiffs do not dispute that an employer may potentially have a valid arbitration agreement that employees may sign, a Defendant cannot interfere with a court's management of a collective, especially by trying to get Analysts to not opt-in to a collective by signing an arbitration agreement.[20] *See Billingsley v. City Trends, Inc.*, 560 Fed. Appx.914 (11th Cir. 2014)

Defendant's prior deceptive acts support the posting of notices so that putative Plaintiffs' rights are not compromised. *See Longcrier. v. HL-A Co., Inc,* 595 F. Supp. 2d. 1218 (S.D. Ala. 2008)(defendant/employer could not interfere with putative class members even prior to conditional certification by getting them to answer surveys and sign declarations against their interests which compromised their claims); *Sjoblom vs. Charter Commons., LLC*, 2007 U.S. Dist. LEXIS 94829 (W.D. Wis. 2007)(even though court had not conditionally certified a

---

[20] Defendant may attempt to argue that arbitration notices were not sent to members or putative members of the *Monserrate* class but that is not true. At least three known members of the class received them. Collins received one; she just chose not to sign it. (*Monserrate* Doc. 189, p. 7, ¶ 15) Nancy Whitlow did not respond (*Monserrate* Doc. 189, p. 7, ¶15). Butryman also received one and signed it. (*Monserrate* Doc. 189, p. 7, ¶ 15)

collective class, it still found that defendant/employer acted improperly by questioning employees and failing to inform them of the lawsuit and their potential interests in the lawsuit.)

Plaintiffs are requesting that notice be sent to employees of Defendant who held the position titles listed in the attached notice. (Exh. D) Plaintiffs acknowledge that the list of titles above is more expansive than that listed in Plaintiffs' Amended Complaint; however the list provided in Plaintiffs' Amended Complaint was not intended to be limited to the group of positions, rather the list provided in Plaintiffs' Amended Complaint utilized broad categories of position groupings intended to be illustrative, not exclusive. Plaintiffs' Amended Complaint also clearly alleges that it included any employee who performed substantially the same work. (Doc.11, p. 2 ¶ 4) The list requested is the same one as Defendant agreed to in *Monserrate* for exempt Analysts who process(ed) disability claims, with the addition of the groups listed in the Amended Complaint. Defendant is the one who has all the lists of all the Analysts who fall within the class at this juncture; therefore, until the same is produced, the positions listed in the *Monserrate* case and in the Amended Complaint are the most current lists for employees in these positions.

Plaintiffs' Proposed Notice

In order for a plaintiff's proposed notice to be adequate, it must be "timely, accurate, and informative." *Hoffman-La Roche*, 493 U.S. at 172. Additionally, the notice must accurately notify potential plaintiffs of both their right to join, as well as the risks associated with opting into the action. *Ciani v. Talk of the Town Rests.*, Inc., 2015 U.S. Dist. LEXIS 5580, at 13 (M.D. Fla. January 16, 2015). In order for the action to proceed in diligent fashion, the proposed notice should also include a deadline before which potential plaintiffs must opt-in. *Hoffman-La Roche*, 493 U.S. at 172; *see also Rojas v. Garda CL Southeast, Inc.*, 297 F.R.D. 669, 680 (S.D. Fla.

December 23, 2013) (holding that a Motion for Conditional Certification should include a deadline for potential opt-in plaintiffs to file their written consent). Plaintiffs' proposed notice (Exh. D) meets the above requirements, and thus should be approved by this Court. The same positions agreed to by Defendant in *Monserrate* are included in the Notice in this case.

Tolling

In this instant action an Order approving tolling the claims of putative Analysts who have not yet joined is appropriate. Courts have tolled the statute of limitations in FLSA actions in the interest of justice to protect putative opt-in plaintiffs' diminishing claims. *Chapman v. Fred's Stores of Tenn, Inc.*, 2013 U.S. Dist. LEXIS 58069, *34 (N.D. Ala. 2013).

Conditional certification of a national class is appropriate in the instant action. Plaintiffs learned that in November or December 2016, Defendant reclassified at least some of the Analysts as non-exempt. While Defendant's remedial measure may protect some Plaintiffs and putative class members from future harm, it also limits and continually decreases the overall recovery available to such employees. In other words, any delay in Analysts receiving notice causes their backend statute of limitations period to continue to expire, given that, due to the policy change by Defendant, additional damages in the future may not be available if they have been re-classified. The end result is that putative class members overall recovery is diminished every day that they are without notice even if they are still employed. Also, although this Court tolled the running of the limitations period until the filing of the CMR, it did not do so for the period of time after the CMR. Moreover, any order by this Court on this Motion would arguably supersede the prior FLSA Order and therefore this new requested tolling date back to the filing of the instant Motion should be granted. Finally, if Defendant agreed to a longer tolling provision, it still does not prevent putative plaintiffs' claims from running, from becoming non-

existent, or from putative plaintiffs from being lulled into believing that they do not have claims. In *Monserrate*, Defendant interfered with putative class members rights to be part of a collective by never producing some of the class members contact information and then by trying to get people to sign arbitration agreements. The same should not be allowed to happen in the instant case and a tolling provision would not prevent the same from occuring. Any further delays will open the door to these types of abuses. *See Longcrier, supra; see also Sjoblom, supra.*

Defendant's actions are clear evidence of a need for tolling. For many years, Defendant has been violating the FLSA with respect to Analysts. In this regard, Defendant willfully ignored in-house counsel's advice to classify Analyst positions as non-exempt (*Monserrate* Doc. 219, pp. 11-12); shifted position titles and created "segmentation" despite the job duties and responsibilities of the positions staying the same (*Monserrate* Doc. 219, p. 11); Defendant argued that only the Maitland/Lake Mary office location should be included in *Monserrate* and then omitted contact information for individuals who not only reported to Maitland/Lake Mary but also reported to locations in other states (Collins SS ¶ 7-9; *Monserrate* Doc. 168, p. 7, 16-19, 21-22; *Monserrate* Doc. 189 p. 7, ¶ 15); Defendant omitted Analysts who reported to Defendant's Group Reinsurance Department despite the fact that these Analysts perform(ed) the same/similar job duties as the Analysts in the Group Benefits Department and were putative members of the conditionally certified *Monserrate* class (Collins); and, Defendant sent mass emails and posted on its intranet site a request that employees who were part of the *Monserrate* class to arbitrate (Collins SS ¶ 9; *Monserrate* Doc. 168, p. 7, ¶ 15, p. 8, ¶ 16-17; *Monserrate* Doc. 189, p. 7, ¶ 15). Putative Plaintiffs should not continue to suffer by not receiving notice of their rights as Defendant gains from its unlawful and deceptive acts.

There is no reason to delay in the conditional certification of a national class. These Analysts are entitled to be notified of their rights so that Defendant does not do anything more to interfere with their rights.[21]

### 3.01(g) CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), the undersigned has conferred with counsel for Defendant and is authorized to represent that Defendant opposes this Motion.

**WHEREFORE**, for the reasons discussed above Plaintiffs request this Court to:

a. Recognize this matter as a Collective Action pursuant to § 216(b) of the FLSA and grant conditional certification of a National Collective Class;

b. Enter an order requiring Defendant, within ten (10) days of an Order granting Conditional Certification, to produce the names, addresses, telephone number, and email addresses to Plaintiffs' counsel, of Analysts currently employed by Defendant who were and/or are classified as exempt and for all Analysts employed by Defendant within the three years preceding the filing of the instant Motion who were and/or classified as exempt;

c. Enter an Order permitting Plaintiffs' proposed "Notice of Collective Action" be sent to all Analysts currently employed by Defendant who were and/or are classified as exempt and to all Analysts employed by Defendant within the 3 years preceding the filing of the instant motion who were and/or are classified as exempt;

d. Enter an Order requiring Defendant within ten (10) days of an Order granting Conditional Certification, to post the attached "Notice of Collective Action" at all of Defendant's locations where employees who process disability claims work and on

---

[21] While as a professional courtesy Plaintiffs may agree to a limited extension for Defendant to respond, given Defendant's deceptive actions and the fact that this case is virtually the identical to *Monserrate,* conditional certification should not be delayed.

the Company's intranet site since forty (40) to forty-five (45) percent, if not more, of Analysts work remotely[22];

e.   Allow such Analysts ninety (90) days from the date the Notices are mailed and from the date Defendant posts notice at these work locations and on Defendant's company intranet site, whichever is later, to complete, sign and file with the Court such Consent to Join;

f.   Appoint the Named Plaintiffs as the Class Representatives with authority to make decisions, negotiate and settle this case on behalf of the class; and,

g.   Enter an Order tolling the statute of limitations for any opt-in Plaintiffs who receive the Court Ordered Notice back to the date of the filing of the instant Motion for Conditional Certification.

Respectfully submitted this 14th day of December, 2016.

> /s/ Mary E. Lytle
> **Mary E. Lytle, Esq.**
> Florida Bar No. 0007950
> **David V. Barszcz, Esq.**
> Florida Bar No. 0750581
> **Robert N. Sutton, Esq.**
> Florida Bar No. 0121688
> **LYTLE & BARSZCZ, P.A.**
> 543 N. Wymore Road, Ste. 103
> Maitland, Florida 32751
> Telephone: (407) 622-6544
> Facsimile: (407) 622-6545
> mlytle@lblaw.attorney
> dbarszcz@lblaw.attorney
> rsutton@lblaw.attorney
> **Counsel for Plaintiffs**

---

[22] Approximately 40 percent to 45 percent of Analysts are fully remote. (Exh. B, Rodriguez, Miriam Depo. p. 68, ll. 5-7) However, now that the Alpharetta, Georgia LTD Analysts will become remote employees (see footnote 9), this number will climb dramatically.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 14, 2016, the foregoing was electronically filed with the Clerk of Court by using the E-Portal system, which will send a notice of electronic filing to: **Patrick J. Bannon, Esquire (Pro Hac Vice),** pbannon@seyfarth.com, **Molly C. Mooney, Esquire (Pro Hac Vice)**, mmooney@seyfarth.com, and **Anthony S. Califano, Esquire (Pro Hac Vice)**, acalifano@seyfarth.com, **SEYFARTH SHAW LLP.,** Two Seaport Lane, Suite 300, Boston, MA 02210; **Arlene K. Kline, Esquire,** Arlene.kline@akerman.com, and **Melissa S. Zinkil, Esquire**, Melissa.zinkil@akerman.com, **AKERMAN, LLP.,** 777 South Flagler Drive, Suite 1100, West Tower, West Palm Beach, Florida 33401.

*/s/ Mary E. Lytle*
**Counsel for Plaintiffs**