UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CORDELL ALLEN; ALIA CLARK;
PATRICIA DEARTH; CHRIS
DEPIERRO; JESSICA LEIGHTON;
JESSICA PEREZ; JAMIE RIVERA;
LAYFON ROSU; MARISSA SHIMKO;
and CAROL SOMERS,

      Plaintiffs,

v.                                                                    Case No. 6:16-cv-1603-Orl-37KRS

HARTFORD FIRE INSURANCE
COMPANY,

      Defendant.

_____

**ORDER**

In this action, Plaintiffs Cordell Allen, Alia Clark, Patricia Dearth, Chris DePierro,

Jessica Leighton, Jessica Perez, Jamie Rivera, Layfon Rosu, Marissa Shimko, and Carol

Somers ("**Named Plaintiffs**") seek relief under the Fair Labor Standards Act ("**FLSA**")

on behalf of themselves and other similarly situated employees. (Doc. 11.) As such,

Plaintiffs moved to conditionally certify a collective class of disability claims analysts

employed by Defendant Hartford Fire Insurance Company ("**The Hartford**"). (Doc. 51

("**Motion to Certify**").)[1]

In the present motion, The Hartford moves to dismiss the claims of four Named

---

[1] The Court has partially granted the Motion to Certify in a contemporaneously
filed Order.

Plaintiffs and ten opt-in plaintiffs for lack of subject matter jurisdiction. (Doc. 96 ("**MTD**"); *see also* Doc. 132.)[2] Specifically, the MTD argues that the Court does not have jurisdiction over these claims because the employees agreed to submit employment-related disputes to arbitration. (Doc. 96.) Plaintiffs oppose the motion. (Docs. 123, 133.) For the reasons set forth below, the Court finds that the MTD is due to be granted.

## I.  BACKGROUND

The Hartford's arbitration policy covers all employees: (1) who received a written offer of employment on or before March 7, 2017; and (2) whose first day of work was on or after April 1, 2012. ("**New Hires**"). (Doc. 96-3 ("**Arbitration Policy**").) According to an affidavit submitted by compliance officer Maria Q. Fazzino ("**Ms. Fazzino**"), "The Hartford requires new employees to review and agree to comply with an Arbitration Policy and a New Hire Agreement." (Doc. 96-1, ¶¶ 1, 2.) "When an employee certifies that he or she has reviewed and agreed to comply with the Arbitration Policy and New Hire Agreement, he or she receives a Certificate of Completion, which includes their name and the date and time they completed the process." (*Id.* ¶ 4.) "A Certificate of Completion is also stored electronically by The Hartford." (*Id.*)

To support their MTD, The Hartford has produced copies of Certificates of

---

[2] At the time that the MTD was filed, twenty-six non-named employees had submitted notices consenting to opt into this action ("**Opt-In Plaintiffs**") (Docs. 2-1, 2-2, 6-1, 6-2, 7, 8, 9, 10, 12, 13, 15, 19, 20, 21, 22, 37, 38, 39, 40, 43, 46, 47, 48, 49, 58, 59.) Since that time, ten additional Opt-In Plaintiffs have filed consent-to-join notices. (Docs. 106, 108, 124, 125, 131, 141, 144, 145, 155, 160.)

Completion certifying that Scott Agnew, Cordell Allen, Antonia Britt, Bretton Scott Brown, Alia Clark, Melissa Cooper, Chris DePierro, Yanique Dixon, Jessica Leighton, Michael Milton, Monica Tinsley, and Jordan Watkins ("**Arbitration New Hires**") reviewed and agreed to comply with the Arbitration Policy and The New Hire Agreement. (Doc. 96-1, ¶ 4; *see also* Docs. 96-7, 96-8, 96-9, 96-10, 96-11, 96-12, 96-13, 96-14, 96-15, 96-16, 96-17, 96-18.)

Additionally, on August 19, 2015, The Hartford offered other employees the option of agreeing to the Arbitration Policy in exchange for one additional day of paid time off ("**PTO Offer**").[3] (Doc. 96-1, ¶ 6.) Hence The Hartford's Arbitration Policy also covers employees who accepted the PTO Offer. (*See* Doc. 96, pp. 4–5.)

In her affidavit, Ms. Fazzino avers that the process by which employees selected whether to agree to the PTO Offer was electronic. (Doc. 96-1, ¶ 7.) "After accepting or declining participation in the Arbitration Policy, each employee who responded to the offer received an Arbitration Policy Certification stating whether they chose to agree to the Arbitration Policy and the date on which they made their choice." (*Id.* ¶ 8.) Baronda

---

[3] In a related action, the Court conditionally certified a 29 U.S.C. § 216(b) class of "Analysts" who: (1) had worked for The Hartford at either its Maitland, Florida or Lake Mary, Florida locations during the preceding three years; and (2) worked more than forty hours in a workweek without being paid overtime compensation. *Monserrate v. Hartford Fire Ins. Co.*, Case No. 6:14-cv-149-Orl-37GJK ("*Monserrate*"), Doc. 129 (M.D. Fla. July 2, 2015). According to The Hartford, it purposefully excluded members of the *Monserrate* class from the PTO Offer to prevent taking any action "that could interfere with their right to join the lawsuit" or that "could be viewed as confusing their decision." *Monserrate*, Doc. 189-1, ¶¶ 8–11, 15–16, 20. But due to database coding errors, The Hartford inadvertently sent the PTO Offer to three individuals within the *Monserrate* class. *See id.* ¶¶ 8–11, 21.

Staten ("**Ms. Staten**") and Steven Wright ("**Mr. Wright**") assented to the Arbitration Policy by accepting the PTO Offer and electronically checking a box that read "Yes I have read, understand and agree to comply with the Arbitration Policy." (Docs. 96-24, 96-25.)

Based on the foregoing, The Hartford requests that the Court dismiss the claims of the Arbitration New Hires, Ms. Staten, and Mr. Wright for lack of jurisdiction. (Doc. 96.) In their response, Plaintiffs argue that the arbitration agreements are unenforceable because The Hartford knowingly misclassified employees as exempt and engaged in misconduct during the pendency of *Monserrate*. (Docs. 123, 133.) Notwithstanding Plaintiffs' claims of misconduct, the Court finds that MTD is due to be granted.

## II. LEGAL STANDARDS

Under the Federal Arbitration Act ("**FAA**"), "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). Upon the motion of any party to a valid arbitration agreement, courts must stay or dismiss litigation of all claims that fall within the agreement's scope and compel arbitration according to the agreement's terms. *See* 9 U.S.C. §§ 3–4. Several courts within this District have treated motions to dismiss in favor of arbitration as motions challenging subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[4]

---

[4] *E.g.*, *Schriever v. Navient Sols., Inc.*, No. 2:14-cv-596-FtM-38CM, 2014 WL 7273915, at *2, *3 (M.D. Fla. Dec. 19, 2014); *Wash v. Mac Acquisition of Del., LLC*, No. 6:14-cv-1424-Orl-40TBS, 2014 WL 5173504, at *1 (M.D. Fla. Oct. 14, 2014); *Bell v. Atl. Trucking Co.*, No. 3:09-cv-406-J-32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009), *aff'd*, 405 F. App'x 370 (11th Cir. 2010).

Arbitration agreements are presumptively valid and enforceable. *See* 9 U.S.C. § 2. However, arbitration under the FAA is ultimately "a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989), and parties opposing arbitration can challenge the formation and validity of a contract containing an arbitration clause. Specifically, the Eleventh Circuit recognizes "three distinct types of challenges to a contract containing an arbitration clause": (1) challenges to the formation, or "the very existence," of the contract; (2) challenges "to the validity of the arbitration clause standing alone"; and (3) challenges "to the validity of the contract as a whole." *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015).

Nonetheless, under a delegation provision "parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell*, 804 F.3d at 1146.

### III.  ANALYSIS

#### A.  Choice of Law

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The U.S. Supreme Court, however, has added an important qualification: "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* (quoting *AT&T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 463, 649 (1986)).

"Under Florida's choice-of-law rules, *lex loci contractus* applies in contract

matters[.]" *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092 (11th Cir. 2004). "*Lex loci contractus* provides that the law of the jurisdiction where the contract was executed governs interpretation of the substantive issues regarding the contract." *Id.* n.1 (quoting *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988). However, "under Florida law, courts will enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1347 (11th Cir. 2005) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000)).

In light of these principles, The New Hire Agreement, which incorporates the Arbitration Policy, is governed by Connecticut law, as it contains a choice-of-law provision selecting Connecticut law. (Doc. 96-5, p. 3.) Because Ms. Staten and Mr. Wright live—and presumably accepted the PTO Offer—in New York (Doc. 96, p. 9), New York governs their agreements.

### B.     Delegation Provision

"Among other things, the parties may agree to arbitrate gateway questions of arbitrability[,] including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, No. 16-15574, 2017 WL 338110, at *3 (11th Cir. 2017) (publication pending). "An antecedent agreement of this kind is typically referred to as a 'delegation provision.'" *Id.*

"Where an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision. *Parnell*,

804 F.3d at 1144. If the plaintiff raises a challenge to the contract as a whole, the federal courts may not review his claim because it has been committed to the power of the arbitrator. *Id.* at 1146. "[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision as valid . . . and must enforce it . . . , leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* at 1146–47.

To determine whether the parties have manifested a clear and unmistakable intent to arbitrate gateway issues, courts look to the wording of the delegation provision itself. *Waffle House*, 2017 WL 338110, at *6. Here, the Arbitration Policy explicitly incorporates the provisions of The Hartford's arbitration process. (Doc. 96-3, p. 5; *see* Doc. 96-4 ("**Arbitration Process**").) In turn, the Arbitration Process provides that the American Arbitration Association's Employment Dispute Resolution Rules ("**AAA Employment Rules**") govern issues not specifically addressed by the procedures outlined in the Arbitration Process. (Doc. 96-4, p. 3.)

The AAA Employment Rules state that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope[,] or validity of the arbitration agreement." *Employment Arbitration Rules and Mediation Procedures*, AM. ARB. ASS'N 17 (Nov. 1, 2009), https://www.adr.org/sites/default/files/Employment%20Rules.pdf. The U.S. Court of Appeals for the Eleventh Circuit has definitively held that, by incorporating AAA rules into an agreement to arbitrate, the parties have "clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid." *Terminex Int'l v. Palmer*

*Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005). Under both Connecticut and New York law, this interpretation is consistent with the plain meaning of the delegation provision in the AAA Employment Rules.[5] So in the face of such language, the Court must give effect to the parties' intent and compel arbitration. *Waffle House*, 2017 WL 3381100, at *7.

Here, The Hartford has produced evidence that four Named Plaintiffs and ten Opt-In Plaintiffs agreed to arbitrate their FLSA claims and, in doing so, delegated to the arbitrator the decision as to whether their arbitration agreements are valid. The Arbitration New Hires agreed to these terms as part of the onboarding process when they were hired. Ms. Staten and Mr. Wright also agreed to such terms by accepting the PTO Offer. As Plaintiffs have only challenged the validity of the Arbitration Policy as a whole, the Court must enforce the delegation provision. And because the Arbitration Policy gives the arbitrator the power to rule on his or her jurisdiction—inclusive of any objections concerning the validity of the arbitration agreement—this Court is without jurisdiction to make that determination.

## IV. CONCLUSION

In compelling arbitration, the FAA requires courts to either stay or dismiss a law suit. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Given the number of individuals in this action who must now arbitrate their claims, the Court finds that

---

[5] *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("In interpreting a contract under New York law, words and phrases should be given there plain meaning[.]"); *Barnard v. Barnard*, 570 A.2d 690, 696 (Conn. 1990) (applying the plain meaning rule under Connecticut law).

administratively staying such claims and requiring these individuals to produce periodic status reports would become unmanageable. Thus, under the circumstances, the Court finds that dismissal without prejudice is warranted.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Hartford's Motion to Dismiss under Rule 12(b)(1) and the Federal Arbitration Act and Incorporated Memorandum of Law (Doc. 96) is **GRANTED**.

2. The claims of Cordell Allen, Alia Clark, Chris DePierro, Jessica Leighton, Scott Agnew, Antonia Britt, Bretton Scott Brown, Melissa Cooper, Yanique Dixon, Michael Milton, Monica Tinsley, Jordan Watkins, Baronda Staten, and Steven Wright are **DISMISSED WITHOUT PREJUDICE**. If these individuals wish to pursue their claims, they must submit them to arbitration consistent with the terms of the Arbitration Policy. To the extent that any other Opt-In Plaintiffs assented to the Arbitration Policy, they must too submit their FLSA claims to arbitration.

3. The Clerk is **DIRECTED** to **TERMINATE** Plaintiffs Cordell Allen, Alia Clark, Chris DePierro, and Jessica Leighton as parties to this action.

4. Any putative opt-in plaintiffs who have assented to The Hartford's Arbitration Policy may not participate in this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 25, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record