UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CORDELL ALLEN; ALIA CLARK;
PATRICIA DEARTH; CHRIS
DEPIERRO; JESSICA LEIGHTON;
JESSICA PEREZ; JAMIE RIVERA;
LAYFON ROSU; MARISSA SHIMKO;
and CAROL SOMERS,

     Plaintiffs,

v.                                              Case No. 6:16-cv-1603-Orl-37KRS

HARTFORD FIRE INSURANCE
COMPANY,

     Defendant.
_____

## ORDER

The instant action is brought under the Fair Labor Standards Act ("**FLSA**"). (Docs. 1, 11.) Among other things, the FLSA requires employers engaged in interstate commerce to pay their employees overtime compensation, which is defined as at least 1.5 times the employee's regular rate for any hours exceeding forty per workweek. 28 U.S.C. § 207(a)(1). Employees who work in a bona fide administrative capacity are not entitled to overtime compensation under the FLSA. 28 U.S.C. § 213(a)(1). This exemption is often referred to as the administrative employee exemption.

The present case was initiated by employees who claim that their employer willfully misclassified them as exempt administrative employees and, thus, failed to pay them overtime compensation to which they were entitled under the FLSA. (Docs. 1, 11.)

Seeking relief for both themselves and a collective class of similarly situated employees, Plaintiffs request that the Court conditionally certify a nationwide class of current and former employees who: (1) worked for Defendant Hartford Fire Insurance Company ("**The Hartford**") as analysts ("**Analysts**")[1] processing disability claims; and (2) routinely worked more than forty hours a week without receiving overtime compensation. (Doc. 51 ("**Motion to Certify**").) The Hartford vehemently opposes conditional certification. (Doc. 111 ("**Response**").) But for the reasons set forth below, the Court finds that the Motion to Certify is due to be granted in part. Consequently, the Court will authorize Plaintiffs to distribute notice to individuals that fall within the class definition. However, as explained in a contemporaneously-filed Order, this class will exclude individuals that have assented to The Hartford's arbitration policy.

---

[1] Throughout this Order, the term "Analyst" refers to employees who processed disability claims for The Hartford under the following titles: (1) Ability Analyst Segment I; (2) Ability Analyst Segment II; (3) Ability Analyst Segment III; (4) Ability Analyst Segment IV; (5) Ability Analyst IV; (6) LTD Sr. Ability Analyst; (7) Segment II Claims Analyst; (8) LTD Claims Examiner III; (9) LTD Segment II Analyst; (10) Senior Ability Analyst; (11) Senior Ability Analyst IV; (12) Senior Ability Analyst II; (13) CAR I Analyst; (14) CAR Specialist Analyst; (15) Short Term Disability Analyst III; (16) Short Term Disability Analyst IV; (17) Long Term Disability Analyst I; (18) Long Term Disability Analyst III; (19) Long Term Disability Analyst IV; (20) Long Term Disability Analyst V; (21) Claims Examiner I; (22) Claims Examiner II; (23) Claims Examiner III; (24) Claims Ability Analyst; (25) Senior Claim Ability Analyst; (26) Specialty Analyst; (27) LTD Claims Analyst III; (28) CAR Sr. Ability Analyst; (29) CAR Specialty Analyst; (30) STD Claims Analyst III; (31) LTD Claims Analyst III; (32) LTD Claims Analyst IV; (33) LTD Claims Analyst V; (34) LTD Senior Claim Ability Analyst; (35) LTD Specialty Analyst; (36) LTD III; (37) LTD IV; (38) LTD V; (39) CAR Analyst; (40) CAR Examiner; and (41) CAR Senior Ability Analyst. (Doc. 51, pp. 9–10.) The term "Analyst" also includes employees who performed substantially the same work as those under the foregoing titles. (*Id.* at 7.)

# I. PROCEDURAL HISTORY

To properly assess the parties' dispute, the Court must look back more than three years to the start of a closely-related FLSA action—*Monserrate v. Hartford Fire Insurance Company*, Case No. 6:14-cv-149-Orl-37GJK ("*Monserrate*"). The named plaintiffs in *Monserrate* were Analysts who worked for The Hartford in Orange County, Florida. *Monserrate*, Doc. 51, ¶¶ 3–13. As here, the *Monserrate* plaintiffs alleged that The Hartford violated the FLSA by: (1) failing to pay its employees overtime compensation for hours worked in excess of forty hours a week; (2) failing to maintain accurate records of its employees' work hours; and (3) inaccurately classifying its Analysts as exempt from overtime pay despite knowledge that such Analysts were non-exempt. *Id.*, ¶¶ 16, 19, 21, 27–29.

A little over a year into the litigation, the named plaintiffs moved to conditionally certify a national class of similarly situated Analysts. *Id.*, Doc. 19. The Court ultimately granted the motion in part—limiting the scope of the proposed class due to the absence of evidence that employees outside The Hartford's central Florida locations were interested in opting into the action. *Id.*, Doc. 129 ("*Monserrate* **Certification Order**"). The named plaintiffs later moved to clarify and expand the class based on after-acquired evidence that similarly situated Analysts from additional states were interested in joining the *Monserrate* class. *Id.*, Doc. 168 ("**Motion to Expand**"). However, the parties settled the action before the Court resolved the Motion to Expand. (*See* Doc. 248.)

Three months after the *Monserrate* settlement, Plaintiffs initiated the instant action. (*See* Doc. 1.) While almost identical to the plaintiffs' pleadings in *Monserrate*, here the

operative Complaint also references Analysts employed by The Hartford in Seminole County, Florida, Connecticut, New York, Georgia, and Minnesota. (Doc. 11, ¶¶ 5–14, 17.) Unsurprisingly, Plaintiffs have submitted evidence from Analysts that have worked in these five states to support their Motion to Certify. (*See* Docs 52-1 to 52-20.)

## II.   PARTIES' POSITIONS

In addition to seeking conditional certification of a national class of Analysts, the Motion to Certify requests that the Court: (1) order The Hartford to produce the names, addresses, telephone numbers, and emails of each putative class member; (2) authorize notice of this action to be sent to all putative class members employed by The Hartford within the three years preceding the Motion to Certify; (3) require The Hartford to post notice of this action at its work sites and on its company intranet website; and (4) toll the statute of limitations for the putative class members' claims back to the date that the Motion to Certify was filed. (Doc. 51.)

In its Response, The Hartford urges the Court to deny the Motion to Certify. (Doc. 111.) As grounds, The Hartford contends that: (1) conditionally certifying a collective class in a successive, near-identical action encourages serial litigation and does not serve the goals of the FLSA; (2) the Court should apply a heightened standard in assessing the Motion to Certify because the parties engaged in substantial discovery in *Monserrate*; (3) the Court should deny the Motion to Certify on the ground that Plaintiffs are not similarly situated due to distinct levels of discretion and independent judgment exercised in performing their duties; and (4) Plaintiffs' proposed notice to putative class members lacks critical information. (*Id.*)

The Court will address each of these issues in turn.

### III.    SUCCESSIVE FLSA ACTIONS

In its Response, The Hartford argues that the Court should deny the Motion to Certify because "[a]llowing [Plaintiffs] to use this second action as a vehicle to disseminate a second round of notices to an overlapping group of Hartford employees would render the opt-in deadline for collective action insignificant and would not promote resolution of multiple claims in one proceeding." (Doc. 111, p. 7.) In making this point, The Hartford relies heavily on: (1) the fact that Plaintiffs received notice of, and the opportunity to join, the *Monserrate* action but allowed the opt-in deadline to pass without asserting their rights; and (2) the U.S. Supreme Court's statement in *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), that "[t]he judicial system benefits by efficient resolution in *one proceeding* of common issues of law and fact arising from the same alleged discriminatory activity." (*Id.* at 6–9 (emphasis added).) The Hartford also contends that "repeat notifications supervised by the Court can risk encouraging, or appearing to endorse, serial litigation" because "[w]hen an employee repeatedly receives an official-looking notice about a case against their employer, the repetition may create the misimpression that the employer has violated the law." (*Id.* at 9.)

At a March 28, 2017 hearing on the Motion to Certify, the Court spent considerable time on the issue of whether Plaintiffs could properly assert identical and successive collective FLSA claims against The Hartford, given their opportunity to join the *Monserrate* class. (*See* Doc. 134.) Since that time, Plaintiffs have submitted supplemental authority from the Southern District of New York answering this question in the

affirmative. (Doc. 142-1.) After conducting its own research, the Court agrees.

Importantly, under the FLSA, "no employee shall be a party plaintiff to any such action *unless* he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b) (emphasis added). So unlike a class member's obligation to opt *out* of class litigation under Federal Rule of Civil Procedure 23, a person who fails to opt *in* to a § 216(b) class cannot be bound by or benefit from the judgment. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). Accordingly, the Court finds that an individual's election not to opt in to a prior FLSA action does not bar him from bringing his own suit at a later date. *See also Diatta v. Iguana N.Y. Ltd.*, No. 15 Civ. 6399(AT), 2016 WL 2865132, at *4 (S.D.N.Y. 2016) (quoting *Romero v. LaRevise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014)). A contrary conclusion would nullify the procedural protections provided by 29 U.S.C. § 216(b) and blur the distinction between a FLSA collective action and a Rule 23 class action.

The Court also rejects The Hartford's argument that granting the Motion to Certify would be at odds with the goal of judicial economy. Contrary to The Hartford's position, the purpose of authorizing a § 216(b) class is "to *avoid* multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. Dekalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) (emphasis added). Thus, "[c]ourt authorization of notice [to putative class members] serves the legitimate goal of avoiding a multiplicity of duplicative suits." *Hoffman-La Roche*, 439 U.S. at 172. Indeed, certification and the issuance of notice to a national class is

more likely to *reduce* the amount of litigation against The Hartford, as a collective action will resolve the claims of multiple plaintiffs in one proceeding. The alternative would be potentially endless piecemeal litigation, which is arguably the antithesis of judicial economy. Moreover, "[a] collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche*, 439 U.S. at 170.

Finally, The Hartford argues that court-authorized notice is not necessary here because putative class members have likely already received notice of their rights under the FLSA due to media coverage of the *Monserrate* settlement. (Doc. 111, p. 8.) Even so, the Court is not persuaded to dispense with the issuance of notice where the Supreme Court has sanctioned it. As The Hartford argues, it is certainly true that "in the age of social media," Plaintiffs' counsel may have numerous alternative avenues by which to contact potential opt-in plaintiffs, but this does not render Court-authorized notice by mail any less viable. Despite the advancement of technology, paper has not become obsolete, and the Court declines to abandon traditional methods of issuing notice to putative class members.

## IV.    CLASS CERTIFICATION

The FLSA authorizes aggrieved employees to maintain actions for FLSA violations on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). To proceed collectively, at least one employee must act as a named plaintiff, after which other "similarly situated" employees may affirmatively opt in if the district court permits. *See id.*

**A.    Varying standards**

Although district courts have wide discretion in determining how to manage a collective FLSA action, *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001), the U.S. Court of Appeals for the Eleventh Circuit has "sanctioned a two-stage procedure, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The first stage is the "notice" or "conditional certification" stage. *Morgan*, 551 F.3d at 1260–61. At this stage, "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)[2]). Named plaintiffs "[have] the burden of showing a reasonable basis for [their] claim that there are other similarly situated employees" who, if notified, would opt into the action. *Morgan*, 551 F.3d at 1260–61. "Because the court has minimal evidence" at the notice stage, the reasonable basis standard is "fairly lenient"[3] and "typically results in conditional certification of a representative class." *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at

---

[2] The *Mooney* decision was later overruled on grounds not applicable here. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 n.10 (5th Cir. 2004). Specifically, the Supreme Court overturned *Mooney's* holding that direct evidence of discrimination is required for a mixed-motives analysis in the Age Discrimination in Employment context. *Id.*

[3] The Eleventh Circuit has also described the reasonable basis standard as "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Morgan*, 551 F.3d at 1260–61 (citations omitted).

1213–14). "If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in[,]'" and "[t]he action proceeds as a representative action throughout discovery."[4] *Id.* (quoting *Mooney*, 54 F.3d at 1213–14).

The second stage is the "decertification" stage, so named because it is triggered by a defendant's motion to decertify the representative class "after discovery is largely complete and the matter is ready for trial." *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1213–14). At the decertification stage,

> the court has much more information on which to base its decision, and [it] makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e.[,] the original plaintiffs—proceed to trial on their individual claims.

*Id.* The decertification stage is "less lenient" than the notice stage, and named plaintiffs "bear a heavier burden." *Morgan*, 551 F.3d at 1261. At this stage, courts consider the following factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.*

---

[4] Because similarly situated employees must affirmatively opt into § 216(b) collective actions, district courts cannot create a § 216(b) class through certification alone. *See Morgan*, 551 F.3d at 1259. "Rather, the existence of a collective action under § 216(b) depends on the active participation of other plaintiffs." *Id.* "Therefore, the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees," so that those employees can "make informed decisions about whether to participate." *Id.* (quoting *Hoffman-La Roche*, 493 U.S. at 170).

However, district courts are not required to utilize this two-stage procedure. *Hipp*, 252 F.3d at 1219. The Eleventh Circuit has acknowledged that the two-tiered certification procedure "may be most useful when making a certification decision early in the litigation before discovery has been completed." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007). Consistent with this observation, district courts have departed from the two-stage analysis in circumstances where the court has ample information to make a determination.

For example, in situations concerning multiple related actions, where substantial discovery has taken place in the first-filed action, "a number of [c]ourts have skipped the first stage altogether" when considering a motion for conditional certification in the second-filed action. *See, e.g., Vaughn v. Oak St. Mortg., LLC*, Case No. 5:05-cv-0311-Oc-10GJR, Doc. 85, pp. 8, 9 (M.D. Fla. Mar. 24, 2006), *report and recommendation adopted in part by* 2006 WL 1529178 (M.D. Fla. May 30, 2006). These courts jump straight to the second-stage analysis due to the availability of factual information upon which they can base their decision. *Id.; see also Hardemon v. H&R Block E. Enters., Inc.*, No. 11-20193-CIV, 2011 WL 3704746, at *2–3 (S.D. Fla. Aug. 23, 2013) (bypassing the suggested two-tier approach and applying a heightened level of scrutiny due to the voluminous discovery conducted in related actions). Moreover, at least one court has applied the stricter standard where a significant number of potential plaintiffs had opted into the suit prior to the resolution of the motion for conditional certification. *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497–98 (D.N.J. 2000) (stating that the case

was "clearly beyond the first tier" of the two-stage analysis where more than 100 potential plaintiffs had already opted in).

"Other courts have held that when significant evidence is available, an intermediate standard applies." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 824 (N.D. Ohio 2011). Nonetheless, "courts have had a difficult time elucidating an intermediate, or hybrid, standard that falls between the lenient first-stage and the strict second-stage review." *Id.* at 823. In sifting through several decisions that applied different, but unclear, intermediate standards, the district court in *Creely v. HCR ManorCare, Inc.* articulated a standard pursuant to which it compared the "[p]laintiff's allegations in their [c]omplaint with the factual record assembled through discovery to determine whether [the] [p]laintiffs [had] made a sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees . . . may be uncovered by soliciting opt-in plaintiffs." *Id.* at 827. While continuing to characterize this as a lenient standard, the *Creely* court differentiated it by requiring the plaintiffs to demonstrate that they had "advanced the ball down the field"—that is, "shown some progress as a result of the discovery as measured against the original allegations and defenses." *Id.* Many district courts across the country have followed suit. *E.g.*, *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-cv-1571, at *5–6, *10 (M.D. Pa. Mar. 24, 2017); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 481–482 (S.D.N.Y. 2016); *McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2011 WL 6153091, at *4–5 (W.D. Mo. Dec. 12, 2011).

B.      Analysis

Plaintiffs argue that the Court should apply the lenient notice-stage analysis in evaluating the Motion to Certify. (*See* Doc. 51, p. 12.) But, pointing to the substantial discovery completed in *Monserrate*, The Hartford asks the Court to apply the heightened burden traditionally reserved for the decertification stage. (Doc. 111, p. 10.) In doing so, The Hartford urges the Court to consider decertification factors, including The Hartford's evidence in support of their defense "that the employees at issue exercised sufficient discretion and independent judgment to satisfy the administrative [employee] exemption."[5] (*Id.* at 11.) Based on such evidence, The Hartford argues that individualized differences in its Analysts' discretion and independent judgment render this action ill-suited for collective resolution. (*Id.*)

Splitting the baby, the Court finds that a hybrid, intermediate standard is the best approach under the circumstances. Unlike the modest amount of information before the Court at the time of the *Monserrate* Certification Order, the Court now "has a much thicker record" and "can therefore make a more informed factual determination of similarity." *See Morgan*, 551 F.3d at 1261. Notably, Plaintiffs' counsel has had the benefit of months of

_____

[5] The Department of Labor's regulations set forth the requirements for the administrative exemption. *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 626 (11th Cir. 2004). Under the applicable tests, exempt employees must: (1) primarily perform office or non-manual work directly related—that is, of "substantial importance"—to management policies or general business operations of their employer or its customers; (2) customarily and regularly exercise discretion and independent judgment; (3) execute special assignments and tasks under only general supervision; and (4) spend at least eighty percent of their time on exempt administrative tasks, or non-exempt activities that are 'directly and closely related' to exempt administrative activities. *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 626–28 (11th Cir. 2004). *Id.* at 626–28.

discovery in *Monserrate* where, according to The Hartford, the parties deposed twenty-three witnesses and produced thousands of documents. (Doc. 111, p. 3.) To be sure, "class certification issues cannot be decided in a vacuum." *West v. Verizon Commc'ns*, No. 8:08-cv-1325-T-33MAP, 2009 WL 2957963, at *4 (M.D. Fla. Sept. 10, 2009). Thus, the Court deems it necessary to apply a more searching approach than the traditional, lenient conditional certification analysis. But despite the breadth of available information, discovery in *this* action is still on-going; hence the Court also declines to impose the decertification standard outright.

In any event, the Court must still satisfy itself that there are other employees "who desire to 'opt-in' and who are 'similarly situated.'" *See Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). Because Plaintiffs have satisfied both prongs of this inquiry, the Court will conditionally certify a national § 216(b) class of Analysts who have: (1) worked for The Hartford at any of its locations during the three years preceding the Analysts' decision to opt into this action[6]; and (2) worked more than forty hours in a workweek without being paid overtime compensation ("**Class Definition**"). This class excludes current or former employees who are subject to The Hartford's arbitration policy.

### 1. Interested Employees

"A showing that others desire to opt in is required before certification and notice will be authorized by the court." *Vondriska v. Premier Mortg. Funding, Inc.*,

---

[6] As explained fully below, the Court declines to toll the applicable statute of limitations.

564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007). Plaintiffs may show such interest from affidavits, consents to join, and other evidence from non-named employees. *Id.*

At the time Plaintiffs submitted their Motion to Certify, sixteen consent-to-join notices had been filed by non-named employees not subject to arbitration agreements.[7] (*See* Docs. 2-2, 6-1, 6-2, 8, 9-1, 10, 12–13, 20–21, 37–39, 46, 48–49.) Of these individuals, several have worked for, or reported to, Hartford locations outside Florida. Karen Andreas-Moses lives in New York and reported to The Hartford's offices in Syracuse, New York and Lake Mary, Florida. (Doc. 52-1, p. 1.) Dawn "Dee" Collins has reported to The Hartford's Florida, Georgia, and Connecticut locations. (Doc. 52-2, ¶¶ 2, 5.) Katrice Daniels-Gavin lives in Georgia and has worked in and reported to The Hartford's locations in Alpharetta, Georgia and Windsor, Connecticut. (Doc. 52-6, ¶ 4.) Elizabeth Wagner lives in New York and has reported to The Hartford's locations in Syracuse, New York and Lake Mary, Florida. (Doc. 52-15, ¶ 4.) Jacqueline Wright lives in New York and has reported to The Hartford's locations in Syracuse, New York and Lake Mary, Florida. (Doc. 52-16, ¶ 4.) Scott Filiatrault worked for The Hartford at its Lake Mary, Florida and Minnesota locations. (Docs. 6, 6-1.) The remaining employees live and work in Florida. Thus, unlike *Monserrate*, Plaintiffs have demonstrated that non-named employees from five different states desire to opt into this action.

In addition, Plaintiffs submitted a sworn affidavit from Maria Q. Fazzino, assistant

---

[7] Since filing the Motion to Certify, Plaintiffs have submitted twelve additional consent-to-join notices. (Docs. 58, 59, 106, 108, 124, 125, 131, 141, 144, 145, 155, 160.) The Court has not considered these notices in the present analysis, as it is without information as to how many of these employees have assented to arbitration agreements.

vice president of corporate compliance for The Hartford. (Doc. 51-3.) In the affidavit, Ms. Fazzino avers that employees holding the same titles as the named plaintiffs in *Monserrate*[8] worked in seven different locations, including Alpharetta, Georgia, Minneapolis, Minnesota, Bloomington, Minnesota, Syracuse, New York, Lake Mary, Florida, Windsor, Connecticut, and Simsbury, Connecticut. (Doc. 51-3, ¶ 7.) Plaintiffs also submitted evidence that 40 to 45% of LTD Analysts work remotely. (Doc. 51–2, p. 4.) As such, the Court finds that Plaintiffs have sufficiently "credit[ed] their assertions that aggrieved individuals exist[] in the broad class that they propose[]." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983).

### 2. Similarly-Situated Employees

Plaintiffs have also shown that these individuals are similarly situated. "Factors considered in determining whether the potential plaintiffs are similarly situated to the named plaintiffs include[:] (1) job duties and pay provisions[;] and (2) whether they were subject to a common policy, plan, or scheme that forms the basis of the alleged FLSA violation." *Palma v. MetroPCS Wireless, Inc.*, No. 8:13-cv-698-T-33MATP, 2013 WL 6597079, at *2 (M.D. Fla. Dec. 16, 2013). "Plaintiffs need show only that their positions are similar, not identical, to the positions held by putative class members." *Hipp*, 252 F.3d at 1217 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). At least one district court has recognized that subgroups of employees who share the same

---

[8] LTD Claims Analyst III, LTD Claims Analyst IV, LTD Claims Analyst V, Claim Ability Analyst, Sr. Claim Ability Analyst, CAR Specialty Analyst, and LTD Sr. Claim Ability Analyst. (Doc. 52-3, ¶ 4.)

duties can be similarly situated for purposes of a § 216(b) collective action. *See Dreyer v. Baker Hughes Oilfield Operations, Inc.*, Civil Action No. H-08-1212, 2008 WL 5204119, at *2 (S.D. Tex. Dec. 11, 2008).

Here, Plaintiffs contend that they are similarly situated to putative class members because they were all: (1) subject to the same wrongful pay provisions by The Hartford, who intentionally misclassified them as exempt; and (2) deprived of overtime compensation to which they were entitled. (Doc. 51, p. 3.) Under *Creely's* hybrid standard, a plaintiff seeking conditional certification of a § 216(b) class, must have "shown some progress as a result of [prior] discovery," such that—measured against the original allegations and defenses—"it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs." 789 F. Supp. 2d at 827. However, just as in the traditional notice stage, "the Court does not weigh the relative merits of the parties' claims at this conditional certification stage." *Id.* Indeed, in the absence of a fully developed factual record, Plaintiffs' burden is "focused on advancing their own original allegations of a sufficiently similar class, not on refuting [The Hartford's] arguments and defenses." *See id.*

As an initial matter then, The Hartford's remaining arguments against conditional certification fail, as they concern defenses that appear to be individual to each Plaintiff.

> Even under the hybrid standard . . . the Court is simply making a determination on whether there is enough evidence to support sending out notifications to a potential similarly situated opt-in class. The arguments regarding whether the collective action opt-in group is manageable or whether individual issues predominate are properly addressed under the more stringent stage-two analysis. *Id.* at 828.

Thus, the Court leaves for another day the determination as to whether individualized determinations on the application of the administrative exemption will render this action ill-suited to proceed collectively.

Adapting the *Creely* standard to this action, the Court will only measure whether, as a result of the discovery conducted in the *Monserrate*, Plaintiffs have made a sufficient showing—beyond that in *Monserrate*—that a class of similarly situated employees exists. To do so, the Court begins with the findings set forth in the *Monserrate* Certification Order. There, the Court found that the six named and five opt-in plaintiffs: (1) worked for the Hartford as salaried claims analysts; (2) routinely worked more than forty hours a week without being paid overtime compensation; (3) used The Hartford's "canned interview scripts, form letters, and comprehensive, flow-like manuals to investigate and analyze claims and to make adjudicatory recommendations," and (4) thus, were not truly required to exercise discretion and independent judgment as required for application of the FLSA's administrative exemption. *Monserrate*, Doc. 129, pp. 7–9. In reaching this determination, the Court relied on responses to court interrogatories and deposition testimony from both the named and potential opt-in plaintiffs. *Id.*

Since that time, Plaintiffs have amassed more evidence to support their claim that a national class of similarly situated employees may be uncovered by soliciting opt-in notices. First, the sixteen viable consent-to-joint notices each indicate that the non-named employees: (1) have been employed as an Analyst for The Hartford; and (2) were not paid overtime compensation for hours worked in excess of forty hours a week. (*See* Docs. 2-2,

6-1, 6-2, 8, 9-1, 10, 12–13, 20–21, 37–39, 46, 48–49.) Second, disregarding the sworn statements submitted by individuals subject to arbitration agreements, the Motion to Certify is also supported by sworn statements from five named Plaintiffs and eight potential opt-in plaintiffs who aver that they: (1) process(ed) disability claims as Analysts for The Hartford; (2) performed the same duties despite varying job titles[9]; (3) are salaried employees; (4) regularly work more than forty hours a week without overtime compensation; (5) perform clerical tasks, including initial claim setup, telephonic interviews with claimants, and verifying claimants' medical information; (6) are required to follow strict policies and procedures by utilizing scripted questions and form letters; (7) are provided with strict dollar amounts to offer claimants for settlement purposes[10]; (8) are not authorized to negotiate claims; and (9) have their work frequently reviewed by "Team Leads." (Docs. 52-1, 52-2, 52-5, 52-6, 52-7, 52-9, 52-10, 52-11, 52-12, 52-13, 52-14, 52-15, 52-16.)

Many of these individuals claim that: (1) they did not exercise discretion or independent judgment in handling disability claims for The Hartford; and (2) believe that they have been misclassified by The Hartford as exempt from overtime compensation. (Doc. 52-1, pp. 2, 3; Doc. 52-2, ¶¶ 9, 22; Doc. 52-5, ¶¶ 12, 24; Doc. 52-6, ¶¶ 11, 22; Doc. 52-7,

---

[9] Others represent that their duties and responsibilities did not change despite working for different departments. (Doc. 52-5, ¶ 6; Doc. 52-6, ¶ 8.)

[10] According to the sworn statements submitted, decisions regarding the settlement of claims are referred to team leaders, case managers, claims specialists, or lump-sum settlement coordinators. (Doc. 52-1, p. 2; Doc. 52-2, ¶ 17; Doc. 52-5; ¶ 20; Doc. 52-6, ¶ 17; Doc. 52-7, ¶ 17; Doc. 52-9, ¶ 17; Doc. 52-9, ¶¶ 9, 20; Doc. 52–11, ¶ 17; Doc. 52-12, ¶ 17; Doc. 52-13, ¶ 17; Doc. 52-14, ¶ 17; Doc. 52–15, ¶ 15; Doc. 52-16, ¶ 17.)

¶¶ 8, 22; Doc. 52-11, ¶¶ 8, 22; Doc. 52-12, ¶¶ 8, 11; Doc. 52-13, ¶¶ 8, 22; Doc. 52-14, ¶¶ 8, 22; Doc. 52-15; ¶ 8; Doc. 52-16, ¶¶ 8, 22.)

Finally, Plaintiffs have tendered a January 12, 2012 internal memo ("**Memo**") generated by The Hartford's general counsel suggesting that several Analyst positions should be converted to non-exempt positions because the employees' actual duties do not meet significant levels of independent judgment and discretion required under the FLSA's administrative exemption. (Doc. 123-1, p. 2 (discussing all STD positions, all front-end LTD positions, and all CAR III LTD positions).) In particular, the Memo describes such positions as "[b]est highlighted by formulaic processes, limited approval amounts, [an] inability to deny or terminate claims, frequent escalations to managers, and extensive layers of review." (*Id.*)

Based on the foregoing, the Court finds that Plaintiffs' evidence in support of their Motion to Certify sufficiently advances their position from the evidence in the record at the time of the *Monserrate* Certification Order—particularly as it relates to a finding that Analysts nationwide are similarly situated. (*See supra* Part IV.B.1); *see also Palma*, 2013 WL 6597079, at *7. As such, the Court finds that—even under the more searching hybrid standard—Plaintiffs have demonstrated that they are similarly situated to putative class members with respect to their: (1) job duties; (2) pay provisions; and (3) allegations that The Hartford violated the FLSA by misclassifying them as exempt employees and denying them overtime compensation.[11]

---

[11] *See Creely*, 789 F. Supp. 2d at 835 ("[T]he focus of the Court's inquiry at this point in considering conditional certification is not whether there has been an actual violation

# V.    TOLLING

Under § 216(b), "opt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996).[12] Here, Plaintiffs request that the Court toll the statute of limitations for the claims of putative class members back to the date that the Motion to Certify was filed. (Doc. 51, p. 22.) In support, Plaintiffs set forth two distinct grounds. First, Plaintiffs argue that, because The Hartford reclassified some Analysts as non-exempt at the end of 2016, this measure "limits and continually decreases the overall recovery available to such employees." (Doc. 51, p. 2.) Second, Plaintiffs point to alleged misconduct on the part of The Hartford, including: (1) ongoing violations of the FLSA; (2) willfully ignoring in-house counsel's Memo; (3) failing to provide plaintiffs' counsel in *Monserrate* with contact information for Analysts who reported to both Florida and out-of-state Hartford locations; (4) failing to provide plaintiffs' counsel in *Monserrate* with contact information for Analysts in the Group Reinsurance Department despite the fact that those Analysts performed similar job duties as Analysts in the conditionally certified class; and (5) offering arbitration agreements to employees during the pendency of the

---

of law but rather on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated." (quoting *Brabazon v. Aurora Health Care, Inc.*, No. 10-CV-714, 2011 WL 1131097, at *3 (E.D. Wis. Mar. 28, 2011))).

[12] "Congress amended § 216(b) of the FLSA to provide that an employee must file written consents in order to be made a party plaintiff to the collective action under § 216(b). In discussing this amendment, Congress expressed the concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint." *Grayson*, 79 F.3d at 1106.

*Monserrate* litigation (collectively, "**Misconduct Allegations**")). (Doc. 51, p. 23.) In its Response, The Hartford contends that tolling is not necessary because potential plaintiffs may join this suit or file individual suits while the Motion to Certify is pending. (Doc. 11, p. 17.)

"Equitable tolling is an extraordinary remedy which is typically applied sparingly." *Steed v. Head*, 219 F.3d 1298, 1299 (11th Cir. 2000). Courts may equitably toll the applicable statute of limitations "only upon finding an inequitable event that prevented plaintiff's timely action." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993). "The burden is on the plaintiff to show that equitable tolling is warranted." *Id.*

> The interests of justice are most often aligned with the plaintiff when the defendant misleads her into allowing the statutory period to lapse; when she has no reasonable way of discovering the wrong perpetrated against her; or when she timely files a technically defective pleading and in all other respects acts with proper diligence which statutes of limitation were intended to insure.

*Id.* "The interests of justice side with the defendant when the plaintiff does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running; and of course, when she fails to act with due diligence." *Id.* "It bears emphasizing, however, that due diligence on the part of the plaintiff, though necessary, is not sufficient to prevail on the issue of equitable tolling." *Id.*

Applying these principles in the FLSA context, courts within this Circuit have declined to toll the statute of limitations "unless a plaintiff is reasonably induced to delay the filing of a claim." *See Chapman v. Fred's Stores of Tenn., Inc.*, No. 2:08-cv-1247-HGD,

2013 WL 1767791, at *14–15 (N.D. Ala. Mar. 15, 2013); *see also Palma*, 2013 WL 6836535, at *1–2. Notwithstanding the Misconduct Allegations, Plaintiffs have not shown that any potential class member was reasonably induced to refrain from filing a timely claim. Rather, this is a situation in which "[e]ach potential claimant had the opportunity to file an individual action to vindicate his or her legal rights under [the] FLSA"—even if that required initiation of an individual FLSA claim in an arbitral forum. *See In re Tyson Foods, Inc.*, No. 4.07-MD-1854 (CDL), 2008 WL 4613654, at *3 (M.D. Ga. Oct. 15, 2008). And to the extent Plaintiffs suggest that equitable tolling should be granted "as a matter of course during the pendency of a conditional class certification request," the Court disagrees. *See Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1244 (S.D. Ala. 2008). Such an action would transform "this extraordinary remedy into a routine, automatic one." *Id*. Hence the Court finds that equitable tolling is inappropriate.

## VI.    NOTICE TO CLASS MEMBERS

### A.    Dissemination

Plaintiffs also request that the Court: (1) require The Hartford to produce the names, addresses, telephone numbers, and e-mail addresses for employees within the Class Definition; (2) allow Plaintiffs to provide notice to all current Analysts employed by The Hartford within the Class Definition; (3) require that The Hartford post such notice at locations where Analysts work and/or report; and (4) require that The Hartford post such notice on the company intranet site. (Doc. 51, pp. 18–21.)

 Courts presiding over collective actions may properly order defendants to produce employee contact information to ensure that "accurate and timely notice

concerning the pendency of the collective action" is disseminated to putative class members. *See Hoffman-La Roche*, 493 U.S. at 169–174. As it did in *Monserrate*, the Court here too will: (1) require The Hartford to disclose the contact information—inclusive of names, addresses, telephone numbers, and *personal* e-mail addresses[13]—of Analysts employed within three years preceding the issuance of this Order; and (2) allow Plaintiffs to disseminate notice to putative class members. *See Monserrate*, Doc. 129, pp. 10–11, 14.

The Court will also require The Hartford to post notice to its business locations and intranet site. Importantly, in support of this request, Plaintiffs contend that The Hartford failed to produce the contact information for certain employees following class certification in *Monserrate*. (Doc. 51, p. 19.) Courts within this District have denied requests to require defendants to post notice at job sites absent circumstances in which defendants: (1) have "produced an inadequate list of names and/or addresses to the [p]laintiff, thereby necessitating some other form of notice," *Sutton v. Premium Car Wash*, No. 6:12-cv-1254-Orl-28TBS, 2013 WL 2474416, at *4 n.3 (M.D. Fla. June 10, 2013); or (2) "failed to cooperate in the collective action process," *Ciani v. Talk of the Town Rests., Inc.*, No. 8:14-cv-2197-T-33AEP, 2015 WL 226013, at *6 (M.D. Fla. Jan. 16, 2015). In response, The Hartford states that four individuals were left off the notice list in

_____

[13] This limitation on the e-mail addresses that The Hartford is required to disclose evidences the Court's agreement that requiring The Hartford to disclose "the work email addresses it provides to its employees is more intrusive than allowing Plaintiff[s] to use personal email addresses." *Williams v. Coventry Health Care of Fla., Inc.*, No. 6:16-cv-731-Orl-41TBS, 2016 WL 7013530, at *2 (M.D. Fla. Oct. 4, 2016), *report and recommendation adopted by* 2016 WL 6947354 (M.D. Fla. Nov. 28, 2016). Absent a showing that personal email is insufficient, the Court will not require The Hartford to provide Plaintiffs with work email addresses.

*Monserrate* because they were coded as reporting to non-Florida locations in The Hartford's database. (Doc. 111, p. 19.)

Despite any inadvertence on The Hartford's part, it does not contest that an inadequate contact list was produced in *Monserrate*. As such, the Court will require The Hartford to post notice on its intranet page and at its job sites. Such notice will ensure that any failure on The Hartford's part—inadvertent or not—to provide Plaintiffs with complete contact information, will not prevent potential class members from receiving notice of this action. *See, e.g., Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006).

## B. Content

Finally, The Hartford objects to the omission of certain information in Plaintiffs' proposed notice. (Doc. 51-4 ("**Proposed Notice**").) First, The Hartford argues that individuals who agreed to arbitrate should be excluded from any opt-in notice. The Court agrees. Plaintiffs must add language to their Proposed Notice stating that employees subject to The Hartford's arbitration policy will not be permitted to join this collective action.

Next, The Hartford contends that the Proposed Notice should be on Plaintiffs' counsel letterhead, not under the Court's caption. The Court disagrees. Many courts—including this one—routinely approve collective notices with the case caption in its heading. *E.g., Czopek v. TBC Retail Grp., Inc.*, No. 8:14-cv-675-T-36TBM, 2015 WL 4716230, at *11 (M.D. Fla. Aug. 7, 2015) (concluding that "it is customary that a notice be styled with the court's name as the heading"). The Hartford has not persuaded the Court to

depart from this practice. The Proposed Notice already includes a statement that "the Court has taken no position on the merits of this case, or as to the claims or defenses" (*see* Doc. 51-4, p. 1); this is sufficient to dispel any notion of judicial endorsement.

The Hartford also requests that the Proposed Notice include the following provisions:

> (1) The Hartford denies that it owes any of the plaintiffs any overtime pay. The Hartford contends that plaintiffs' duties made them exempt from the law requiring overtime pay. The Court overseeing this lawsuit has not determined whether anyone is entitled to any compensation;
>
> (2) If you join this lawsuit and the Court determines that Defendant is the prevailing party, The Hartford may attempt to recover its costs from you; and
>
> (3) Opt-in plaintiffs may be required to sit for deposition or appear for trial in the Middle District of Florida, which encompasses Seminole, Brevard, Orange, Osceola, and Volusia counties.

(Doc. 111, pp. 19–20.)

Upon consideration, the Court finds that the inclusion of the first and third statements is appropriate, as they comport with the goal of disseminating complete and accurate notice that will allow putative class members to make an informed decision about whether to participate. *See Hoffman-La Roche*, 493 U.S. at 170.[14] However, the second

---

[14] *See also Sealy v. Keiser Sch., Inc.*, No. 11-61426-CIV, 2011 WL 7641238, at *4 (S.D. Fla. Nov. 8, 2011) (finding that the plaintiff's proposed notice failed to fully advise potential class members: (1) of the defendant's position; and (2) that potential class members may be required to appear for trial in Fort Lauderdale, Florida); *Czopek v. TBC Retail Grp., Inc.*, 2015 WL 4716230, at *11 (finding that the proposed notices were deficient because they failed to inform potential opt-in plaintiffs that they may be required to

statement is already included in the Proposed Notice. (Doc. 51-4, p. 4.)

Plaintiff must incorporate the foregoing changes to the Proposed Notice before disseminating it. Failure to do so may result in the imposition of sanctions.

## VII.  CASE MANAGEMENT AND SCHEDULING ORDER

Lastly, because conditional certification may necessitate modification of the Court's Case Management and Scheduling Order, the Court will permit the parties to submit a joint motion to modify the deadlines therein.

## VIII.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Conditional Certification of Collective Class and Issuance of Notice and Incorporated Memorandum of Law (Doc. 51) is **GRANTED IN PART AND DENIED IN PART** to the extent set forth in this Order.

2. The Court **CONDITIONALLY CERTIFIES** a national § 216(b) class of Analysts who have: (1) worked for The Hartford at any of its locations during the three years preceding their decision to opt into this action; and (2) worked more than forty hours in a workweek without being paid overtime compensation. This class **EXCLUDES** Analysts that have agreed to arbitrate their claims pursuant to The Hartford's arbitration policy. Putative class members will have a sixty (60) day period in which to opt

physically appear in the Middle District of Florida).

into this action.

3.    The Court **APPOINTS** named Plaintiffs Patricia Dearth, Jessica Perez, Jamie Rivera, Layfon Rosu, Marissa Shimko, and Carol Somers as class representatives.

4.    On or before Thursday, **August 31, 2017**, The Hartford is **DIRECTED** to disclose to the named Plaintiffs the contact information of all Analysts who have: (1) worked at or reported to any of The Hartford's locations during the three years preceding the date of this Order; and (2) are not subject to The Hartford's arbitration policy.

5.    The Court **APPROVES** Plaintiffs' Notice of Collective Action (Doc. 51-4), subject to the incorporation of the following changes:

a.    Plaintiffs must change the start date of the statute of limitations period from December 2, 2013, to **August 25, 2014**, in the "To" recipient line, under the sections titled "Persons Eligible to Participate in the Lawsuit," and "Your Choice to Participate in the Lawsuit," and on the Consent to Join Collective Action form. (Doc. 51-4, pp. 1, 2, 7.)

b.    Under the section titled "Persons Eligible to Participate in the Lawsuit," Plaintiffs must delete language stating: "Even if you signed an Arbitration Agreement with Hartford you may still Opt-In to this action." In its place, Plaintiffs must state that employees subject to The Hartford's arbitration policy will not be permitted to

join this collective action.

c.     Plaintiffs must remove the named Plaintiffs subject to The Hartford's arbitration policy from their "Description of The Lawsuit"—specifically, Cordell Allen, Alia Clark, Chris DePierro, and Jessica Leighton.

d.     Under the Description of the Lawsuit, Plaintiffs must specifically state that "The Hartford denies that it owes any of the plaintiffs overtime pay. The Hartford contends that plaintiffs' duties made them exempt from the law requiring overtime pay."

e.     Under the Effect of Joining the Lawsuit, the Plaintiffs must adjust the language to state that: "If you choose to join this suit, you may be required to provide information, sit for deposition, and you may be required to appear for a trial and testify in Court **in the Middle District of Florida, which encompasses Seminole, Brevard, Orange, Osceola, and Volusia counties.**"

6.     The Court **AUTHORIZES** distribution of the modified notices—by U.S. mail and personal email—on or before Tuesday, **October 31, 2017**.

7.     On or before Friday, **September 1, 2017**, The Hartford is **DIRECTED** to post Plaintiffs' revised notice at its job site locations and on its company intranet site and provide certification to the Court that it has done so. The Hartford may remove such notices on or after Wednesday, **November 1, 2017**.

8.     The parties may file a joint motion for modification of the Court's Case

Management and Scheduling Order on or before Tuesday, **September 5, 2017**. Failure to do so may result in the Court revising its Case Management and Scheduling Order *sua sponte.*

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 25, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record