# United States District Court
## Middle District Of Florida
### Orlando Division

**PATRICIA DEARTH, et al.,**

    **Plaintiffs,**

**v.**                                                                                     **Case No: 6:16-cv-1603-Orl-37KRS**

**HARTFORD FIRE INSURANCE COMPANY,**

    **Defendant.**

## Report and Recommendation

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **THE HARTFORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE PROPER METHOD FOR CALCULATING ANY OVERTIME DAMAGES (Doc. 313)**
>
> **FILED:**      **June 5, 2018**

**A.    INTRODUCTION.**

Plaintiffs are both current and former employees of Defendant, Hartford Fire Insurance Company, who worked as Analysts.[1] Plaintiffs contend that Defendant improperly classified them

---

[1] As in the collective-action certification order, in this Report and Recommendation the term "Analyst" refers to employees who processed disability claims for Defendant under the following titles: "(1) Ability Analyst Segment I; (2) Ability Analyst Segment II; (3) Ability Analyst Segment III; (4) Ability Analyst Segment IV; (5) Ability Analyst IV; (6) LTD Sr. Ability Analyst; (7) Segment II Claims Analyst; (8) LTD Claims Examiner III; (9) LTD Segment II Analyst; (10) Senior Ability Analyst; (11) Senior Ability Analyst IV; (12) Senior Ability Analyst II; (13) CAR I Analyst; (14) CAR Specialist Analyst; (15) Short Term Disability Analyst III; (16) Short Term Disability Analyst IV; (17) Long Term Disability Analyst I; (18) Long Term Disability Analyst III; (19) Long Term Disability Analyst IV; (20) Long Term Disability Analyst V; (21) Claims Examiner I; (22) Claims Examiner II; (23) Claims Examiner III; (24) Claims Ability Analyst; (25) Senior Claim Ability Analyst; (26) Specialty Analyst; (27) LTD Claims Analyst III; (28) CAR

as exempt from the overtime compensation provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiffs, on behalf of themselves and other similarly situated employees, filed suit against Defendant to recover overtime compensation. Doc. 1.

On December 14, 2016, Plaintiffs moved for "Conditional Certification of Collective Class and Issuance of Notice." Doc. 51. The Court granted the request, in part, conditionally certifying "a national § 216(b) class of Analysts who have: (1) worked for The Hartford at any of its locations during the three years preceding their decision to opt into this action; and (2) worked more than forty hours in a workweek without being paid overtime compensation." Doc. 163, at 26; *see* 29 U.S.C. § 216(b). The class of Analysts excludes employees who assented to Defendant's arbitration policy. Doc. 163, at 26.[2]

The operative pleading is the second amended complaint, which Plaintiffs filed on December 19, 2017. Doc. 202. As of the writing of this Report and Recommendation, 47 individuals who filed consents to join the collective action remain as Plaintiffs: Patricia Dearth (Doc. 2-5; Doc. 5-1); Jessica Perez (Doc. 2-8); Jamie Rivera (Doc. 2-9); Layfon Rosu (Doc. 2-10); Marissa Shimko (Doc. 4-1); Carol Somers (Doc. 2-11); Fatoumata Ceesay (Doc. 2-2); Scott Filiatrault (Doc. 6-1); Tanya Walsh (Doc. 6-2); Karen Andreas-Moses (Doc. 8); Dawn "Dee" Collins (Doc. 9-1); Debra Lynn Gutierrez (Doc. 10); Erin Norman (Doc. 12); Katrice Daniels-Gavin (Doc. 13); Natalie Bourne (Doc. 20); Dianne Matheny (Doc. 21); Norwinna S. Tobias (Doc. 37); Jacqueline Wright (Doc. 38);

---

Sr. Ability Analyst; (29) CAR Specialty Analyst; (30) STD Claims Analyst III; (31) LTD Claims Analyst III; (32) LTD Claims Analyst IV; (33) LTD Claims Analyst V; (34) LTD Senior Claim Ability Analyst; (35) LTD Specialty Analyst; (36) LTD III; (37) LTD IV; (38) LTD V; (39) CAR Analyst; (40) CAR Examiner; and (41) CAR Senior Ability Analyst. (Doc. 51, pp. 9–10.) The term "Analyst" also includes employees who performed substantially the same work as those under the foregoing titles." Doc. 163, at 2 n.1.

[2] The Court dismissed 14 individuals who filed consents to join the case after determining that each of them entered into arbitration agreements. *See* Doc. 162 (dismissing Cordell Allen; Alia Clerk; Chris DePierro; Jessica Leighton; Scott Agnew; Antonia Britt; Bretton Scott Brown; Melissa Cooper; Yanique Dixon; Michael Milton; Monica Tinsley; Jordan Watkins; Baronda Staten; and Steven Wright).

Elizabeth Wagner (Doc. 39); Victoria Vaughn (Doc. 46); Susan Matlock (Doc. 48); Lawonza Thomas (Doc. 49); Mollye Berryhill (Doc. 106); Joey Ouellette (Doc. 108); Stephanie West (Doc. 124); Joseph J. Wojcik (Doc. 125); Sam Al-Nwiran (Doc. 131); Amy Cook (Doc. 141); Jamie Hammond (Doc. 144); Cheryl Vattimo (Doc. 145); Ida M. Delpha (Doc. 155); Timothy C. Hardy (Doc. 160); Nancy Albright (Doc. 173); Rayanne Williams (Doc. 174); Jeffrey Metzger (Doc. 175); Linda A. Walker (Doc. 178); Angela Talbert (Doc. 179); Glenn Lundberg (Doc. 180); William Earl Allen Jr. (Doc. 181); Dale Easterwood (Doc. 182); Tia L. Jenkins (Doc. 183); Alicia Duquette (Doc. 184); Carolee Wagner (Doc. 185); Jeanne M. Bachmann (Doc. 186); Lisa M. Battaglia (Doc. 190); Brian K. Mavity (Doc. 193); Ian Hardy (Doc. 230) (collectively, Plaintiffs).

No determination on Defendant's liability has yet been made. Nevertheless, on June 5, 2018, Defendant filed a Motion for Partial Summary Judgment as to the Proper Method of Calculating Any Overtime Damages. Doc. 313. In the motion, Defendant argues that the salary it paid to each Plaintiff was intended to compensate the Plaintiff for all hours worked during a work week. Based on this contention, Defendant asks the Court to conclude that the proper method for calculating any overtime compensation due is the half-time method, which would entitle each Plaintiff to overtime pay for any hours worked over 40 during a work week at one-half his or her regular rate of pay. *Id.* at 1–2. To support its motion, Defendant filed interrogatory responses of 44 Plaintiffs (Docs. 313-2, 313-4, 313-5), employment offer letters (Docs. 313-3, 313-6, 313-7, 313-8); and excerpts from the depositions of Karen Andreas-Moses (Doc. 313-9); Fatima Ceesay (Doc. 313-10), Amy Cook (Doc. 313-11), Patricia Dearth (Doc. 313-12), Debra Gutierrez (Doc. 313-13), Glenn Lundberg (Doc. 313-14), Diane Matheny (Doc. 313-15), Brian Mavity (Doc. 313-16), Angela Talbert (Doc. 313-17), Norwinna Shaunte Tobias (Doc. 313-18), Carolee Wagner (Doc. 313-19),

Elizabeth Wagner (Doc. 313-20), Linda Walker (Doc. 313-21), Stephanie West (Doc. 313-22), Joseph Wojcik (Doc. 313-23), and Jacqueline Wright (Doc. 313-24).

Plaintiffs oppose the motion, contending that genuine issues of material fact exist concerning whether the salary paid to each Plaintiff was intended to compensate the Plaintiff for all hours worked during a work week. Doc. 316, at 8. In support of their position, Plaintiffs filed a copy of Defendant's paid time off ("PTO") policy (Doc. 316-1); declarations from Plaintiffs Erin Norman (Doc. 316-2), Jeanne Bachmann (Doc. 316-3), William Allen (Doc. 316-4), Linda Walker (Doc. 316-5), and Carol Summers (Doc. 316-6); excerpts from a benefit management services summary detail report (Doc. 316-7); certain employee profiles (Doc. 316-8); 2012 through 2017 Attendance Summaries for some Plaintiffs (Doc. 316-9, Doc. 316-16); a pay stub for Erin Norman (Doc. 316-10); a spreadsheet with calculations for overtime remediation payments for certain Analysts (Doc. 316-12); Defendant's electronic communication titled, "Manager Talking Points OT Remediation" (Doc. 316-13); a list of employees and their standard hours (Doc. 316-14); an email written by Gregg Goumas, a lawyer for Defendant (Doc. 316-15); an "Offer Letter Comparison Chart" (Doc. 316-19); and excerpts of the depositions of Maria Fazzino (Doc. 316-11), Glenn Lundberg (Doc. 316-17); and Brian Mavity (Doc. 316-18).

In support of a reply authorized by the Court, Defendant filed additional excerpts of the depositions of Brian Mavity (Doc. 319-1) and Glenn Lundberg (Doc. 319-2). It also filed an excerpt of a Rule 30(b)(6) deposition (Doc. 319-4) and a Declaration of Maria Fazzino (Doc. 319-3).

The motion was referred to me for issuance of a Report and Recommendation. It is now ripe for review.

**B.     STANDARD OF REVIEW**

Summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The opposing party must support its position that a fact is genuinely disputed by citing to particular "parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). The movant must show that the materials cited do not establish such a dispute or that the adverse party cannot produce admissible evidence to support the facts allegedly in dispute. Fed. R. Civ. P. 56(c)(1)(B). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), such that "when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005).

**C.     STATEMENT OF FACTS.**

Plaintiffs currently hold or previously held an Analyst position with Defendant. Defendant treated Plaintiffs as exempt from the FLSA until they were reclassified as hourly employees in November 2016. Doc. 313, at 2; Doc. 316, at 3. While Plaintiffs were treated as exempt employees, each of them received a fixed annual salary.

Each Plaintiff worked more than 40 hours in one or more work weeks. No Plaintiff received overtime pay for hours worked over 40 per week. Doc. 112, at 1-3 (Ouellette); Doc. 140, at 1-3

(Al-Nwiran); Doc. 161, 1-3 (Delpha); Doc. 313-2,³ at 3-4 (Albright), 10-11 (Allen), 15-16 (Andreas-Moses), 22-23 (Bachmann), 28-29 (Battaglia), 32-34 (Berryhill), 39-41 (Bourne), 46-48 (Ceesay), 52-54 (Collins), 58-60 (Cook), 64-66 (Daniels-Gavin), 70-72 (Dearth), 79-80 (Duquette), 85-86 (Easterwood), 89-91 (Filiatrault), 95-97 (Gutierrez), 102-04 (Hammond), 110-12 (I. Hardy), 114-16 (T. Hardy), 122-24 (Jenkins), 128-29 (Lundberg), 132-34 (Matheny), 139-41 (Matlock), 148-49 (Mavity), 154-55 (Metzger), 158-60 (Norman), 165-67 (Perez), 172-74 (Rivera), 178-80 (Rosu), 184-86 (Shimko), 191-93 (Somers), 199-200 (Talbert), 203-05 (Thomas), 209-11 (Tobias), 215-17 (Vattimo), 221-23 (Vaughn), 230-31 (C. Wagner), 234-36 (E. Wagner), 242-43 (Walker), 246-48 (Walsh), 253-55 (West), 262-63 (Williams), 266-68 (Wojcik), 272-74 (Wright).  Some Plaintiffs complained about working overtime without extra compensation.  Doc. 313-2, at 81 (Duquette Answers to Interrogatories), 99-100 (Guiterrez Answers to Interrogatories), 124 (Jenkins Answers to Interrogatories), 143 (Matlock Answers to Interrogatories), 150 (Mavity Answers to Interrogatories), 162-63 (Norman Answers to Interrogatories); 201 (Talbert Answers to Interrogatories), 250 (Walsh Answers to Interrogatories); Doc. 316-2 ¶ 3 (Norman Decl.); Doc. 316-3 ¶¶ 8-9 (Bachmann Decl.); Doc. 316-4 ¶¶ 4, 7 (Allen Decl.); Doc. 313-12, at 34 (Dearth Dep.).  Defendant admits that "no Plaintiffs testified that they like receiving the same salary for long workweeks that they also received for short workweeks."  Doc. 319, at 3.

*Summary of Defendant's Evidence.*

As evidence that Plaintiffs' salaries were intended to compensate them for all hours worked, Defendant relies on offer letters sent to some of the Plaintiffs.  Each letter sets forth the salary to be paid on a semi-monthly basis.  Letters to some of the Plaintiffs specifically state that the Plaintiff

---

³ Because there are multiple answers to interrogatories included in Doc. 313-2, I cite to the pages assigned when this document was electronically filed in CM/ECF.

would receive a salary "covering all work performed."  Doc. 313-3, at 32 (Mavity);  Doc. 313-6, at 2 (Allen), 3 (Andreas-Moses), 5 (Bourne), 7 (Ceesay), 10 (Collins), 12 (Cook), 14 (Duquette, for the job "Service Specialist"), 16 (Easterwood), 20 (Hammond), 21 (T. Hardy), 22 (Jenkins), 26 (Lundberg), 28 (Matlock), 32 (Metzger), 33 (Norman), 35 (Thomas), 36 (Tobias), 37 (Vaughn), 39 (C. Wagner), 40 (E. Wagner), 42 (Walsh), 44 (Williams), 45 (Wojcik); Doc. 313-7, at 2-3 (Allen), 5-6 (Hammond), 8-9 (T. Hardy), 12 (Tobias), 13-14 (C. Wagner).[4]  Plaintiff Mavity testified in his deposition that even though his offer letter included the "covering all work performed" clause, he understood that his salary covered a normal work week of 40 hours.  Doc. 313-16, at 61-62 (Mavity Dep.).[5]

Defendant provided different offer letters to some Plaintiffs that did not include the "covering all work performed" language.  Doc. 313-8, at 2 (Albright), 3 (Battaglia), 4 (Vattimo), 5 (Wojcik), 6 (Wright).  The record does not contain offer letters addressed to the remaining Plaintiffs.

Defendant also relies on excerpts of depositions of some Plaintiffs who acknowledged that their salary was a fixed amount regardless of the number of hours worked per week.  *See* Doc. 313-9, at 145 (Andreas-Moses); Doc. 313-10, at 193 (Ceesay); Doc. 313-11, at 189 (Cook); Doc. 313-12, at 144-46 (Dearth); Doc. 313-13, at 159 (Gutierrez); Doc. 313-14, at 116 (Lundberg); Doc. 313-15, at 13 (Matheny); Doc. 313-16, at 65 (Mavity); Doc. 313-17, at 146 (Talbert); Doc. 313-18, at 53 (Tobias); Doc. 313-20, at 211 (E. Wagner); Doc. 313-21, at 120-21 (Walker); Doc. 313-23, at 55-56 (Wojcik); Doc. 313-24, at 102 (Wright).  A few Plaintiffs testified that his or her salary was

---

[4] Because there are multiple letters in Docs. 313-6, 313-7 and 313-8, I cite to the pages assigned when each document was electronically filed in CM/ECF.

[5] I cite to the internal pagination of deposition transcripts rather than the pagination assigned when the deposition excerpts were electronically filed in CM/ECF.  Complete copies of each deposition and the supporting exhibits were submitted in paper form.

meant to compensate all hours she worked.  Doc. 313-19, at 122-23 (C. Wagner); Doc. 313-15, at 13 (Matheny); Doc. 313-18, at 53 (Tobias).  *Cf.* Doc. 313-13, at 107 (Gutierrez testified that she supposed that her salary was meant to compensate for all hours worked because "we worked to get the work done and we didn't get any more money for it").

*Summary of Plaintiffs' Evidence*.

In support of their contention that a genuine issue of fact exists, Plaintiffs cite to various records of Defendant reflecting that Defendant considered 40 hours per week to be the standard work week for Plaintiffs.  These include Defendant's internal employee profiles, which show that Plaintiffs' standard work week was 40 hours.  Doc. 316-8 (Andreas-Moses, Bourne, Cook, Easterwood, Gutierrez, Matheny, Norman, Matlock, Vattimo, T. Hardy, I. Hardy).  A leave report for Debra Gutierrez indicates that her standard work day was 8 hours and her standard work week was 40 hours.  Doc. 316-7, at 9, 21, 36, 43.

Patricia Dearth testified that she believed she was owed overtime.  Doc. 313-9, at 194-95.[6] Other Plaintiffs testified that they understood that their standard work week was 40 hours, and that their salaries were intended as compensation for only 40 hours.  *See, e.g.*, Doc. 313-16, at 62 (Mavity believed that his semi-monthly salary would compensate him for all hours worked for a "normal work week" of around 40 hours); Doc. 313-17, at 148-49 (Talbert testified that her "set hours were for 40 hours" and that she did not understand that she received pay for all hours she worked regardless of the number of hours); Doc. 313-18, at 39, 51 (Tobias testified that she had worked a lot of hours without being paid for them and that "I worked for free after 40 hours"); Doc.

---

[6] During her deposition, Dearth identified copies of her pay stubs, Doc. 313-9, at 144-45 (Ex. 12).  The pay stubs do not state the hours she worked during each pay period.  Doc. 313-9, Ex. 12.  Elizabeth Wagner testified during her deposition that her wage statements did not have information about overtime or overtime pay.  Doc. 313-20, at 209.

313-20, at 209 (E. Wagner testified, "[T]hey pay me for 40 hours a week and my hourly wage."); Doc. 316-17, at 10 (Lundberg testified that his job was "full time[, which] was Monday through Friday, 40 hours a week").

Plaintiffs also rely on Defendant's PTO policy as evidence that Defendant considered 40 hours per week to be the standard work week for Plaintiffs. The PTO policy states, in relevant part, as follows:

> Accruing PTO
>
> **Initial Deposit**
> If you work a 40 hour week and are eligible for PTO, you may receive a deposit of 40 hours (5 days) in your PTO bank on Jan. 1 of each year.
>
> **Please Note: The initial deposit of PTO hours is based on your standard work hours and PTO eligibility. For example, if you work 36 hours per week, you will receive an initial deposit of 36 hours.**

Doc. 316-1. The PTO hours were supposed to compensate an employee for the standard number of hours the employee worked each week when the employee used PTO to take time off from work. Doc. 316-5 ¶ 9 (Walker Decl.). An exempt employee had to use 8 hours of PTO to take off an entire day and 4 hours of PTO to take off half a day. Doc. 316-2 ¶ 8 (Norman Decl.); Doc. 316-3 ¶ 6 (Bachmann Decl.); Doc. 316-4 ¶ 11 (Allen Decl.); Doc. 316-5 ¶ 11 (Walker Decl.). In addition, attendance management reports indicate that PTO was awarded in no more than 8-hour increments and that employees' "work hours" were 40. Doc. 316-9, at 1-14 (Albright), 15-26 (Allen), 27-26 (Andreas-Moses), 37-48 (Bachmann), 49-60 (Battaglia), 61-66 (Berryhill), 67-77 (Bourne), 78-90 (Ceesay), 91-100 (Collins), 101-04 (Cook), 105-16 (Daniels-Gavin), 117-24 (Dearth), 125-33 (Duquette), 134-44 (Easterwood), 145-57 (Filiatrault), 158-69 (Gutierrez), 174-77 (T. Hardy), 178-87 (I. Hardy), 188-99 (Jenkins), 200-09 (Lundberg), 210-21 (Matheny), 222-27 (Matlock), 228-37

(Mavity), 238-45 (Metzger), 246-56 (Norman), 257-68 (Perez), 269-79 (Rivera), 280-89 (Rosu), 290-303 (Shimko), 304-14 (Somers), 315-23 (Talbert), 324-34 (Thomas), 335-45 (Tobias), 346-51 (Vattimo), 352-61 (Vaughn), 362-73 (C. Wagner), 374-84 (E. Wagner), 385-99 (Walker), 400-11 (Walsh), 412-20 (West), 421-31 (Williams), 432-39 (Wojcik), 440-50 (Wright).

Finally, Plaintiffs rely on Defendant's use of a 40-hour work week in its calculations of overtime compensation paid to employees who were reclassified from exempt to non-exempt. Maria Fazzino, the corporate compliance officer of Defendant, testified in her individual deposition that to calculate the overtime pay adjustment, she divided the annual salary of each reclassified employee by 2080 hours per year, which was based on 40 hours of work per week, to obtain each reclassified employee's regular hourly rate. Doc. 316-11, at 172. There were internal discussions among Defendant's employees about whether to pay overtime compensation at one and one-half times an employee's regular rate of pay or only at one-half times an employee's regular rate of pay (the "overtime premium"). Doc. 316-12. Ultimately, Defendant paid only the one-half time overtime premium. Doc. 316-11, at 173 (Fazzino Dep.).[7] In her individual deposition taken in 2016, Fazzino testified that she did not "know where we landed at the .5 . . . ." *Id.*

*Defendant's Rebuttal Evidence.*

To rebut Plaintiffs' reliance on Defendant's records that cite 8-hour days and 40-hour work weeks, Defendant relies on Fazzino's declaration. Doc. 319-3. In that document, Fazzino avers that Defendant used 8-hour days and 40-hour work weeks simply to signify that an employee worked

---

[7] In email discussions about talking points to be used to explain the overtime pay adjustment, Roberto Rosario in Defendant's Human Resources department expressed concern about sharing with employees that the overtime compensation adjustment would be based on only the overtime premium (one-half the regular hourly rate) rather than one and one-half times the regular hourly rate. Doc. 316-13, at HARTFORD 288321. The final talking points did not explain the overtime compensation adjustment calculation. Instead, the talking points advised: "If any employee asks about the calculation, let them know that the calculation was made in accordance with the regulations under the Fair Labor Standards Act (FLSA)." *Id.* at HARTFORD 288326.

full time.  *Id.* ¶ 5.  She attests that use of these defaults in calculating and dispensing PTO "obviates the need to track individual hours of work for full-time, salaried, exempt employees."  *Id.* ¶ 6.  Fazzino attests that "[n]one of these documents reflect The Hartford's belief or intention that any employee's salary was to pay him or her for only 40 hours of work per week."  *Id.* ¶ 9.

In a Rule 30(b)(6) deposition taken in 2018, in which Fazzino testified as the corporate representative of Defendant, Fazzino addressed the computation of overtime compensation paid to reclassified employees.  She averred that the one-half time hourly rate was used to compute overtime compensation due "[b]ecause our employees were salaried employees and they were being compensated their annual salary covering all work performed, which included all hours that they worked.  So they had already been compensated for the straight time through their salary."  Doc. 319-4, at 77-78; *accord* Doc. 319-3 ¶ 12.[8]  She testified that this determination was made in a discussion she had with Gregg Goumas, an attorney for Defendant.  Doc. 319-4, at 78; *see* Doc. 316-15.

**D.    CALCULATION OF OVERTIME COMPENSATION**.

In general, the FLSA requires employers to compensate employees for overtime "at a rate not less than one and one-half times the regular rate at which [they are] employed."  *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310 (11th Cir. 2013) (alteration in original) (quoting 29 U.S.C. § 207(a)(1)).  Therefore, the first step in an FLSA overtime calculation is determining the employee's regular rate of pay.

One method of computing the regular rate of pay for an employee whose salary covers a period longer than a work week is to reduce the salary to the work week equivalent:

---

[8] Defendant paid each reclassified employee for 7.5 hours of overtime per week, Doc. 316-11, at 172-73, even though Defendant recognized that "there was a wide range of hours worked among employees" who were reclassified, Doc. 316-13, at HARTFORD 288325.

> A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. . . . The regular rate of an employee who is paid a regular monthly salary of $1,560, or a regular semimonthly salary of $780 for 40 hours a week, is thus found to be $9 per hour.

29 C.F.R. § 778.113(b).

Determining the divisor in this equation requires a factual finding about the number of hours of work that the salary was intended to compensate. *Lamonica*, 711 F.3d at 1311. So, for example, if an employee's salary is intended to cover all work performed regardless of the number of hours worked in a week, the regular rate of pay is calculated by dividing the employee's weekly salary by the number of hours actually worked that week. *Id.* at 1310–11. If, however, an employee's salary was intended to compensate less than all hours worked during a work week, the regular rate of pay is calculated by dividing the employee's salary by the hours of work which the salary was intended to compensate. *See Lee v. MegaMart, Inc.*, 223 F. Supp. 3d 1292, 1305 (N.D. Ga. 2016) (providing examples of calculations when a salary was not intended to compensate all hours worked during a work week).

Courts are split regarding whether overtime compensation in a misclassification or "failed exemption" case is to be compensated at one and one-half times an employee's regular hourly rate or only at one-half times the employee's regular rate of pay. *Lamonica* was not a misclassification case,[9] and it appears that the Eleventh Circuit has not resolved this question in a failed exemption case. *See, e.g.*, *Ramirez v. Urban Outfitters, Inc.*, No. 6:13-cv-1074-Orl-22GJK, 2014 WL

---

[9] The papers filed in the District Court in *Lamonica* reflect that Plaintiffs, who worked as installers, were to be paid a weekly salary. Plaintiffs contended that they had, in fact, not been paid at all for some work, that they had not received a minimum wage and that they had not been paid overtime compensation for hours worked over 40 in a work week. *Lamonica v. Safe Hurricane Shutters, Inc.*, No. 0:07-cv-61295-JIC (S.D. Fla.)(available on pacer.gov).

4090546, at *6 (M.D. Fla. Aug. 15, 2014), *report and recommendation adopted*, 2014 WL 4385757 (M.D. Fla. Sep. 3, 2014); *Talbott v. Lakeview Center, Inc.*, No. 3:06-cv-378-/MCR/MD, 2010 WL 11557948, at * 14 (N.D. Fla. Feb 2, 2010). "Determining the proper calculation of unpaid overtime wages is a mixed question of fact and law." *Id.* (citing *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 381 (5th Cir. 2013)).

**E.    ANALYSIS.**

Defendant asks the Court to conclude that the undisputed evidence establishes that the salary paid to each Plaintiff was intended to compensate that Plaintiff for all hours worked and, therefore, that overtime compensation (if any is due) would be paid at only one-half each Plaintiffs' regular rate of pay. This argument is premature because there has been no finding of liability as to any Plaintiff. This argument is also not supported by the record because the facts regarding the number of hours for which salaries were intended to compensate, taken in the light most favorable to Plaintiffs, are in dispute.[10] Because the Court does not have a sufficient factual basis to determine how any overtime that may be owed should be computed, determining whether overtime should be paid at one and one-half times, or only one-half times, a Plaintiff's regular rate of pay would be an improper advisory opinion. *Cf. Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1269 (2008)(reversing the District Court for instructing the jury "to assume as a fact that the weekly salary was intended to compensate the store managers for however many hours they actually worked" despite conflicting evidence on this question presented at trial). For these reasons, summary judgment is due to be denied.

---

[10] Counsel assume, without citing supporting authority, that this question will be determined on a collective-action-wide basis, rather than based on the understanding of each Plaintiff.

*1.   Defendant's Motion for Summary Judgment is Premature.*

Courts have concluded that when issues of liability must be determined at trial, motions for summary judgment on damages are premature. *See, e.g.*, *Kelley v. TaxPrep1, Inc.*, No. 5:13-CV-451-OC-22PRL, 2015 WL 4488401, at *2 (M.D. Fla. July 22, 2015) (adopting magistrate judge's recommendation that "until it is found that Plaintiffs were misclassified as exempt, the Court will not need to determine the . . . extent of Plaintiffs' damages."); *Cain v. Almeco USA, Inc.*, No. 1:12-CV-3296-TWT, 2013 WL 6051023, at *7 (N.D. Ga. Nov. 15, 2013) (concluding that it was premature to determine the method to calculate overtime compensation before determining whether employee qualified under administrative exemption of FLSA); *Tiffey v. Speck Enters., Ltd.*, 418 F. Supp. 2d 1120, 1128 (S.D. Iowa 2006) ("[I]t is a poor use of the Court's time to consider that calculation [of overtime compensation] without first determining whether [Plaintiff] is exempt."). *But see, e.g.*, *Torres v. Bacardi Global Brands Promotions, Inc.*, 482 F. Supp. 2d 1379, 1380-82 & n.1 (S.D. Fla. 2007) (deciding proper overtime calculation before employer's liability under the FLSA was established).

There is no motion for summary judgment on the issue of liability in this case. Until a jury concludes that Defendant is liable under the FLSA for failure to pay overtime compensation to any Plaintiff, a determination of how to compute overtime compensation damages is premature.

*2.   Genuine Issues of Material Fact Preclude Entry of Summary Judgment.*

If the Court elects to consider the merits of the motion, genuine issues of material fact preclude entry of summary judgment. Specifically, the evidence is disputed regarding the number of hours of work each Plaintiff's salary was intended to compensate. *See, e.g.*, *Rodriguez*, 518 F.3d at 1269 (finding factual issue existed regarding number of hours that salary was intended to compensate when Defendant's COO testified that salary compensated store managers for as many

- 14 -

hours of work needed to fulfill their responsibilities, Defendant required store managers to record 40 hours of work on their time sheets, and one district manager testified that store managers were required to work 48 hours).

First, this is not a case in which Plaintiffs signed an acknowledgment or agreement that his or her salary compensated for all hours worked in a work week. *See, e.g.*, *Garcia v. Yachting Promotions, Inc.*, 662 F. App'x 795, 796 (11th Cir. 2016) (plaintiffs signed a form that stated, "You understand that your weekly hours will fluctuate and that this base salary will compensate you for any and all hours worked. . . . [A]ll eligible salaried non-exempt employees will begin receiving at least an additional half-time for those hours greater than 40 in a workweek");[11] *Garcia v. Port Royale Trading Co.,* 198 F. App'x 845 (11th Cir. 2006) (plaintiff executed an agreement to receive a fixed salary for fluctuating hours); *Meran v. Rank Trade Servs.*, No. 16-20580-CIV-MARTINEZ-GOODMAN, 2017 WL 2901202, at *2 (S.D. Fla. May 1, 2017) (plaintiff signed an agreement which provided, "I understand and agree that I will be paid under a fluctuating workweek[12] for all hours worked, I understand that I will receive a salary each week for all hours worked and will be paid overtime for any hours worked over 40 during the workweek, based on the regular rate of pay for that particular workweek."). In this case, Defendant relies on offer letters provided to some Plaintiffs stating that the salary covered "all work performed," but the evidence shows that

---

[11] I cite unpublished decision of the Eleventh Circuit as persuasive authority.

[12] "In simple terms, under the fluctuating workweek method, the salary is intended to be the employee's straight time compensation for all hours worked in the workweek, regardless of number since the salary itself is the straight time component of even the overtime hours, all that remains to be paid for the overtime hours is the additional half time." *Meran*, 2017 WL 2901202, at *5 (citing *Lewis v. Keiser Sch., Inc.*, No. 11–62176, 2012 U.S. Dist. LEXIS 147150 at *10 (S.D. Fla. Oct 12, 2012)). This forward-looking method of payment is explained in 29 C.F.R. § 778.114. In *Lamonica*, the Eleventh Circuit stated that the fluctuating work week calculation can be used to determine damages under the FLSA, although it is not the only method to calculate damages. 711 F.3d at 1311-12.

Defendant provided offer letters to other Plaintiffs that did not contain that language. Moreover, there is no evidence that Defendant provided offer letters to each Plaintiff. One Plaintiff testified that, even though he received an offer letter that said that his salary covered "all work performed," he understood that to mean that his salary covered his normal 40-hour work week. Other Plaintiffs understood that they were hired to work 40 hours per week.

This also is not a case in which each Plaintiff received a pay stub or other document showing that the salary paid compensated him or her for a specific number of hours worked during a pay period. *Compare Davis v. Friendly Express, Inc.*, No. 02-14111, 2003 WL 21488682, at *2 (pay stubs showed the constant base amount of pay and number of hours worked that varied from week to week), *with Lewis v. Keiser Sch., Inc.*, No. 11-62176-Civ., 2012 WL 4854724, at *5 (S.D. Fla. Oct. 12, 2012) (pay stubs did not show the number of hours worked or the base amount of pay). Defendant concedes that it did not track the number of hours worked by exempt, salaried employees. Therefore, it had insufficient information to tell each Plaintiff the specific number of hours worked in a semi-monthly pay period that were compensated by his or her salary.

Finally, the course of conduct of the parties does not establish that there are no genuine issues of material fact. Evidence shows that Defendant used 40-hour work weeks in attendance management reports, employee profiles, and leave records. Defendant also based its PTO policy on 8-hour work days and 40-hour work weeks and stated that PTO was "based on your standard work hours." Most notably, when computing overtime compensation due to reclassified employees, Defendant used a 40-hour work week to arrive at each employee's regular rate of pay.

Nevertheless, Defendant argues that because Plaintiffs accepted their weekly salary for whatever hours they worked in a given pay period, Plaintiffs understood that the salary was intended to compensate for all hours worked. This argument misstates the question that must be resolved.

The critical issue is not whether Defendant paid each Plaintiff a fixed salary for varying hours, but whether Defendant and Plaintiffs understood that the fixed salary was intended to compensate Plaintiffs for all hours worked. The answer to that question is disputed. For example, Plaintiff Mavity testified that he understood that his semi-monthly salary would compensate him for all hours worked for a "normal work week" of around 40 hours. Plaintiff Talbert testified that her set hours were 40 and that she did not understand that her salary paid for all hours she worked in a pay period. Plaintiff Tobias testified that she worked for free after 40 hours in a work week.

Accordingly, Defendant has not established that there are undisputed facts demonstrating that the parties understood that the salaries paid were intended to compensate Plaintiffs for all hours worked during a pay period.

### F.  RECOMMENDATION

For the foregoing reasons, I recommend that the Court **DENY** The Hartford's Motion for Partial Summary Judgment as to the Proper Method for Calculating Any Overtime Damages (Doc. 313).

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 4, 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy