IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEANNE BACHMANN, PATRICIA DEARTH,
ALICIA DUQUETTE, JESSICA PEREZ, JAMIE
RIVERA, LAYFON ROSU, MARISSA SHIMKO,
and CAROL SOMERS, on behalf of
themselves and others similarly
situated,

                                                          CASE NO.: 6:16-cv-1603-Orl-37KRS

       Plaintiffs,

                                                          FLSA COLLECTIVE ACTION

v.

HARTFORD FIRE INSURANCE COMPANY,
a Foreign for Profit Corporation,

       Defendant.
_____/

**PLAINTIFFS' MOTION FOR SANCTIONS, INCLUDING FOR DEFAULT
JUDGMENT, ATTORNEYS' FEES AND COSTS AND ANY OTHER SANCTIONS
THIS COURT DEEMS JUST AND PROPER**

       Plaintiffs, JEANNE BACHMANN, PATRICIA DEARTH, ALICIA DUQUETTE,

JESSICA PEREZ, JAMIE RIVERA, LAYFON ROSU, MARISSA SHIMKO, and CAROL

SOMERS, on behalf of themselves and others similarly situated, pursuant to Rule 37 of the

Federal Rules of Civil Procedure, and by and through their undersigned counsel, hereby file

Plaintiffs' Motion for Sanctions including for Default Judgment, Attorneys' Fees and Costs,

and any other Sanctions this Court deems just and proper, and in support, state as follows:

1. On August 14, 2018, Plaintiffs' filed their Renewed Second Motion for Default
   Judgment. (Doc. 324)

2. On August 28, 2018, Defendant filed its Opposition to Plaintiffs' Renewed Second
   Motion for Default Judgment. (Doc. 327)

3.  On August 30, 2018, this Court issued an Order denying Plaintiffs' Renewed Second Motion for Default Judgment finding that Plaintiffs had not presented evidence that Hartford's failure to produce the belatedly disclosed documents was willful or in bad faith, nor had Plaintiffs presented any evidence of prejudice. (Doc. 328, p. 3-4)

4.  As previously addressed in Plaintiffs' Renewed Second Motion for Default Judgment, Defendant violated this Court's Orders, specifically Docs. 267 and 288. In this regard, on March 19, 2018, United States Magistrate Judge Karla R. Spaulding compelled Defendant to produce documents responsive to Plaintiffs' First Request to Produce No. 2 and 18. (Doc. 267). On April 16, 2018, United States District Judge Roy B. Dalton, Jr., ordered Defendant to immediately produce any lingering discovery with respect to the Discovery Orders. (Doc. 288). On April 18, 2018, Defendant filed a Certification of Compliance in response to the April 16, 2018 Order. (Doc. 293). On May 7, 2018, Defendant filed an Opposition to Plaintiffs' first Motion for Default, arguing that it complied with all Court Orders and that a Motion for Default Judgment should not be entered. (Doc. 303).

5.  Thereafter, on July 5, 2018, Defendant produced documents responsive to the Dearth First Request to Produce Requests No. 2 and 18. Specifically, documents bates numbered Hartford A-M 010031 through Hartford A-M 013402. At the time of production, Defendant's counsel advised Plaintiffs counsel that "[i]n reviewing documents for *Andreas-Moses*, we identified documents that are responsive in Dearth. These are Bates numbered Hartford A-M 010031 through Hartford A-M 013402." Defendant's bates index lists these entries as responsive to Requests 2 and 18 from

2

Plaintiffs' Third Request to Produce in Dearth; however, there is only one request in Plaintiffs' Third Request to Produce. Documents responsive to Plaintiffs' First Request to Produce Requests 2 and 18 were compelled by this Court's March 19, 2018 Order. (Doc. 267), and the documents produced on July 5, 2018, bates labeled Hartford A-M 010031 through Hartford A-M 013402, are responsive to the compelled requests. They are not responsive to Plaintiffs' Second Request to Produce because Request 2 of Plaintiffs' Second Request to Produce was not compelled by this Court based upon an attorney client privilege issue, and Request 18 of Plaintiffs' Second Request to Produce was for Eric Brandt's Notebook, which Defendant already stated does not exist.

6. Plaintiffs' First Request to Produce was served on August 25, 2017. As discussed above, Defendant did not produce all responsive documents despite Court Orders compelling Defendant to do so. (Docs. 267, 288), and despite Defendant's certificates of compliance that it had. On July 5, 2018, two months after the discovery deadline, one month after the dispositive motion deadline, and just over an hour after Plaintiffs filed their response to Defendant's Motion for Partial Summary Judgment,[1] Defendant produced documents bates labeled A-M 010031 through Hartford A-M 013402,[2] responsive to this Court's March 19 and April 16, 2018, Orders. (Docs. 267, 288). Specifically, documents bates labeled A-M 010031 to 010634 are responsive to

---

[1] Plaintiffs filed their Response to Defendant's Motion for Partial Summary Judgment on July 5, 2018 at 8:07 p.m. Defendant served the belated discovery just over an hour later at 9:22 p.m.
[2] Each document in the July 5th production was only given one bates number in the title of the document on the bates index rather than each page being numbered. The documents range from single to multiple pages, and include excel spreadsheets and power point presentations. As such, the bates numbers from the bates index for the documents in the July 5th production are set forth within this document.

Plaintiffs' First Request to Produce No. 18, and documents bates labeled A-M 010635 to 013402 are responsive to Plaintiffs' First Request to Produce No. 2.

7.      In responding to Plaintiffs' Renewed Second Motion for Default Judgment, Defendant filed three (3) declarations. In one of the declarations, counsel for Defendant, Patrick Bannon, attested that on June 4, 2018, in preparing Defendant's motion for partial summary judgment, Seyfarth Shaw noticed that offer letters for several employees were not included among the offer letters produced by Defendant. (Doc. 327-3, p. 4 ¶ 15). Patrick Bannon further attested that Seyfarth Shaw determined that Defendant had provided ten offer letters to Seyfarth Shaw in late 2016. (Id.) Patrick Bannon attested that these offer letters were produced to Plaintiffs on July 5, 2018. (Doc. 327-3, p. 4 ¶ 16). Defendant had these offer letters at all times, and defense counsel had the letters since late 2016. Even though defense counsel attests that on June 4, 2018, his firm realized that these offer letters had not been produced, Defendant still withheld the documents for another month before producing them, and waited until a little over an hour after Plaintiffs filed their Response to Defendant's Motion for Partial Summary Judgment, to produce them.

8.      Defendant's Motion for Partial Summary Judgment requests that this Court grant summary judgment in Defendant's favor on the issue of damages, specifically, that Plaintiffs' overtime damages according to Defendant: "…must be calculated using the half-time method (i.e., weekly salary divided by weekly hours times one-half times hours worked beyond forty worked in the workweek)." (Doc. 313, p. 13). In its Motion, Defendant relies upon offer letters given to Plaintiffs, arguing that

Plaintiffs' offer letters as salaried employees state that their salaries were intended to cover all work performed, and therefore, this Court should grant partial summary judgment in Defendant's favor holding that all of the Plaintiffs' salaries were intended to cover all hours worked.

9. However, in the July 5, 2018 production, Defendant produced two offer letters for Marissa Shimko Alvarez, a Named Plaintiff in this action. When Ms. Shimko/Alvarez' offer letters produced on July 5th, are compared with offer letters previously produced by Defendant for Ms. Shimko/Alvarez, it is evident that even when Ms. Shimko/Alvarez was a non-exempt, hourly employee, Defendant's offer letter states that her salary covered all work performed. Exhibit A is the Declaration of Marissa Shimko/Alvarez attesting to the time periods when she was hourly and when she was salary. Exhibit B is an offer letter when Shimko/Alvarez was a non-exempt, hourly employee, which states that she will receive a salary "covering all work performed." Exhibit C is an offer letter when Shimko/Alvarez was salaried, stating that her salary is "covering all work performed." In addition, two other offer letters produced for Shimko/Alvarez evidence that the "covering all work performed" was left out of one offer letters, and then included in another. (Exhibits D and E). It was not until after Defendant produced all four offer letters for Shimko/Alvarez (two were produced in the July 5th production—Exhibits C and E), that Plaintiffs were able to compare these offer letters.

10. Despite Defendant having all four Shimko/Alvarez offer letters, and knowing they related to a material issue in this case (damages), Defendant withheld

these documents until just over an hour after Plaintiffs filed their response to Defendant's Motion for Partial Summary Judgment. Also, even though Defendant submitted offer letters in support of its Motion for Partial Summary Judgment, it omitted any offer letters for Shimko.

11.    Defendant's withholding of these offer letters cannot be seen as anything other than willful and in bad faith. First, the timing of the production evidences willfulness and bad faith. Despite Defendant having these offer letters at all relevant times, and its counsel receiving them in late 2016, Defendant did not produce them until just over an hour after Plaintiffs responded to Defendant's Motion for Partial Summary Judgment. Even assuming that defense counsel's representation is correct, that his firm discovered on June 4th that it had not produced these letters, Defendant still should have immediately produced them at that time. Instead, Defendant waited one month and produced the offer letters just over an hour after Plaintiffs filed their response to Defendant's Motion for Partial Summary Judgment. Further, instead of immediately producing them in a standalone production on June 4th, knowing that they were directly relevant to Defendant's Motion for Partial Summary Judgment, Defendant instructed TLS to make them a part of the mass production containing thousands of documents in *Andreas-Moses* on July 5th.

12.    The fact that Defendant produced them as part of a mass production in *Andreas-Moses* and placed them at the end of that production is further evidence of willfulness and bad faith. Also, most of these offer letters were for Plaintiffs who are only parties in the instant case, not in *Andreas-Moses* (Alvarez/Shimko, Daniels-Gavin,

Dearth, Filiatrault, Matheny, Rivera). None of these individuals were ever putative class members in *Andreas-Moses*. The other two individuals for whom Defendant produced offer letters on July 5th, are arbitration claimants. (Steven Wright and Scott Agnew).

13.     Additionally, instead of identifying the offer letters within the production on July 5, 2018, defense counsel simply stated in the email serving the documents on July 5, 2018, at 9:07 p.m., that "[i]n reviewing documents for *Andreas-Moses*, we identified documents that are responsive in Dearth. These are Bates numbered Hartford A-M 010031 through Hartford A-M 013402." The offer letters were placed at the very end of the production of thousands of documents numbered A-M 013393 through A-M 013402.

14.     In addition to the withheld offer letters, Defendant also withheld evidence pertaining to Defendant's review of Analyst job duties and responsibilities pursuant to the 2016 re-classification. This evidence is directly relevant to Defendant's exemption defense.

15.     Throughout discovery Defendant attested that the 2016 re-classification of Analysts from exempt to non-exempt did not involve an analysis of job duties and responsibilities of Analysts. Defendant filed the Declaration of Maria Fazzino with this Court attesting that the decision to re-classify Plaintiffs as overtime eligible did not involve any analysis of their job duties or the duties of any employees with the same job titles as the Plaintiffs. (Doc. 236-1, p. 3-4 ¶ 7). This was also represented to the Court during the March Discovery Conference on March 13, 2018, by defense counsel,

7

Patrick Bannon, who stated that the T-9 Sharepoint which had documents relating to the re-classification did not have documents regarding job duties or responsibilities worked by Analysts since they were not reviewed by Defendant. (Doc. 283, p. 9, ll. 12-25, p. 10, ll. 1-25, p. 21, ll. 6-8, p. 42, ll. 21-25, p. 43, ll. 1-6). In addition, in Defendant's Supplemental Responses to Plaintiffs' First Interrogatories compelled by this Court pursuant to its March 19, 2018 Order (Doc. 267, p. 15-17), specifically Requests 4 and 8, Maria Fazzino on behalf of Defendant attested that no analysis of the Analyst positions were reviewed for the 2016 re-classification. (Exhibit F, pp. 5)   At the 30(b)(6) deposition taken on April 17, 2018, Maria Fazzino testified that none of the positions held by employees processing disability claims for the Hartford were reviewed for the 2016 reclassification based upon their job duties.  (Exhibit M, pp. 118, ll. 7-25, p. 119, ll. 1-7-- Excerpts from 30(b)(6) deposition of Maria Fazzino taken on April 17, 2018)

16.     However, in its July 5, 2018 production, Defendant produced documents reflecting that Analyst job duties and responsibilities were reviewed for the 2016 re-classification. In this regard, the attached power point presentation (Exhibit G-Bates Number--A-M 010635) shows that job duties of Tier 9 Employees, of which Analysts were a part, were part of the re-classification analysis involving a review of the job duties, including job classification questionnaires, interviews and a review of job descriptions. (Id.) Another document produced on July 5th shows the questions that were part of the review regarding whether the job duties involved the exercise of independent judgment and discretion. (Exhibit H – Bates Number A-M 010646)

Contrary to representations by Defendant and its counsel to this Court, the analysis of Tier 9 employees in Claims and in Group Benefits Department were part of that review. (Exhibit I – Bates Number A-M 010640, p. 3 and 6). This same document shows that a minimum of 233 manager interviews would need to be conducted. (Exh. Id.) Analyst positions fall within both claims and group benefits. Another document again reflects the review of Group Benefits employees. (Exhibit J, p. 4 – Bates Number A-M 010647) This exhibit further reflects that Defendant was conducting the review and if the review determined that any positions met both the duties and salary test they would remain "EX" (exempt) and if not, they would be classified as "NEX" (non-exempt). (Exh. J, p. 2) Obviously, based upon Defendant's review, Analysts did not meet the duties and salary test and therefore were re-classified as non-exempt.   Another document shows under the Background/Context Section that Defendant "…will evaluate all Tier 9 roles." (Exhibit K—Bates Number 010648). Finally, and perhaps most importantly, Exhibit L indicates that a review of all Tier 9 positions was actually conducted. (Exhibit L Bates Number A-M 010642, p. 4)

17.     These crucial documents pertaining to the review and analysis of job duties and responsibilities for the 2016 Re-Classification, like the offer letters, were produced as part of the mass production of documents in *Andreas-Moses* on July 5, 2018. However, these documents were not part of the documents that TLS states that it put in a separate Relativity database at the instruction of Seyfarth Shaw. Rather they were part of the "other documents" that Seyfarth Shaw instructed TLS to include in the July 5th mass production.

9

18.     In this regard, the declaration of Daniel Barnaby from TLS in support of Defendant's Opposition to Plaintiffs' Renewed Second Motion for Default Judgment (Doc. 327-1), evidences that these documents were not part of the documents allegedly overlooked by TLS in prior productions. Specifically, Barnaby's Declaration states that on July 5, 2018, TLS designated 2685 documents from the Sharepoint and moved them to the Relativity database.[3] (Doc. 327-1, p. 2 ¶14). Those documents were bates numbered HARTFORD A-M 010649-013385. (Doc. 327-1, p. 2 ¶14). Barnaby then states that "[o]ther documents" were produced on July 5, 2018 as instructed by Seyfarth Shaw. (Id.) These documents were bates numbered HARTFORD A-M 010031-010648 and 013390 – 013402. (Id.) The crucial documents discussed above and attached as exhibits, relating to the exemption defense, fall within the bates numbers for the "other documents," and were withheld by Defendant, and then per instructions by defense counsel to TLS, ordered to be produced with the mass July 5, 2018 production in *Andreas-Moses*. (Id.)

19.     Defendant's withholding of these documents pertaining to the 2016 Re-Classification is clearly willful and in bad faith. Defendant attested in its discovery responses (Exh. F, pp. 3-5 and 10-12), during the 30(b)(6) deposition (Exh. M),  and to this Court through Maria Fazzino's declaration (Doc. 236-1, p. 3-4 ¶ 7) that there was no analysis of the Analyst job duties and responsibilities pursuant to the decision to re-classify Analyst positions to non-exempt in 2016, when clearly there was. (Exhibits G

---

[3] Plaintiffs could not review the July 5, 2018 production on the Relativity database until it was emailed with a link and a password to Plaintiffs' counsel at 9:07 p.m. on July 5th.

- L). Defendant's counsel also represented to this Court that the 2016 re-classification did not involve an analysis of the Analyst job duties and responsibilities. (Doc. 283, p. 9, ll. 12-25, p. 10, ll. 1-25, p. 21, ll. 6-8, p. 42, ll. 21-25, p. 43, ll. 1-6). Despite these attestations and representations, the attached documents that were part of the July 5, 2018, production in *Andreas-Moses* clearly evidence that there was an analysis of the Analyst positions with respect to job duties and responsibilities in deciding to re-classify these employees as non-exempt. (Exhibits G – L)

20.     Moreover, the timing and the manner in which these documents were produced further evidences willfulness and bad faith. Not only were these documents withheld by Defendant and its counsel, they were then added as part of a mass production of thousands of documents in *Andreas-Moses*. These documents were not part of the documents Defendant and its counsel seek to claim TLS misplaced. The Declaration of Barnaby clearly shows that the documents that TLS allegedly mistakenly placed in the wrong location are not the same documents, as Barnaby clearly identified the documents by bates numbers. (Doc. 327-1, p. 2 ¶ 14).

21.     With respect to the 2016 re-classification, if Defendant had not misrepresented the fact that the 2016 re-classification actually did involve a review of Analyst job duties, and had Defendant not withheld these documents, Plaintiffs could have potentially have moved for summary judgment on the exemption defense. In fact, Exhibit J, p. 2, reflects that Defendant's review of the positions was to determine if any positions met the 'duties' and salary test, and would therefore remain "EX" (exempt). If not, they would be re-classified as "NEX" (non-exempt). (Id.) Thus, given the review

of the positions pursuant to the 2016 re-classification, including Analyst positions, and the fact that if they did not meet the duties and the salary test pursuant to Defendant's own review and analysis, they would be re-classified as non-exempt, the fact that Analysts were re-classified, seems to clearly indicate that a motion for summary judgment on the exemption defense would have been possible and likely successful had Plaintiffs had this evidence prior to the dispositive motion deadline.

22.     In support of its Opposition to Plaintiffs' Renewed Second Motion to Compel, attached to the Declaration of Patrick Bannon are two exhibits Attorney Bannon attests concern the 2016 Reclassification.  (Doc. 327-3, p. 6 ¶23; Doc. 327-3, Exhs. A and B).  However, Exhibit A simply says "Project Name" at the top without any reference to the 2016 reclassification.  (Doc. 327-3, pp. 10-11).  Exhibit B is dated February 11, 2016, but does not mention that positions were actually reviewed, it simply mentions the Department of Labor proposed changes.  (Doc. 327-3, pp. 13-14).

23.     Exhibit L attached to this Motion which was produced on July 5th, states that all Tier 9 exempt job positions were reviewed.  (Exh. L, p. 4).  Analysts fell within Tier 9.  This document produced long after the discovery deadline and the dispositive motion deadline, evidences that Defendant's Interrogatory Responses (Exh. F), Fazzino's Declaration  (Doc. 236-1, p. 3-4 ¶ 7), the 30(b)(6) deposition testimony (Exh. M), and defense counsel's representations to this Court (Doc. 283, p. 9, ll. 12-25, p. 10, ll. 1-25, p. 21, ll. 6-8, p. 42, ll. 21-25, p. 43, ll. 1-6), were false and misled Plaintiffs into believing that there was no review of Analyst positions.   Documents produced on

12

July 5th, show that there actually was a review of all positions in Tier 9, including the Claims and Group Benefit positions within which Analysts fall.  (Exh. I, pp. 3 and 6).

24.    At all times Defendant had documents pertaining to the 2016 Reclassification, but did not produce them. Documents concerning the 2016 reclassification were contained within the T9 Sharepoint. (Exh. M, p. 116, ll. 2-7). Defendant's counsel attested that the documents attached to his declaration were for the 2016 reclassification, and were produced in Defendant's April 13, 2018, production. (Doc. 327-3, p. 6 ¶23).  As such, Defendant selectively chose which of the reclassification documents to produce from the T9 Sharepoint on April 13, 2018, and then instructed TLS to produce these additional ones (Exhibits G – L) with the July 5th mass production in *Andreas-Moses*.

25.    Defendant clearly willfully and in bad faith withheld relevant, discoverable documents pertaining to crucial issues in this case: the exemption defense and damages. Defendant did so even after certifying it had produced all documents pursuant to this Court's Orders. Despite claims by Defendant and its counsel that the withholding of these documents was in error, it is clear based upon the timing of the production and the fact that they were made part of a mass production in *Andreas-Moses*, that it was not a mistake. These documents were the "other documents" that Defendant and its counsel already had, and then instructed TLS to produce on July 5, 2018, as part of its mass production in *Andreas-Moses* containing thousands of documents. (Doc. 327-1, p. 2 ¶ 14). This production occurred after the deadline to comply with this Court's Orders; after Defendant's certifications that it had complied

13

with this Court's Orders; after the discovery deadline; after the dispositive motion deadline; and, just over an hour after the deadline for Plaintiffs to respond to Defendant's Motion for Partial Summary Judgment.

26.     At this point, there is no other way to perceive Defendant's actions other than as willful and in bad faith. Despite Defendant's attestations in interrogatory responses, in Fazzino's declaration to this Court, in the 30(b)(6) deposition, and Defendant's counsel's  representations to this Court, that there was no review or analysis of Analysts' job duties and responsibilities for the 2016 Re-Classification, that is clearly not true. The attached documents produced on July 5, 2018, withheld by Defendant, evidence the contrary. (Exhibits G – L) These documents go directly to the exemption defense.

27.     Plaintiffs have clearly been prejudiced by Defendant's belated production. The documents produced on July 5, 2018, contain crucial evidence pertaining to Defendant's exemption defense and the issues raised in Defendant's Motion for Partial Summary Judgment pertaining to Plaintiffs' damages. Plaintiffs did not have these documents prior to the discovery deadline, prior to the dispositive motion deadline, nor prior to Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment. Defendant's withholding of these documents was not mistake, it was willful and in bad faith, as evidenced by the fact that Defendant was aware of these documents well in advance of these deadlines, had them in their possession; yet, chose to withhold them and then instruct TLS to make them part of a mass production in *Andreas-Moses*.

28. Plaintiffs recognize as this Court has pointed out, that default judgment is a severe sanction; however, Plaintiffs submit that it is the only just sanction under the circumstances. In the event that this Court is unwilling to issue a default judgment against Defendant, Plaintiffs submit that the only other sanctions that would serve due process are the striking of Defendant's exemption defense, deny Defendant's Motion for Summary Judgment, and direct that designated facts -- that Plaintiffs' had a standard forty (40) hour work week -- are established for the purposes of this action, and the denial of Defendant's Motion for Partial Summary Judgment[4] since the crucial documents withheld are directly related to the exemption defense and to damages. Plaintiffs also request that this Court award Plaintiffs their attorneys' fees and costs.

## MEMORANDUM OF LAW

District courts have broad authority to control discovery. *Johnson v. New Destiny Christian Ctr. Church, Inc*., 324 F.R.D. 404, 413 (M.D. Fla. January 2, 2018), *citing Gratton v. Great Am. Commc'ns,* 178 F.3d 1373, 1374 (11th Cir. 1999). The authority afforded the district court includes the ability to fashion sanctions when parties fail to comply with court orders. *Johnson* at 413 *citing Gratton* and Fed. R. Civ. P. 37(b)(2)(A). Rule 37 of the Federal Rules of Civil Procedure suggests a non-comprehensive list of potential sanctions to consider, including the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses,

[4] Although this Court issued a Report and Recommendation (R & R) with respect to Defendant's Motion for Partial Summary Judgment, Defendant still has the ability to file a Rule 72(a) Objection, and this Court must adopt and confirm the R & R.

or from introducing designated matters in evidence; (iii) staying further proceedings until the order is obeyed; (iv) dismissing the action or proceeding in whole or in part; (v) rendering a default judgment against the disobedient party; or (vi) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. *Johnson* at 413, *citing* Fed. R. Civ. P. at (b)(2)(A)(i)-(vii).

One of the potential sanctions is a default judgment. *Johnson* at 413-14, *citing In re Se. Banking Corp.,* 204 F.3d 1322, 1335 (11th Cir. 2000). "Failure to comply based on simple negligence, misunderstanding, or a party's inability is not enough." *Johnson* at 414, *citing Equal Emp't Opportunity Comm'n v. Troy State Univ.,* 693 F.2d 1353, "To impose either warrants a finding of willfulness, bad faith, or fault in the party's failure to obey a discovery order." *Johnson* 414, *citing Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 640, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976) (citing *Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1976) (dismissal standard); *Adolph Coors Co. v. Movement Against Racism & the Klan,* 777 F.2d 1538, 1542-43 (11th Cir. 1985) (default judgment standard). 1357 (11th Cir. 1982) (dismissal context); *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1371 (11th Cir. 1997) (default judgment). "[T]he imposition of default judgment, when justified, *enforces* due process—disobedient parties must face consequences for their failure to comply." *Johnson* at 414, *citing Hammond Packing Co. v. State of Ark*., 212 U.S. 322, 351-352 (1909).

Other sanctions include, directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; and, prohibiting the disobedient party from supporting or opposing designated claims

or defenses, or from introducing designated matters in evidence. Fed. R. Civ. P. at (b)(2)(A)(i)-(ii).

Plaintiffs submit that a default judgment is the only appropriate sanction given the willfulness and bad faith of Defendant and the prejudice to Plaintiffs resulting from Defendant's actions. In the event that this Court is unwilling to issue a default judgment against Defendant, Plaintiffs request that this Court strike Defendant's exemption defense, deny Defendant's Motion for Summary Judgment, and  direct that designated facts -- that Plaintiffs' had a standard forty (40) hour work week -- are established for the purposes of this action, and grant any other relief this Court finds just and proper, since the crucial documents that were withheld are directly relevant to both the exemption defense and damages. Defendant's withholding of this crucial evidence has clearly prejudiced Plaintiffs with respect to their own ability to file a motion for summary judgment on the exemption defense since by these very documents produced on July 5th, it is apparent that a review of job duties was conducted, including the job duties of Analysts, and then because of this review, positions that did not meet both the duties and salary test were re-classified as non-exempt. Analyst positions were re-classified as non-exempt pursuant to the 2016 re-classification.

As previously discussed, Defendant failed to comply with this Court's March 19, 2018 Order (Doc.267), and this Court's April 16, 2018 Order requiring Defendant to immediately produce any lingering discovery from the Discovery Orders. (Doc.288). Defendant certified that it complied (Doc. 293), when it had not. In opposing Plaintiffs' First Motion for Default, Defendant argued that it complied with all Court Orders and that a default judgment should not be entered. (Doc. 303).

In opposing Plaintiffs' Renewed Second Motion for Default, Defendant again argued oversight/mistake; however, it is clear that Defendant's actions were not a mistake, simple negligence or the inability to comply. Defendant withheld crucial documents pertaining to material issues in this case (the exemption defense and damages). Defendant's counsel then instructed TLS to include these "other documents" in a mass production in *Andreas-Moses* after all relevant deadlines had passed in the instant case.

With respect to the documents directly relevant to the exemption defense, Defendant's representations and attestations to this Court and throughout the discovery process have been false. The attached documents produced on July 5, 2018, concerning the 2016 Re-Classification, clearly evidence that there was a review of Analyst job duties and responsibilities. Had these documents been disclosed before the discovery deadline, Plaintiffs may have been able to obtain admissions enabling Plaintiffs to move for summary judgment on the exemption defense. Instead, Defendant withheld these documents, and then buried them within a mass production of documents in the *Andreas-Moses* case, instructing its ESI vendor not to produce them until July 5, 2018, long after all relevant deadlines in this case had passed.

As previously discussed, Defendant cannot claim mistake or blame the withholding of this evidence on TLS. A review of the declaration of Daniel Barnaby from TLS (Doc. 327-1), evidences that these documents were not part of the documents allegedly overlooked by TLS in prior productions. Instead, these documents fall within the "other documents" TLS was instructed to produce in the mass production of thousands of documents in *Andreas-Moses* on July 5, 2018. This is not mistake or oversight, this is the willful withholding of relevant

documents from Plaintiffs. Moreover, these documents were from the T9 Sharepoint which Defendant's counsel had and was well aware of in April, 2018.

Plaintiffs have clearly been prejudiced by the belated production of these documents. The review of Analyst job duties and responsibilities by Defendant when re-classifying Analysts as non-exempt directly relates to Defendant's exemption defense. Not only do the documents reflect that Defendant analyzed Analyst job duties and responsibilities when deciding to re-classify Analysts as non-exempt, but the documents also indicate that Defendant had determined that because the positions in its review met both the duties and salary test, they were re-classified as non-exempt. (Exh. J, p. 2). Analysts were re-classified as non-exempt.

Had Defendant not withheld these documents pertaining to the 2016 re-classification from Plaintiffs, and had Defendant not misrepresented the fact that a review of job duties and responsibilities of Analysts occurred with respect to the re-classification, Plaintiffs could have moved for summary judgment with respect to Defendant's exemption defense. Instead, Defendant withheld these documents, all the while hiding from Plaintiffs and this Court the fact that there was a review of job duties and responsibilities for the 2016 re-classification, resulting in Analysts being re-classified as non-exempt.

With respect to the offer letters, at all relevant times Defendant had Plaintiffs' offer letters; yet, chose to withhold certain letters. Even though defense counsel attested that on June 4th that his firm learned that certain offer letters had not been produced, instead of immediately producing them, Defendant continued to withhold them for another month, and did not produce them until July 5, 2018, when it instructed TLS to produce them as part of a mass production

of thousands of documents in *Andreas-Moses*. These offer letters were placed at the very end of that production.

Plaintiffs were clearly prejudiced by the withholding of these offer letters. In fact, once Plaintiffs had all four offer letters for Named Plaintiff Marissa Shimko (now Marissa Alvarez), it became very apparent that Defendant's offer letters are merely form letters. Shimko's offer letters show that when she was a non-exempt, hourly employee, her offer letter contained the same language as the offer letters when she was exempt – that her salary covered all work performed. (Exh. B) Plaintiffs were prejudiced by not having all of Plaintiffs' offer letters during the litigation, especially at the time when they responded to Defendant's Motion for Partial Summary Judgment.

Plaintiffs have been prejudiced by the withholding of this evidence on the crucial issues of the exemption defense and damages. Plaintiffs submit to this Court that at this juncture, no lesser sanction other than a default judgment will remedy Defendant's abuse of the discovery process, violation of this Court's Orders, blatant misrepresentations, and willfulness and bad faith in the withholding of this crucial evidence.

It has become apparent that the discovery rules and this Court's Orders are merely suggestions to Defendant. History tends to repeat itself (Defendant admitted in this case to withholding documents in *Monserrate*),[5] and continues this same behavior in this case and the related case of *Andreas-Moses*. The same is likely to occur in the new related case of *Alagna,*

---

[5] During the Discovery Conference Magistrate Judge Spaulding required the parties to review Defendant's Second privilege log and detail what should have been produced in Monserrate. (Doc. 283-2, p. 5, ll. 1-25, p. 6, ll. 1-9). The parties reviewed the privilege log, and then Magistrate Spaulding was given the log with the notations of what was withheld in Monserrate that should have been produced. (Doc. 283-2, pp. 9-12; Exh. A).

*et al v. Hartford Fire Insurance Co.* Case No.: 6:18-cv-1154-Orl-41DCI,[6] since this Court's Orders and the discovery process appear to have no meaning to Defendant.

Clearly, the discovery rules are intended to be self-executing. If a party is non-compliant then the remedy is Court intervention. However, when Court intervention and direction are ineffective, due process is denied to the party seeking the discovery. Given the misrepresentations by Defendant and the willful withholding of documents directly related to the exemption defense and damages, Plaintiffs are unaware of any appropriate remedy other than a default judgment. Justice delayed is justice denied, and the entry of a default judgment against Defendant simply *enforces* the due process that up to this point, Plaintiffs have been denied. *Johnson* at 414, *citing Hammond Packing Co. v. State of Ark*., 212 U.S. 322, 351-352 (1909).

In the event this Court is unwilling to issue a default judgment, Plaintiffs request that this Court strike Defendant's exemption defense, deny Defendant's Motion for Summary Judgment, and direct that designated facts -- that Plaintiffs' had a standard forty (40) hour work week -- are established for the purposes of this action, and grant any other relief this Court finds just and proper given that the misrepresentations and documents intentionally withheld directly relate to both the exemption defense and damages.

Plaintiffs also request that this Court award Plaintiffs their attorneys' fees and costs.

---

[6] *Alagna* was filed due to the Order Certifying a Class in *Andreas-Moses,* but limiting the class time period. The *Alagna* Plaintiffs were putative class members in *Andreas-Moses* who had time prior to November 12, 2012.

### 3.01(g) CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), the undersigned conferred telephonically with counsel for Defendant. Defendant opposes this Motion.

**WHEREFORE**, Plaintiffs respectfully request:

1. That this Court issue a Default Judgment against Defendant;

2. If this Court does not issue a Default Judgment against Defendant, that this Court strike Defendant's exemption defense, deny Defendant's Motion for Summary Judgment, and direct that designated facts -- that Plaintiffs' had a standard forty (40) hour work week -- are established for the purposes of this action;

3. That this Court award Plaintiffs their attorneys' fees and costs; and,

4. That this Court grant any other relief this Court deems just and proper.

Respectfully submitted this 5th day of September, 2018.

*/s/ Mary E. Lytle*
**Mary E. Lytle. Esq.**
Florida Bar No.: 0007950
**David V. Barszcz, Esq.**
Florida Bar No.: 0750581
**LYTLE & BARSZCZ, P.A.**
543 North Wymore Road
Suite 103
Maitland, FL 32751
Telephone: (407) 622-6544
Facsimile: (407) 622-6545
mlytle@lblaw.attorney
dbarszcz@lblaw.attorney
**Attorneys for Plaintiffs**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 5, 2018, the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic

filing to: **Patrick J. Bannon, Esquire (Pro Hac Vice)**, pbannon@seyfarth.com, **Hillary J. Massey Esquire (Pro Hac Vice)**, hmassey@seyfarth.com, **Molly C. Mooney, Esquire (Pro Hac Vice)**, mmooney@seyfarth.com, and **Anthony S. Califano, Esquire (Pro Hac Vice)**, acalifano@seyfarth.com, **SEYFARTH SHAW LLP**, Two Seaport Lane, Suite 300, Boston, MA 02210; **Tasos C. Paindiris, Esquire,** tasos.paindiris@jacksonlewis.com**, Jesse I. Unruh, Esquire,** jesse.unruh@jacksonlewis.com**, Jackson Lewis,** 390 N. Orange Avenue, Suite 1285, Orlando, FL, 32801; and, **Thomas Rohback, Esquire,** trohback@axinn.com**, Axinn Veltrop & Harkrider, LLP,** 90 State House Square, Hartford, CT 06103.

*/s/ Mary E. Lytle*
**Counsel for Plaintiffs**