UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JEANNE BACHMANN, PATRICIA DEARTH, ALICIA DUQUETTE, JESSICA PEREZ, JAMIE RIVERA, LAYFON ROSU, MARISSA SHIMKO, and CAROL SOMERS, on behalf of themselves and others similarly situated,<br>    Plaintiffs,<br>v.<br><br>HARTFORD FIRE INSURANCE COMPANY, a Foreign for Profit Corporation,<br>    Defendant. | Case No. 6:16-cv-1603-Orl-37KRS |

## THE HARTFORD'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS, INCLUDING DEFAULT JUDGMENT, ATTORNEYS' FEES AND COSTS, AND OTHER SANCTIONS THIS COURT DEEMS JUST AND PROPER

Defendant, HARTFORD FIRE INSURANCE COMPANY ("The Hartford"), by and through undersigned counsel and pursuant to Local Rule 3.01(b), hereby responds in opposition to Plaintiffs' Motion for Sanctions, Including Default Judgment, Attorneys' Fees and Costs, and Other Sanctions this Court Deems Just and Proper (Doc. 330) ("Third Motion for Default").

### I.     Procedural Posture—Plaintiffs are Seeking Reconsideration

While Plaintiffs have styled the present motion as one seeking default judgment, they are, in effect, seeking reconsideration of the Court's prior denial of their Renewed Second Motion for Default Judgment. (*See* Doc. 328). The Third Motion for Default advances the same theory relating to the same underlying facts that the Court has already ruled on. Plaintiffs have failed to offer any explanation within the bounds of Federal Rule of Civil Procedure 60(b) why the Court should reconsider its prior ruling. Since Plaintiffs have not

advanced any argument as to why the Court should reconsider its prior ruling, denial of entitlement to default judgment should be considered the law of the case. If it were not, then these repeated efforts to seek default judgment would lead to the long cautioned-against situation that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions . . . ." *Acciard v. Whitney*, No. 2:07-CV-00476-FtM-36DNF, 2011 U.S. Dist. LEXIS 113107, at *11 (M.D. Fla. Sep. 30, 2011) (internal quotations omitted) (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967) (quoting *Roberts v. Cooper*, 61 U.S. 467, 481, 15 L.Ed. 969 (1857))). If the Third Motion for Default is not construed as a motion for reconsideration, then The Hartford responds to the substantive assertions in that motion as follows:

## II.     Introduction

In their Third Motion for Default, Plaintiffs attempt to cure their prior failure to show willfulness or bad faith by The Hartford related to a July 5, 2018 production of documents. They also attempt to show how they were prejudiced by the late production. The discovery disputes in this matter, the Court's orders on those disputes, The Hartford's efforts to comply with the Court's orders, and the errors that led to the late production of roughly three thousand—out of almost a half-million—documents are chronicled in the prior motions for default judgment and the related pleadings and orders.[1]

This time Plaintiffs attempt to show willfulness or bad faith by pointing to "crucial"

---

[1] (1) Plaintiffs' First Motion for Default Judgment (Doc. 297); (2) Response to First Motion for Default Judgment (Doc. 303); (3) Order Granting in Part Motion for Default Judgment (Doc. 308 (granting leave for Plaintiffs to seek fees incurred in filing motion for default judgment)); (4) Second Motion for Default Judgment (Doc. 322); (5) Sua Sponte Denial of Second Motion for Default Judgment (Doc. 323); (6) Renewed Second Motion for Default Judgment (Doc. 324); (7) Response to Renewed Second Motion for Default Judgment (Doc. 327); (8) Order Denying Renewed Second Motion for Default Judgment (Doc. 328).

2

documents that were a subset of the late production on July 5, 2018. Plaintiffs try to portray these as smoking gun documents that defense counsel withheld until after the dispositive motion deadline in order to deprive Plaintiffs of a "likely successful" motion for summary judgment on the exemption defense. (Doc. 330 at 12, ¶21). These documents are far from a smoking gun—more importantly for purposes of the present motion, they contain the same or substantially the same substantive information as documents that Plaintiffs have had since April. (*See* description at Sections II(A) and (B), *infra*).

The Hartford's and its counsels' acts were a mistake, not an elaborate scheme to hide documents—once defense counsel realized that documents had been missed they worked with the involved ESI vendor, TransPerfect Legal Solutions ("TLS") to produce them without any prompting by Plaintiffs. Defense counsel notified Plaintiffs that the late documents were responsive in this case. These actions are consistent with litigation mistakes that were willingly corrected—not an effort to deliberately disobey the Court's orders and to deprive Plaintiffs of information.

As to the second element Plaintiffs must prove, prejudice, Plaintiffs attempt to demonstrate that: (1) they were deprived of offer letters that they could have used in opposition to Defendant's Motion for Partial Summary Judgment and (2) they could have used the PowerPoint exhibits[2] related to the 2016 reclassification of certain tier nine ("T9") positions from exempt to non-exempt to successfully move for summary judgment. This claimed prejudice is illusory, however, for several reasons: (1) Plaintiffs have had the same substantive information since April or earlier; (2) Magistrate Judge Spaulding has

---

[2] Exhibits G-L to Plaintiff's Third Motion for Default. (Docs. 330-7 – 330-12).

recommended that The Hartford's Motion for Partial Summary Judgment (Doc. 313) be denied (Doc. 329) and The Hartford did not object[3] to it; and finally (3) Plaintiffs have these documents in time for trial.

These arguments and facts have already been presented to the Court and Plaintiffs raise nothing new, thus The Hartford, again, respectfully requests that the Court deny Plaintiffs' motion and allow this case to be decided on the merits.

### III. Argument

To justify the imposition of dismissal or default judgment as a sanction, the movant must show that the discovery abuse was willful and that some lesser sanction could not adequately redress the claimed prejudice. As the court observed in *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.,* 736 F. Supp. 2d 1317 (S.D. Fla. 2010), " 'Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice.' " *Id.* at 1333 (quoting *Flury v. Daimler Chrysler Corp.,* 427 F. 3d 939, 944 (11th Cir. 2005); *see also Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993) ("[A] default judgment sanction requires a willful or bad faith failure to obey a discovery order. . . . Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal."); *E.E.O.C. v. Troy State Univ.*, 693 F.2d 1353, 1358 (11th Cir. 1982) (reversing the district court's dismissal where noncompliance was not from "bad faith or callous disregard for the order.").

---

[3] The deadline to object was September 18, 2018, the day before this pleading was filed.

Here, Plaintiffs have not and cannot show willfulness or bad faith. Nor is there any showing of prejudice—severe or otherwise. Default judgment should not be entered unless the opposing party has been "severely prejudiced." *Wallace v. Superclubs Properties, Ltd.*, No. 08-61437-CIV, 2009 WL 2461775, at *7 (S.D. Fla. Aug. 10, 2009) (adopting the Recommended Decision of the Magistrate Judge to deny the motion for sanction of default where "Plaintiff failed to show willful disobedience of court order," and where "Plaintiff has not shown that less drastic sanctions would not ensure compliance with this Court's previous Order."); *Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*, No. 8:11-CV-1468-T-33TBM, 2013 WL 12157430, at *2 (M.D. Fla. May 15, 2013) (Adopting the Recommended Decision of Magistrate Judge denying the sanction of default even though "the Chinese Defendants willfully disobeyed the Court's . . . Order compelling discovery," because "the prejudice to Axiom Inc. 'can be addressed by less drastic means than a default judgment . . . .' ").

### A. The Hartford Did Not Withhold Documents Willfully or in Bad Faith and the Actions of The Hartford and Defense Counsel Demonstrate that Mistakes Were Made and then Corrected

The Hartford has chronicled the mistakes that led to the late production of less than 1% of the documents produced pursuant to the Court's discovery orders.[4] A handful of

---

[4] Courts are especially reluctant to impose the ultimate sanction of default judgment (or dismissal) under Rule 37 when the client is not at fault. *See Gratton v. Great Am. Commc'ns.*, 178 F.3d 1373, 1375 (11th Cir. 1999) ("a court should be reluctant to impose the harsh sanction of dismissal with prejudice where the plaintiff is not actually culpable" for conduct of counsel); *see also Atmos Nation, LLC v. All Rise Records Inc.*, No. 16-60032-CIV, 2017 WL 3635115, at *3 (S.D. Fla. Feb. 15, 2017) (default judgment appropriate where defendant itself, not only its counsel, played a role in failure to produce any documents at all for several months in violation of several court orders). Here, The Hartford sent all of the documents required by the Court's orders to its ESI vendor in March or early April 2018. *See* Cantu Decl. ¶¶ 5-6 (Doc. 327-2). That a small

5

errors led to some documents being missed during The Hartford's sincere and substantial efforts to comply with the Court's discovery orders. When the attorneys and ESI vendor realized the errors, they worked to analyze if any other documents were missing and then they produced the documents that were mistakenly not produced.[5] The Hartford, its counsel, and its vendors have been forthright—missteps have been made in the course of discovery and everyone involved has made efforts to cure those missteps.

Rather than accepting that The Hartford has endeavored to cure any prior missteps, Plaintiffs assert that there has been strategic disobedience of the Court's orders by the defense. Plaintiffs' theory of willful disobedience of the Court's orders, however, is illogical. First, for all of the PowerPoint slides and offer letters on which Plaintiffs rely in their motion, Plaintiffs have had equivalent documents since April. The below table matches Plaintiffs' exhibits (the documents they claim are "crucial") with examples of documents (attached as composite exhibits to this motion) that contain the same substantive information and that Plaintiffs have had in their possession for months.

---

percentage of them was produced late was not the result of anything The Hartford did or neglected to do. For that matter, Hartford's counsel has exhibited good faith in its efforts to comply with the Court's Order.

[5] Plaintiffs note that the Barnaby Declaration states that TLS produced "other documents" on July 5, 2018 that were not from the "20180330 Sharepoint" folder that TLS overlooked. Doc. 330 at 9, 13, 18-19. Plaintiffs attach six of these documents as Exhibits G-L to their motion and suggest that they were intentionally withheld. Id. at 9. In fact, the "other documents" Barnaby refers to, numbered Hartford A-M 010031-010648 and 013390-0134402 (Doc. 237-1, ¶ 14), are limited to the following: documents from the EQR folder (Hartford A-M 010031-010648); two documents that had been designated non-responsive in *Dearth* (Hartford A-M 013390-013391); a single Maria Fazzino user-created file (Hartford A-M 013392); and ten offer letters (Hartford A-M 013393-013402). Exhibits G-L, and eight other non-EQR documents (Hartford A-M 010635-010648), were in the EQR folder that contained approximately 600 EQRs. As previously explained, the late production of the EQR folder, including these documents, was not intentional. Doc. 237-3, ¶¶ 14, 19-21.

| Exhibit Correlation Table |||
|---|---|---|
| **Plaintiffs' Exhibit** | **Defendant's Record of Similar Material Produced in April or before** | **Defendant's Production Date** |
| Ex. B (Shimko Offer Letter) (Doc. 330-2). | *See* Doc. 313-7, at 11-12 (Tobias Offer Letter) | October 11, 2017 |
| Compare Shimko and Tobias offer letters for non-exempt job roles, which both contain the "all work performed" language. Plaintiffs incurred no prejudice in their ability to oppose summary judgment. (*See* Doc. 330 at 20). The Tobias offer letter is one of many offer letters timely produced to Plaintiffs that were similar to Plaintiff Shimko's offer letters. |||
| | | |
| Ex. G (FLSA Regulation Changes: Exemption Status Reviews) (Doc. 330-7). | Composite Ex. 1 (FLSA Refresh Training and Proposed Regulations: August 2015 and Exemption Status Review) | April, 13, 2018 |
| Defendant's composite exhibit 1 contains two PowerPoint slideshows. The first is a near duplicate of Plaintiffs' Exhibit G, and differs only as to the last page of the PowerPoint. The second PowerPoint slideshow in Defendant's composite exhibit 1 provides substantively similar information to Plaintiffs' Exhibit G (at 8) as to the "Exemption Review Process." In conjunction the slides in Defendant's composite exhibit contain the same substantive information as Exhibit G. |||
| | | |
| Ex. H (Independent Judgment and Discretion with Respect to Matters of Financial Significance - chart) (Doc. 330-8). | Comp. Ex. 2 (Independent Judgment and Discretion with Respect to Matters of Financial Significance - chart) | April, 13, 2018 |
| Defendant's composite exhibit 2 contains a table that is word-for-word the same as Plaintiffs' exhibit H. |||
| | | |
| Ex. I (T8 T9 Position Review: Job and Interview Details) (Doc. 330-9, at 3 and 6) | Comp. Ex. 3 (T9 Position Review Project) at 8. | April 13, 2018 |
| Plaintiffs specifically cite to pages 3 (In Scope Positions: Manager Interviews) and 6 (Manager Interview) which contain tables of job types undergoing review. Defendant's exhibit 3 contains substantively similar tables at page 8. |||
| | | |

7

| **Exhibit Correlation Table** | | |
|---|---|---|
| Ex. J (FLSA Regulation Project Update) (Doc. 330-10, at 2) | Comp. Ex. 4 (FLSA Regulation Project Update) | April 13, 2018 |
| Compare page 2 of each of the PowerPoint slideshows.  Defendant's PowerPoint in the composite exhibit is titled the same as Plaintiffs' exhibit and contains virtually identical content at page 2, the page relied upon by Plaintiffs. | | |
| Ex. K (FLSA Regulation Change) (Doc. 330-11) | Comp. Ex. 5 (T8-T9 Position Review Project) | April 13, 2018 |
| Compare page 2 of each of the PowerPoint slideshows.  While the slide title is different, the text boxes are titled the same and the exhibit contains substantively similar content. | | |
| Ex. L (FLSA Regulation Change: CHANGE MANAGEMENT STRATEGY)(Doc. 330-12, at 4) | Comp. Ex. 6 (T9 Project: CHANGE MANAGEMENT STRATEGY) | April 13, 2018 |
| Compare page 4 of each PowerPoint slideshow, both contain similar statements regarding review of T9 exempt job positions. | | |

Second, if it were The Hartford's intent to withhold these documents from Plaintiffs in willful disobedience of the Court's orders, then it would not make sense for The Hartford to produce these documents in July and give Plaintiffs a production index specifically listing the exact documents that should have been produced earlier.[6]  These are not the actions of a guilty party attempting to hide information—these are the acts of a litigant that made inadvertent errors and then acted to correct them.[7]

---

[6] The theory that defense counsel intentionally withheld specific documents until after summary judgment makes even less sense given that the sister case, *Andreas-Moses*, is still in the discovery phase.  If the goal was to deprive Plaintiffs of these documents until after summary judgment, one would presume that the same scheme would be employed in both cases and Defendant would not have disclosed the documents until after summary judgment in *Andreas-Moses*.  The reasonable and documented explanation of the late production is that these documents were simply missed due to human error.  (*See* Doc. 327 and accompanying declarations).

[7] The Court should similarly reject Plaintiffs' assertion that "Defendant admitted in this case to withholding documents in *Monserrate*." (Doc. 330 at 20).  During the March 12 discovery conference, The

### B. Plaintiffs Were Not Prejudiced by the Late Production Because They Had the Same Substantive Information on Which they Rely Since April

Plaintiffs have submitted several documents to the Court that were in the July 5 production and they claim that these documents included new information that would have been instrumental in prosecuting their case in two ways: (1) they could have used the late-produced offer letters in opposing Defendant's motion for summary judgment on the half-time issue and (2) certain PowerPoint documents could have served as a basis for Plaintiffs to move for summary judgment on The Hartford's exemption defense based on an alleged 2016 classification review. Plaintiffs, however, had this information in April or earlier (*see* Exhibit Correlation Table at 7 - 8, *supra*) and the documents they cite simply do not support the assertion that The Hartford undertook a classification review of every T9 job. The cherry-picked "classification review" references indicate that some T9 positions were reviewed, however the review described in the selected slides only applied to a subset of T9 positions and did not include Plaintiffs' jobs.

#### 1. Plaintiffs Were Not Prejudiced by Late Production of Offer Letters

Plaintiffs claim that their ability to respond to The Hartford's motion for summary judgment on the half time issue was undermined because they were missing several offer letters. This Court recommended that motion be denied and The Hartford did not object to that recommendation—thus Plaintiffs efforts to resist summary judgment were not prejudiced.

---

Hartford agreed to produce additional documents in this case but did not agree that the documents should have been produced in *Monserrate*. (Doc. 270 at 11:9-12:12).

Even if the motion were still pending, the Plaintiffs have had offer letters equivalent to Ms. Shimko's since October 2017. In fact, The Hartford produced the two non-exempt offer letters on which Plaintiffs rely, Plaintiffs' Exhibits B and D, on October 11, 2017. The letter dated May 17, 2005 (Plaintiffs' Exhibit B) indicated that Ms. Shimko's compensation was intended to "cover[] all work performed" even though she was an hourly employee at the time. Plaintiffs complain that The Hartford produced offer letters for Ms. Shimko's exempt positions on July 5 and they should have been able to use those letters to respond to The Hartford's motion for summary judgment, which was partially based on offer letters for exempt employees containing the same language. But Plaintiffs could have relied on their own Exhibit B in opposing summary judgment.

Ms. Shimko's letter was not the only non-exempt letter containing the "covering all work performed" language on which Plaintiffs could have relied to oppose summary judgment. The Hartford produced offer letters for 870 analysts[8]—these included offer letters for exempt and non-exempt analysts that used the same "all work performed" language. As a specific example, The Hartford produced two offer letters for Plaintiff Tobias on October 11, 2017. One of those letters was for a Tier 11 short term disability analyst position (STD Claims Examiner I), which Plaintiff Tobias testified at her deposition was a non-exempt position. That offer letter contains the same language that Plaintiffs claim The Hartford hid from them. In fact, The Hartford included the Tobias non-exempt letter, and other offer letters for non-exempt positions, in its exhibits to its motion for summary judgment on half-time damages (Doc. 313-17 at 12).

---

[8] Many of those 870 analysts had multiple offer letters that were produced to Plaintiffs.

Plaintiffs' claim they were deprived of an opportunity to oppose summary judgment—a motion that has now been denied—using Plaintiff Shimko's offer letter. However, they could have made the same point in their opposition using the Shimko letter The Hartford produced in October 2017 (their Exhibit B), Plaintiff Tobias' offer letter, or one of other similar offer letters. Plaintiffs have had ample time to review the offer letters for the 870 employees that were produced in this case, and they were not deprived of any opportunity to oppose summary judgment due to the late production of ten offer letters.

**2. Documents Related to 2016 T9 Reclassification Do Not Show Analyst Positions at Issue in This Case Underwent a Review of Duties for Purposes of FLSA Exemption Analysis and Plaintiffs Have Had the Relevant Information Since April**

Plaintiffs' central theory of prejudice focuses on documents relating to The Hartford's 2016 reclassification of a large number of T9 employees from exempt to non-exempt. Plaintiffs claim that the belatedly produced documents show that an analysis of job duties was undertaken in 2016 for the jobs at issue in this case. (Doc. 330 at 19). Plaintiffs' theory is that The Hartford assessed the duties of all exempt analysts, determined that they were misclassified, and then decided to reclassify them as non-exempt. Plaintiffs base this theory upon multiple unfounded factual assumptions and logical gaps—moreover, The Hartford made no such determination. Plaintiffs have had the PowerPoints that they claim prove this point since April, so even if they were correct about the 2016 reclassification, Plaintiffs were not deprived of the opportunity to seek summary judgment on the Hartford's exemption defense. (*See* Exhibit Correlation Table at 7 - 8, *supra*).

Additionally, the PowerPoints do not remotely support Plaintiffs' belief that The Hartford determined it had misclassified the employees at issue in this case. Plaintiffs cite to

11

a PowerPoint titled "FLSA Regulation Project Update" for the proposition that The Hartford determined that Analysts did not meet the applicable exemptions. (*Id.* at 9 citing to Ex. J at 2 (Doc. 330-10) ).

The specific slide that they refer to states:

How is The Hartford planning for the change?

Implemented a comprehensive process, coordinated with front line leaders, HR and Compliance, to evaluate any potentially impacted jobs[.] Review will determine any positions that meet the 'duties' and salary test should therefore remain [exempt.] All other T9 [exempt] will be reclassified as [non-exempt.]

(Doc. 330-10 at 2). In a slide two pages later it becomes clear this review did not include the jobs relevant to this case. In the slide titled "Impacted Employee Population," the first line of the table addresses the "Claims" department. In a bright yellow textbox to the side of the table the presentation specifically indicates claims "[p]ositions will not be put through the Exemption Review Process." (Doc. 330-10 at 4). Maria Fazzino's deposition also shows that the term "review" used in reference to the 2016 T9 reclassification did not mean a classification review of job duties. (Doc. 330-13 at 117:19 – 118:25).[9] The PowerPoints and Ms. Fazzino's testimony show that a review of job duties was undertaken for *some* T9 positions,[10] but not for the jobs at issue in this case.

Plaintiffs' theory is that in 2016 The Hartford determined the jobs at issue in this case were misclassified and The Hartford is attempting to hide this from Plaintiffs and actively

---

[9] Pinpoint citations to Doc. 330-13 are to the internal page and line numbers of the deposition transcript.

[10] The Hartford has a dozens of job titles within T9; the T9 designation is not coextensive with the jobs at issue in this case.

deceive the Court. This view is wrong. More importantly for purposes of the Third Motion for Default, Plaintiffs have had the PowerPoint slides they claim are crucial since April.

### C. Plaintiffs Offer No Analysis as to Lesser Sanctions and Offer Illusory Alternative Relief

This iteration of Plaintiffs' Motion for Default Judgment, fails to show why default judgment is the only sanction that would suffice. *Managed Care Solutions, Inc.,* 736 F. Supp. 2d at 1333 (S.D. Fla. 2010) (citing *Flury,* 427 F. 3d at 944). Instead, Plaintiffs suggest alternative sanctions in case the court is "unwilling" to issue a default judgment. (Doc. 330 at 21). However, Plaintiffs have offered an alternative sanction that is different from default judgment in name only and have not established that a default is justified.[11]

Plaintiffs request that, if the Court is unwilling to enter a default judgment, the Court strike Defendant's exemption defense, deny The Hartford's motion for summary judgment as to the half time method, and direct that Plaintiffs had a standard forty-hour workweek be designated as a fact for this matter. (Doc. 330 at 21). Taken in conjunction, these three requests for alternative relief would have the same effect as default judgment. If the Court were to grant Plaintiffs' alternative relief, then that would conclusively determine liability and establish that any overtime damages should be calculated at a time-and-a-half rate. In other words, Plaintiffs have proposed default judgment by another name.[12]

Rather than explain why default judgment is the only sanction that will suffice in this case, Plaintiffs present the Court with a false choice. Moreover, instead of moving for

---

[11] One aspect of the alternate relief Plaintiffs request, denial of The Hartford's motion for summary judgment as to the half time method, is now mooted because the motion has been denied.

[12] Plaintiffs requested attorneys fees, but provide no analysis as to why such relief is appropriate in these circumstances. Defendant respectfully requests that no fees be awarded.

13

permission to file a merits-based motion due to supposedly "newly discovered evidence," Plaintiffs seek to exploit their delayed receipt of these documents (which they have in their possession) to eliminate the possibility of a decision based on the merits. The Hartford respectfully suggests that Plaintiffs have not met their burden to show that default judgment is warranted (by that name or any other). The Hartford requests that this matter be permitted to move forward on the merits of the parties' claims.

### IV. Conclusion

Because Plaintiffs have, in effect, requested reconsideration of this Court's prior ruling without presenting any reasons why the Court should do so and because Plaintiffs still have not shown willfulness, bad faith, or prejudice, as set forth above, The Hartford respectfully requests that this Court Deny Plaintiffs' Third Motion for Default Judgment (Doc. 330).

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Respectfully submitted,

| | |
|---|---|
| */s/Patrick J. Bannon* | |
| Patrick J. Bannon (pro hac vice) | Tasos C. Paindiris (Fla. Bar No. 41806) |
| Anthony Califano (pro hac vice) | Jesse I. Unruh (Fla. Bar No. 93121) |
| Hillary J. Massey (pro hac vice) | Jackson Lewis P.C. |
| Molly C. Mooney (pro hac vice) | 390 N. Orange Avenue |
| Seyfarth Shaw LLP | Suite 1285 |
| Two Seaport Lane, Suite 300 | Orlando, FL 32801 |
| Boston, MA 02210 | Tel: (407) 246-8440 |
| Tel:  (617) 946-4800 | tasos.paindiris@jacksonlewis.com |
| pbannon@seyfarth.com | jesse.unruh@jacksonlewis.com |
| acalifano@seyfarth.com | |
| hmassey@seyfarth.com | |
| mmooney@seyfarth.com | |

Thomas Rohback (pro hac vice)
Axinn, Veltrop & Harkrider, LLP
90 State House Square
Hartford, CT 06103
Tel: (860) 275-8100
trohback@axinn.com

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of September, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Patrick J. Bannon*
Patrick J. Bannon

4830-1084-8371, v. 1