UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEANNE BACHMANN, PATRICIA DEARTH, )
ALICIA DUQUETTE, JESSICA PEREZ, JAMIE )
RIVERA, LAYFON ROSU, MARISSA )
SHIMKO, and CAROL SOMERS, on behalf of )
themselves and others similarly situated, )
  Plaintiffs, )
v. ) Case No. 6:16-cv-1603-Orl-37KRS
)
HARTFORD FIRE INSURANCE COMPANY, )
a Foreign for Profit Corporation, )
  Defendant. )
)

**JOINT MOTION FOR APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW**

Representative Plaintiffs[1] and Hartford Fire Insurance Company ("Defendant"), through their undersigned counsel and pursuant to Local Rule 3.01(g) and this Court's Order dated August 25, 2017 (Doc. 163), jointly move the Court to approve the settlement reached by the parties in this suit instituted under the Fair Labor Standards Act and in support thereof, state:

  1.  The initial Complaint in this action was filed on September 13, 2016 (Doc. 1). The Second Amended Complaint was filed on December 19, 2017 (Doc. 202). In both Plaintiffs' initial Complaint and Second Amended Complaint, Plaintiffs alleged unpaid overtime compensation was due to them, and those similarly situated, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq*. ("FLSA").

---

[1] The Representative Plaintiffs are Jeanne Bachmann, Patricia Dearth, Alicia Duquette, Jessica Perez, Jamie Rivera, Layfon Rosu, Marissa Shimko, and Carol Somers.

2. Plaintiffs moved for conditional certification of this case as a collective action and on August 25, 2017 the motion was granted. (Doc. 163). This Court appointed the Representative Plaintiffs to act on behalf of the class. (Id.). The Court excluded individuals who agreed to arbitrate their claims.

3. Thereafter various "Consent to Sue and Opt In" or "Consent to Join Collective Action" forms (hereinafter, "Opt-In forms") were filed with the Court.

4. During the litigation spanning over two years, the parties vigorously litigated and negotiated this action culminating in a settlement, deemed by the parties to be fair and equitable.

5. Given that Defendant and the Representative Plaintiffs have successfully come to an agreement to resolve this case, they now seek approval of the settlement from the Court. A copy of the Settlement Agreement between the parties is attached as Exhibit "1." Attached to the Settlement Agreement are three different exhibits. The first, Exhibit A is a Notice of Settlement of Lawsuit notifying the Plaintiffs of the settlement of this lawsuit and their rights. Exhibit B is the breakdown of the amounts to be paid to the Representative Plaintiffs and Opt-In Plaintiffs. Exhibit C are the Release of Claims Forms that Representative Plaintiffs and Opt-In Plaintiffs will be required to sign to receive payment under the terms of the Settlement Agreement.

6. The settlement provides that Defendant will pay up to the total amount of $921,333.34: (1) up to $663,358.34 will be paid to the Representative Plaintiffs and Opt-In Plaintiffs as specified in Exhibit B to the Settlement Agreement, if they timely sign and timely return the Release of Claims Form within the timeframe required by the Settlement

Agreement;[2] and, (2) $257,975.00 will be paid in attorney's fees and in costs by Defendant to Plaintiffs' counsel.

    7.  In exchange for all payments made under the terms of the Settlement Agreement and Release, Plaintiffs who return release forms agree to release Defendant from all claims brought in this lawsuit, including any claims for interest, attorney's fees, or litigation expenses in this lawsuit.

    8.  For any Plaintiffs who do not return release forms, no payment shall issue and no claims shall be released. Pursuant to the Settlement Agreement, Defendant retains the right to nullify the Agreement if either (a) five (5) or more Representative Plaintiffs and Opt-In Plaintiffs (combined) fail to timely sign and return Release Forms; or (b) the Representative Plaintiffs and Opt-In Plaintiffs (combined) who fail to timely sign and return Release Forms represent more than 15% of the Payment Amount. In the event Defendant nullifies the Agreement due to participation, it is agreed in the Settlement Agreement that the parties will return to their same positions in the lawsuit without prejudice to either party. Hence, as requested herein, the parties ask that the Court retain jurisdiction for the time period of compliance in the Settlement Agreement. The parties agree to immediately notify the Court once all terms hereunder are met by filing a Joint Motion for Dismissal with Prejudice as set forth in paragraph twelve (12) below.

---

[2]  Any amount allocated to Plaintiffs that do not timely return an executed release form may not be paid by Defendant.

9. As described more fully below, the Defendant and Representative Plaintiffs agree this is a fair and reasonable settlement of a bona fide dispute as to all Plaintiffs' FLSA claims brought in this action.

10. The parties are submitting this Motion and the Settlement Agreement and Release to the Court for a determination that there has been a "fair and reasonable resolution of a bona fide dispute," with respect to Plaintiffs' claims brought in this action.

11. The Parties request that, upon a finding that the Settlement Agreement is fair, the Court issue an Order dismissing the case without prejudice and retaining jurisdiction for entry of a final order of dismissal, with prejudice, as noted below.

12. Upon completion of the notice, release and payment provisions of the settlement, the Parties will file a Joint Motion for Dismissal, with prejudice, of the claims of those Representative Plaintiffs and Opt-In Plaintiffs who have signed and timely returned release forms. The parties will submit a proposed order for dismissal with prejudice of those individuals, listing the Representative Plaintiffs and Opt-In Plaintiffs that have released their claims.

13. Finally, the Parties request that the Court retain jurisdiction for enforcement of the Settlement Agreement.

## MEMORANDUM OF LAW

**A.    Standard of Review.**

This action arises under the FLSA. In *Lynn's Foods Stores, Inc. v. U.S. Department of Labor*, the Court held that when an employee brings "a private action for back wages . . . and present[s] to the district court a proposed settlement, the district court may enter

a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d 1352 (11th Circ. 1982).

Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1355. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

There is a "'strong presumption' in favor of finding a settlement fair." *Hamilton v. Frito-Lay, Inc.*, 2007 U.S. Dist. LEXIS 10287, at *4 (M.D. Fla. Jan. 8, 2007) *citing Cotton v. Hinton.* 559 F.2d 1326, 1331 (5th Cir. 1977). In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

(1) the existence of fraud or collusion behind the settlement:
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiff's success on the merits:
(5) the range of possible recovery; and
(6) the opinions of the counsel.

*Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).

**B.     There Is A Bona Fide Dispute As To Plaintiffs' FLSA Claims and All of the Relevant Criteria Support Final Approval of the Settlement.**

In *Dees v. Hydradry, Inc.*, the Court first analyzed "internal factors" to determine if a compromise of an overtime claim was fair to the employee and required the parties seeking approval of the compromise to describe the nature of the dispute including the employer's reasons for disputing the employee's right to compensation and the employee's

5

reasons for believing the disputed wages were due. 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).

In this case, Plaintiffs asserted claims for unpaid overtime under the FLSA. Defendant contends, and Plaintiffs deny, that Plaintiffs were employed in a bona fide administrative capacity and were, therefore, exempt employees under the FLSA pursuant to 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.200, et seq. There is bona fide dispute as to whether the Administrative Exemption applies to Plaintiffs. These issues were vigorously contested between the parties giving rise to litigation spanning over two years.

During the relevant time period, Plaintiffs were not required to track the number of hours they worked, nor did Defendant track their hours with a timekeeping system, and therefore Plaintiffs had to estimate the number of hours worked during their employment, relying on their memories and inferences drawn from data produced by Defendant, such as the times they logged on and off of Defendant's phone and computer system. Defendant disputed those estimates, pointing to discrepancies in the number of hours claimed and drawing the opposite inferences from the electronic data available. As such, there was a clear dispute between the parties concerning the actual number of hours worked by the allegedly misclassified Analysts. During settlement negotiations, which included various lengthy mediations and extensive informal settlement negotiations, Representative Plaintiffs and Defendant spent numerous hours to come to a fair and equitable settlement that took into account the large divide between Plaintiffs' position and Defendant's position as to the likelihood of success on the merits and Plaintiffs' hours worked.

After carefully and thoroughly considering the above information, Defendant

and Representative Plaintiffs agreed to compromise the FLSA claims of all Plaintiffs based upon a number of factors pertaining to these issues. In the course of extensive settlement negotiations, Defendant and Plaintiffs utilized their respective analyses to come to an agreeable settlement amount. As a result, the settlement was a compromise between Plaintiffs' calculations and Defendant's calculations. The parties negotiated through various mediations and extensive informal settlement discussions to come to an agreeable and equitable compromise between the parties' positions.

In addition, Plaintiffs' Counsel also developed an equitable distribution of the settlement amount, using certain factors to determine a fair and equitable settlement and to calculate the pro-rata distribution of the settlement proceeds amongst the Plaintiffs. In this regard, the following factors were utilized: (i) the number of weeks a Plaintiff worked in a particular job during the relevant time period; (ii) the number of weeks worked by a Plaintiff during the class time period; (iii) when a Plaintiff opted into the lawsuit; (iv) the particular Plaintiff's rate of pay; (v) the type of Analyst position held by each Plaintiff; (vi) the estimate of hours a Plaintiff worked in any given work week based upon Plaintiffs' estimate of hours as well as Defendant's records; and, other factors related to the legal risks associated with continued litigation and trial. The amount paid to the Representative Plaintiffs and Opt-In Plaintiffs pursuant to the pro-rata distribution is captured in Exhibit B to the Settlement Agreement. Pursuant to the Settlement Agreement authorized by the Representative Plaintiffs, the payment amounts the Representative Plaintiffs and Opt-In Plaintiffs will receive, if they sign and return releases, range from $959.08 to $61,358.34, and were based upon a variety of factors detailed above, including the risks of continuing to litigate.

In evaluating a compromise, the Court should also consider an array of "external" or contextual factors pertinent to the statutory purpose of the FLSA. *Dees,* 706 F. Supp. 2d at 1243-1244. Compromise may be permissible if, for example, the FLSA issue in a case is unresolvably close on the facts or the law. *Id.* at 1244. Here, the parties agree that there is a bona fide dispute as to whether Plaintiffs were exempt employees that cannot readily be resolved based on the facts of the case or the law.

In *Dees*, the Court also provides several "external" factors that may commend rejecting a proposed compromise, such as a likelihood that the Plaintiffs' circumstances will recur and a history of FLSA non-compliance by the same employer or others in the same industry or geographic region. *Id.* In this case Defendant has reclassified all Analysts as non-exempt under the FLSA as of November 26, 2016, therefore the alleged violation will not recur and that factor militates in favor of approval.

Turning to the specific factors set forth in *Leverso*, courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, *11-12 (M.D. Fla. Dec. 21, 2006). Here, each party was independently represented by counsel. Plaintiffs were represented by Mary E. Lytle, Esquire and David Barszcz, Esquire of Lytle & Barszcz and Defendant was represented by Tasos C. Paindiris, Esquire, and Jesse I. Unruh, Esquire, of Jackson Lewis P.C., each of whom has extensive experience in litigating claims under the Fair Labor Standards Act, including claims for unpaid overtime compensation. Defendant was further represented by Thomas Rohback, Esquire and Jarod Taylor, Esquire of Axinn, Veltrop, & Harkrider, LLP, and Patrick J. Bannon, Esquire, Molly C. Mooney, Esquire

and Hillary Massey, Esquire of Seyfarth Shaw, LLP. Each counsel was obligated to and did vigorously represent their respective clients' interests.

The complexity, expense, and length of future litigation also militate in favor of this settlement. Plaintiffs and Defendant continue to strongly disagree over the merits of the claims asserted by Plaintiffs. As noted above, Plaintiffs contend Defendant misclassified Plaintiffs as exempt, and did not pay them overtime compensation to which they were entitled. Defendant maintains that Plaintiffs were properly classified and were paid all wages owed. If the parties continued to litigate this matter, they would be forced to engage in a costly and lengthy trial. Thus, an ultimate resolution for each Representative Plaintiff and Opt-In Plaintiff could involve trial time anywhere from two weeks to a month or more including the damages phase. Trial would be also complex, as the Court acknowledged when it permitted Defendant to put on expert testimony at trial: "This case envisages a searching inquiry into the world of processing disability insurance claims—an industry unfamiliar to the average layperson." (Order 7, Aug. 28, 2018 (Doc. 326).) <u>Nor is there any guarantee that Plaintiffs would prevail at trial. The administrative exemption is an inherently subjective and fact-specific standard that makes any outcome uncertain.</u> An appeal of any verdict favorable to Plaintiffs could further risk or delay receipt of any proceeds from the litigation. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

Over the last two years, there has been more than sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The parties exchanged voluminous amounts of information through extensive discovery. In agreeing upon the proposed settlement, the parties had an abundance of information and

conducted an extensive investigation to allow them to make an educated and informed analysis and conclusion.

Plaintiffs' probability of success on the merits and the uncertainty of the amount they may have recovered, based on the number of overtime hours they could prove and whether damages would be calculated at half-time or time-and-a-half, further suggest that this settlement is fair and appropriate. As noted previously, Plaintiffs assert that Defendant did not pay them overtime compensation to which they were entitled. Defendant maintains that Plaintiffs were properly classified as exempt and were paid all wages owed to them. In addition to the risks associated with exemption issues, the range of possible recovery by Plaintiffs is also open to dispute based on the proof of hours worked and method of calculating damages. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and exercise of resources by both parties, the exact amount of their recovery is uncertain.

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorneys' fees. *See Helms*, 2006 U.S. Dist. LEXIS 92994, at *6-7.

In *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009), the Honorable Gregory A. Presnell held: "In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid

to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Id.* at 1228. Judge Presnell maintained that if the matter of attorney fees "[is] addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id. See also e.g. Cooney v. Collegiate Prep Realty, LLC,* 2018 U.S. Dist. 174294 (M.D. Fla. September 21, 2018); *Buntin v. Square Foot Mgmt. Co., LLC,* 2015 U.S. Dist. LEXIS 68287 (M.D. Fla. May 27, 2015); *Sexton v. Macro,* 2016 U.S. Dist. LEXIS 77892 (M.D. Fla. June 10, 2016).

At the conclusion of lengthy negotiations, including various mediations, the Parties finally reached a settlement. After Plaintiffs' Counsel consulted with Plaintiffs and determined how much the Plaintiffs required to settle the case, Counsel for the Plaintiffs then communicated to Defendant's Counsel that amount as well as the amount of fees for Plaintiffs' Counsel, and the parties agreed to settle upon those numbers. Plaintiffs' claims were not compromised in any way by the amount paid in attorney's fees and costs. In addition, given the complexity of the case and the tenacity of the defense, counsel for the parties agree that the amount of attorneys' fees and costs recovered by Plaintiffs' counsel for this litigation spanning over two years is just and reasonable.

Accordingly, because the settlement is reasonable on its face and Plaintiffs' recovery was not adversely affected by the amount of the fees paid to their attorney, the Court should approve the settlement.

## **CONCLUSION**

The FLSA settlement terms are fair, reasonable and adequate. Accordingly:

1. The Parties request that, upon a finding that the Settlement Agreement is fair, the Court issue an Order dismissing the case without prejudice and retaining jurisdiction for entry of a final order of dismissal, with prejudice, as noted below.

2. Upon completion of the notice, release and payment provisions of the settlement, the Parties will file a Joint Motion for Dismissal, with prejudice, of the claims of those Representative Plaintiffs and Opt-In Plaintiffs who have signed and timely returned release forms. The parties will submit a proposed order for dismissal with prejudice of those individuals, listing the Representative Plaintiffs and Opt-In Plaintiffs that have released their claims.

3. Finally, the Parties request that the Court retain jurisdiction for enforcement of the Settlement Agreement. Appropriate language will be included in the proposed order dismissing specific claims with prejudice.

Respectfully submitted this 13th day of February, 2019.

| | |
|---|---|
| */s/Mary E. Lytle* | */s/ Tasos C. Paindiris* |
| Mary E. Lytle | Tasos C. Paindiris (Fla. Bar No. 41806) |
| Florida Bar No. 0007950 | JACKSON LEWIS P.C. |
| David Barszcz | 390 North Orange Avenue, Suite 1285 |
| Florida Bar No. 0750581 | Orlando, Florida 32801 |
| Lytle & Barszcz | Tel: (407) 246-8440 |
| 543 N. Wymore Road, Suite 103 | tasos.paindiris@jacksonlewis.com |
| Maitland, FL 32751 | |
| Telephone: (407) 622-6544 | |
| Facsimile: (407) 622-6545 | Thomas Rohback (pro hac vice) |
| mlytle@lblaw.attorney | Axinn, Veltrop & Harkrider, LLP |
| dbarszcz@lblaw.attorney | 90 State House Square |
| | Hartford, CT 06103 |

Attorneys for Plaintiffs

Tel: (860) 275-8100
trohback@axinn.com

Attorneys for Defendant

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of February, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

        */s/ Mary E. Lytle*
        Mary E. Lytle, Esq.

4843-7650-4455, v. 1